UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DANIEL GRAY,<br><br>Defendant. | Case No. 1:21-cr-00495-ABJ<br><br>**DEFENDANT DANIEL GRAY'S NOTICE OF ALTERNATIVE PERPETRATOR DEFENSE** |

DEFENDANT DANIEL GRAY'S NOTICE OF ALTERNATIVE
PERPETRATOR DEFENSE

(PIPE BOMBS)

**(Motion and Memorandum of Points and Authorities in One)**

NOW COMES Defendant Daniel Gray, by and through counsel, who gives NOTICE of his intent to present an alternative perpetrator defense regarding the short (less than 6 hour) recess of Congress which occurred on Jan. 6, 2021.

The Superseding Indictment (ECF #25) contains at least four of nine counts (#1, 2, 5, and 7) which falsely accuse defendant Gray of disrupting proceedings of Congress by disorderly conduct or obstruction. At trial Gray will show these allegations are false, as nothing done by Daniel Gray on Jan. 6 caused Congress to go into its brief recess; and in fact Congress recessed *due to reports of pipe bombs* near the Capitol; not due to Gray or even other protestors at the Capitol.

Indeed the first reports of Congressional representatives evacuating the Capitol buildings came at **1:19 pm** on Jan. 6, when Paul Bedard of the *Washington Times* tweeted that some of the U.S. Capitol buildings were being evacuated. At **1:17** pm, CQ Roll Call reporter Chris Marquette also tweeted this news. Vice President-Elect Kamala Harris was evacuated out of the DNC headquarters by the Secret Service at **1:14 p.m**., *due to pipe bombs*, not Stop-the-Steal protestors.

Significantly, protestors did not begin breaching the Capitol until after proceedings in Congress were effectively halted. Indeed the first protestor who entered the Capitol did so around **2:12 pm (an hour after Kamala Harris was evacuated)**, and it was several minutes later that dozens of protestors began pouring into entry areas. At **2:13 p.m.,** Vice President Pence was removed from the Senate chamber to a nearby office by his lead Secret Service agent, Tim Giebels and the Senate was gaveled into recess. By the time protestors gathered in large numbers in the Capitol Rotunda area, both houses of Congress were in recess; *due to reports of pipe bombs*.[1]

**Perhaps seeking to misdirect attention away from the pipe bombs which really caused the disruption of Congress, the government's indictments conveniently place protestors in the Capitol before they arrived.**

---

[1] See Jim Hoft, "IT WAS ALL A LIE: Congress Was Evacuated on Jan. 6 Due to Pipe Bomb Threat — Not Because of Trump Supporters Walking Halls," The Gateway Pundit, July 16, 2021, https://www.thegatewaypundit.com/2021/07/lie-congress-evacuated-jan-6-due-pipe-bomb-threat-not-trump-supporters-walking-halls/ (accessed 10/15/2022).

The Department of Justice has filed hundreds of indictments and information relating to the Jan. 6 Capitol protests. Curiously, the government's Statements of Facts have tended to place protestors inside the Capitol before they actually arrived while placing the recess of Congress later than it actually happened:

> shortly **around 2:00 p.m**., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crow encouraged and assisted those acts.
> Shortly thereafter, at approximately **2:20 p.m.** members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.

Government's Statement of Facts, ECF #1, filed 5/17/2021, Page 1.

These same assertions are made in dozens of Statements of Facts filed by the United States in Jan. 6 cases.

Yet this government narrative *overstates* how long Congress was in session, by several minutes (official records say Congress recessed at 2:18; but evacuations had begun at least ten minutes before that).[2] And this narrative also *understates* how long it took protestors to breach the Capitol—by more than ten minutes.

**Why does the United States place protestors in the Capitol <u>before</u> they arrived while simultaneously identifying Congress's moment of recess <u>after</u> it actually occurred?** *Because the DOJ's narrative is ruined when the actual times are exposed.*

---

[2] Jenni Fink, "Capitol Riot Timeline: From Trump's First Tweet, Speech to Biden's Certification," Newsweek, Jan. 6, 2022, https://www.newsweek.com/jan-6-capitol-riot-timeline-trumps-first-tweet-speech-bidens-certification-1665436 (accessed 10/15/2022).

Gray submits the following points, which will be expanded below:

1. The laws and provisions of the Constitution governing the processing of electoral college vote certification do not show that electoral college vote counting is some type of a sacred proceeding which cannot be contested, halted, debated or questioned. On the contrary, the law allows—and Congress expected and scheduled for—protests, objections, delays, debates and ultimate resolution <u>on later dates</u> regarding votes from problematic states.[3]

2. Congress was not actually counting <u>any</u> votes at the time that Congress was gaveled into recess briefly on Jan. 6. Rather, Congress had adjourned for arguments and debates in both chambers regarding questions about the 2020 election.

3. Vice President Pence, in his famous letter to Congress describing his actions on January 6, described the electoral college certification as "largely ceremonial"—indicating the certification was hardly a proceeding whose disruption might constitute "obstruction."

---

[3] Just before the recess in the Senate, Senator Lankford was speaking on the floor of the Senate, saying there were such serious questions regarding the 2020 election that they demanded a <u>10-day delay</u> in electoral vote counting.

4. The recess (or recess<u>es</u>, as there were more than one) called by Congress, as a matter of law, were not predicated on the presence of peaceful protestors like Gray in the halls of the Capitol.

5. In fact, the recesses began to be called <u>due to reports of the discovery of bombs</u> at the RNC and DNC headquarters nearby.[4]

6. Moreover, it seems probable that the pipe bombs were planted as some sort of undercover government operation.[5] (We have grounds to suspect this because the FBI and Secret Service have kept secret from the courts the most material facts regarding the pipe bombs, and even the fact that the Vice President-Elect was at DNC headquarters at the time.)[6]

---

[4] See Julie Kelly, "The January 6 Pipe Bombs Look Like Another FBI Hoax," *American Greatness*, February 14, 2022. ("At 1:53 p.m., Representative Elaine Luria tweeted that she "just had to evacuate my office because of a bomb reported outside, while the President's anarchists are trying to force their way into the Capitol.") https://amgreatness.com/2022/02/14/the-january-6-pipe-bombs-look-like-another-fbi-hoax/ (accessed 10/12/2022). (Thus, Congressional representatives were given the evacuation order—*due to the pipe bombs*—many minutes before protestors could have disrupted any proceedings.)

[5] Google Earth Walkthrough Further Exposes FBI's Jan 6 Pipe Bomb Hoax, Revolver News, October 6, 2022, https://www.revolver.news/2022/10/google-earth-walkthrough-further-exposes-jan-6-fbi-pipe-bomb-hoax/ (accessed 10/16/22). This detailed report delves deeply into these mysteries.

[6] Recent news stories have exposed the fact that there were two (2) surveillance cameras filming the placement of the pipe bombs at the DNC; yet the government has responded to FOIA requests with complete footage of the worst-angle camera but <u>only partial</u> footage from the best-angle camera—selectively redacted to omit any footage of the <u>actual placement</u> of the pipe bomb. And the Secret Service apparently concealed the fact that Vice President-Elect Kamala Harris was at the DNC at the time the pipe bomb was allegedly discovered (by a passerby who

7. It appears that <u>at no time was a single breaching protestor</u> even in the same room with a single member of Congress on Jan. 6.

8. Above all, there is no suggestion that Gray's actions or inactions on Jan. 6 contributed anything at all to the under-6-hour recess of Congress. In fact, Gray did not enter the Capitol until almost 3:00 pm. and could not have disrupted anything.

**LEGAL STANDARDS**

GRAY HAS A CONSTITUTIONAL RIGHT TO PRESENT AN ALTERNATIVE SUSPECT DEFENSE

Daniel Gray has a right under the due process clause to present evidence that an alternative source is responsible for the crimes Gray is accused of. See *Kyles v. Whitley*, 514 U.S. 419, 446 (1995) (evidence of alternative suspects allows the defense to attack "the reliability of the investigation" if it shows that investigators

---

reportedly noticed the object in a superficial glance!. This means that the Secret Service somehow missed the object in their sweep while a casual pedestrian reportedly noticed the bomb. See Jim Hoft, "Revolver News Report: FBI Is Hiding Security Camera Video of Jan. 6 Pipe Bomber Planting Bomb at DNC Headquarters," *The Gateway Pundit*, August 4, 2022. https://www.thegatewaypundit.com/2022/08/revolver-news-report-fbi-hiding-security-camera-video-jan-6-pipe-bomber-planting-bomb-dnc-headquarters/ (accessed 10/12/2022). When the Secret Service finally revealed that Kamala Harris was at the DNC headquarters rather than the Capitol at 1:00 pm on Jan. 6, this necessitated a *multi-million-dollar 'do over'* of almost every grand jury indictment filed in Jan. 6 cases to remove the false allegation that both the Vice President and the Vice President-Elect were present in the Capitol on the afternoon of Jan. 6.

were less than energetic in exploring other potential suspects . . . After all, a "common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant . . .."); *Trammell v. McKune*, 485 F.3d 546, 552 (10th Cir. 2007) (suppressing evidence of alternative suspects "could also have been used to cast doubt on police officers' decision to focus their attention . . . on [the defendant] rather than" the other suspects).

**The FBI and DOJ have overemphasized Jan. 6 protestors and neglected to investigate the role of the pipe bombs.**

In Gray's case it is obvious that government investigators have deemphasized the role of the pipe bombs in order to emphasize the role of protestors at the Capitol.   The pipe bombs were discovered at 12:49 pm--an hour and a half before protestors could have disrupted any proceedings at the Capitol.  And protestors barely arrived past the threshold when Congress recessed.  Gray didn't allegedly enter the Capitol until after around 2:50, when there were no proceedings whatsoever.

**Accordingly, Gray has a right to discovery, and to introduce and examine witnesses and evidence regarding the pipe bombs' contribution to the congressional recesses on Jan. 6.**

Thus, Gray has a right to disclosure of all communications between the president of the Senate, the Secret Service, the speaker of the House, the Capitol Police and the clerks of both houses of Congress regarding the role the pipe bombs

played in the Jan. 6 disruption of Congress. (Gray will soon be filing a discovery motion in this regard.) See, e.g., *Smith v. Secretary of New Mexico Dep't of Corrections*, 50 F.3d 801, 829-30 (10th Cir.) ("Disclosure of [withheld police] report would have alerted counsel to the existence of [alternative suspect's bloodstained clothing in his trunk and permitted defense counsel] to have it tested."), cert. denied, 516 U.S. 905, 116 S. Ct. 272 (1995); *Bowen v. Maynard*, 799 F.2d 593, 612 (10th Cir.) (finding Brady violation where "in the hands of the defense [suppressed evidence of alternative suspect] could have been used to uncover other leads and defense theories," including alternative suspect's motives for murder, which were different than the State's theory), cert. denied, 479 U.S. 962 (1986); *People v. Jackson*, 168 Misc. 2d 182, 186, 637 N.Y.S.2d 158, 161 (Sup. Ct. Bronx Co. 1995) (Brady violation where, inter alia, witness's suppressed statements "give leads as to other possible perpetrators of the crime"); *People v. Lumpkins*, 141 Misc. 2d 581, 588, 533 N.Y.S.2d 792, 795-96 (Sup. Ct. Kings Co. 1988) (Brady violation where detective did not investigate Crime Stoppers report implicating alternative suspects, or try to find the two suspects named in it and did not disclose the information to defendant: "It can hardly be doubted that the requirement of due process underlying the Brady rule includes disclosure of exculpatory leads. . . . Perhaps that is why the courts applying the Brady rule have

spoken of 'exculpatory information'; 'exculpatory material'; and 'exculpatory matter.'") (citations omitted).



1:14 p.m.


**Chris Marquette** ✓
@ChrisMarquette_

Capitol Police alert: EVACUATE: Madison due to Police Activity.

* Remain calm and move in a safe manner to the exits.
* If nearby, take annunciators on the way out.
* Close doors behind you but do not lock.
* Proceed immediately to your designated assembly area

1:17 PM · Jan 6, 2021 · Twitter Web App

33 Retweets   3 Quote Tweets   31 Likes


**Paul Bedard** ✓
@SecretsBedard

Hearing the Capitol Police evacuating buildings around the GOP Capitol Hill Club, including parts of the LOC Madison bldg, apartments, and House Cannon bldg…rumors of pipe bomb in back of the club…

1:19 PM · Jan 6, 2021 · Twitter Web App

ACCORDINGLY, Defendant Daniel Gray will show at trial that pipe bombs at the DNC and RNC headquarters contributed more to the brief halt in congressional proceedings on Jan. 6 than the protestors. And Gray contributed nothing.

Respectfully submitted,

Dated: October 15, 2022

Respectfully Submitted,
/s/ John M. Pierce
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 21, 2022, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

      Jacqueline N. Schesnol, Esq.
      DOJ-USAO
      United States Attorney's Office
      40 North Central Avenue, Suite 1800
      Phoenix, AZ 85004-4449
      (602) 514-7689
      **jacqueline.schesnol@usdoj.gov**

      _____
      John M. Pierce, Esq.