UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DANIEL GRAY,<br><br>Defendant. | Case No. 1:21-cr-00495-ABJ<br><br>**GRAY'S MOTION FOR REQUIRED DISCLOSURE OF POTENTIALLY EXCULPATORY INFORMATION** |

## GRAY'S MOTION FOR REQUIRED DISCLOSURE OF POTENTIALLY EXCULPATORY INFORMATION

Defendant Daniel Paul Gray ("Gray"), through the undersigned counsel, John M. Pierce, Esq., presents this Motion and Memorandum of Law requesting an Order that the U.S. Government disclose to the Defendant promptly, the following information necessary to the Defendant's defense pursuant to pretrial discovery under Rules 6(e)(3)(C) and 16(a)(1)(A) of the Federal Rules of Criminal Procedure, Rule 16 of the same, *Brady v. Maryland,* 373 U.S. 83 (1963) and progeny, and Gray's Due Process rights under the U.S. Constitution:

A. all documents, communications, recommendations, and threat assessments by the U.S. Capitol Police, FBI, Secret Service, Metropolitan Police Department or other law enforcement agencies concerning any perceived threats and security arrangements for January 6, 2021.

B. all of the records of the USCP which would identify the reason or reasons that the USCP advised the presiding officers to recess and evacuate.

C. All documents relating to locations of barricades and "restricted area" signs at the time af Gray's arrival.

In support of his motion Gray states as follows:

## I.  INTRODUCTION AND OVERVIEW

In Part A of this motion, Defendant Gray seeks disclosure by the U.S. Attorney's Office and the U.S. Capitol Police ("USCP") of all documents, records, communications, messages, video recordings, audio recordings, and the like of the USCP's analysis, observation, and assessments involving events on January 6, 2021.

Thus far, this basic information has been denied in every case, upon information and belief.

Defendant Daniel Paul Gray ("Gray") is charged with nine (9) Counts which actually in substance come down to --

a.  One Count of 18 U.S.C. § 1512(c)(2) "Obstruction of an Official Proceeding" for allegedly disrupting the quadrennial Joint Session of Congress for the receipt, evaluation, resolution of disputes about, and ultimate counting of the votes for President and Vice President by the Electoral College, including allegedly aiding and abetting thereof,

which is a felony punishable by up to 20 years in prison.[1]

b.  Four variations of "Entering and Remaining in a Restricted Building

or Grounds" with charges of disruption thereby[2] including under 18

U.S.C. § 1752(a)(1) and (2) and 18 U.S.C. § 5104(e)(2)(D)

"Disorderly Conduct in a Capitol Building" and (G) "Parading,

Demonstrating or Picketing in a Capitol Building."

c.  Four variations of charges of violence including 18 U.S.C. § 231(a)(3)

acts in furtherance of "Civil Disorder" or hindering officers during a

civil disorder; 18 U.S.C. § 111(a)(1) "Assaulting, Resisting, or

Impeding Certain Officers"; 18 U.S.C § 1752(a)(4) "Engaging in

Physical Violence in a Restricted Building or Grounds"; and 18

U.S.C. § 5104(e)(2)(F) "Acts of Violence in the Capitol Grounds or

Buildings."

Here, Parts A and B of this motion addresses "only" Count One of 18 U.S.C.

§ 1512(c)(2) "Obstruction of an Official Proceeding"— Gray's most serious

charge, a felony, punishable by up to 20 years in prison.

In Part C, Defendant Gray requests all documents and records of the

---

[1]     Here, unlike a court hearing, Congress frequently takes weeks or months to consider
pending legislation.  Therefore it is difficult to analyze what "obstructing" a Congressional pro-
ceeding means.  The Joint Session of Congress is required to convene at 1:00 PM on January 6
every four years, but is not required to finish that same day.  Also, other judges have ruled that
18 U.S.C. 1512(c)(2) does not apply and the Government has appealed, which appeal is pending.
[2]     Apparently meaning just being disruptive in general, not disruption of the Joint Session.

existence and/or location of any bike racks, barricades, and **signs providing notice** of any restricted area or restriction of any building or grounds ***at the time Defendant Gray approached the alleged boundaries of the allegedly restricted areas*** , including identification of all persons as likely witnesses who have been videotaped removing the same on camera before Gray arrived.

## II. GOVERNING LAW:  *BRADY* and Other Obligations

Local Rule 5.1 "DISCLOSURE OF INFORMATION"  prescribes that:

> (a) Unless the parties otherwise agree and where not prohibited by law, the government shall disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and that is known to the government. This requirement applies regardless of whether the information would itself constitute admissible evidence. The information, furthermore, shall be produced in a reasonably usable form unless that is impracticable; in such a circumstance, it shall be made available to the defense for inspection and copying. Beginning at the defendant's arraignment and continuing throughout the criminal proceeding, the government shall make good-faith efforts to disclose such information to the defense as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case.

> (b) The information to be disclosed under (a) includes, but is not limited to: (1) Information that is inconsistent with or tends to negate the defendant's guilt as to any element, including identification, of the offense(s) with which the defendant is charged; (2) Information that tends to mitigate the charged offense(s) or reduce the potential penalty; (3) Information that tends to establish an articulated and legally cognizable defense theory or recognized affirmative defense to the offense(s) with

which the defendant is charged; (4) Information that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial; and (5) Impeachment information, which includes but is not limited to: (i) information regarding whether any promise, reward, or inducement has been given by the government to any witness it anticipates calling in its case-in-chief; and (ii) information that identifies all pending criminal cases against, and all criminal convictions of, any such witness.

The scope of the requirements of *Brady v. Maryland,* 373 U.S. 83 (1963), is very broad. *See* <u>United States Justice Manual</u> (USJMM) § 9-5.001. For instance, a "prosecutor must disclose information that is inconsistent with any element of any crime charged" and --

> "… must disclose information that either casts a substantial doubt upon the accuracy of any evidence--including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of the evidence. This information must be disclosed regardless of whether it is likely to make the difference between convictions and acquittal of the defendant for a charged crime."

*Id.*

The disclosure requirement, "applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence."

*Id.*

The Defendant is entitled to the documents and the evidence, to the extent potentially or here likely to be exculpatory information as required by *Brady v.*

*Maryland*, 373 U.S. 83 (1963) ; *See also*, *United States v. Sitzmann*, 74 F.Supp.3d 128, 133 (D.D.C. 2014).

Closely associated with the federal rule are several U.S. Supreme Court decisions which hold that a defendant has a right to the testimony of witnesses. *See*, *United States v. Dennis*, 384 U.S. 855 (1966); *United States v. Proctor & Gamble*, 356 U.S. 677 (1958).

> "Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them."

*Gregory v. United States* 369 F.2d 185, 188 (D.C. Cir. 1966). See also, Model Code Of Prof'l Responsibility Rule 3.8(d).

Even government officials or agents and law enforcement officials – employees of government – are equally witnesses for the Defendant as they are of the prosecution.

## III.   ARGUMENT

### A. IN GENERAL

Defendant states the following:

(1)     The information respectfully demanded is required for Gray's defense under *Brady v. Maryland*, its progeny, and the Federal and local rules.

(2)     Defendant is entitled to due process of law which includes the right to

prepare for trial and to be heard before a neutral decision-maker, including the constitutional right to participate in his own defense such as by preparation of his presentation for trial.

(3)    Potentially exculpatory information must be disclosed sufficiently in advance of trial to allow defense counsel and Defendant to research its content and implications to prepare effective cross-examination and to subpoena witnesses.

(4)    Gray is entitled to evidence that would show any inconsistency in witness' testimony as recalled closer in time to the events at issue or unfettered by intervening pressure.

(5)    Defendant is entitled to evidence that might show the ability of witnesses to know or remember what they claim to have witnessed.

(6)    Defendant is entitled to evidence that might help separate almost 2 years of intensive and continual news coverage from the witness' actual recollections of events.

(7)    Given the U.S. Capitol Police's official estimate that there were 10,000 demonstrators present near or around the U.S. Capitol that afternoon, at a time when masks were almost universally required by government mandate, the probability of the prosecution misidentifying people involved in some or all of the actions complained of is high.

(8)    Simply because an extraordinarily large crowd unrelated to Gray got

out of control (by no act or omission of Gray) is not valid evidence of the charges against Gray or other co-Defendants.   The Government must prove that Gray committed a crime, not "someone" did.   The Government's affinity for analyzing what "a crowd" did in the aggregate is inconsistent with the law, the Constitution, Due Process, and centuries of Anglo-American jurisprudence.

## B. PART A:  DISCLOSURE OF U.S. CAPITOL POLICE DOCUMENTS OF PENDING OR UNFOLDING THREAT ASSESSMENT ON AND BEFORE JANUARY 6, 2021.

Gray demands all threat assessments, communications, planning and pre-planning documents, and recommendations by the U.S. Capitol Police, FBI, Secret Service, Metropolitan Police Department or other law enforcement agencies concerning any perceived threats and security arrangements for January 6, 2021.

## PART B: DISCLOSURE OF ALL DOCUMENTS AND RECORDS RELATING TO DECISIONS TO RECESS CONGRESS AND/OR EVACUATE.

The *Congressional Record* reveals[3] that someone from USCP advised the

---

[3]     The court may take judicial notice that the House was recessed by the presiding officer at 2:18 PM, pursuant to standing Rule I, Clause 12(b) (allowing for immediate recess without a vote upon notice of a threat).  Counting Electoral Votes--Joint Session Of The House And Senate Held Pursuant To The Provisions Of Senate Concurrent Resolution 1; Congressional Record

presiding officer (in the House, being Rep. McGovern at that moment) to invoke Rule I, Clause 12 of the House Rules to instantly recess without debate or a vote. The USCP stated to the presiding officer a reason why Congress must recess and evacuate.  There was a reason why the Joint Session of Congress recessed at 2:18 PM on January 6, 2021, and Gray is entitled to all documents and records regarding this.

The Government accuses Defendant Gray *of being the reason* for Congress' recess decision.  Gray is entitled to any official documentation that the actual reason(s) were *not* Gray.

The Government in all of the January 6 related cases has failed to allege or substantiate any causation between any of the over 800 Defendants and the recess of the Congress.

We know for a fact that the discovery of pipe bombs at the Republican National Committee ("RNC") headquarters across the intersection from the Cannon House Office Building – confirmed at 12:50 PM (noticed by a bystander at 12:40 PM, but confirmed by police at 12:50 PM) caused USCP to order the evacuation of the Cannon House Office Building and the Library of Congress

---

Vol.  167, No.  4 (House of Representatives - January 06, 2021) **https://www.congress.gov/congressional-record/2021/01/06/house-section/article/H76-4**  The use of Rule I, Clause 12 indicates that the USCP advised the presiding officer of a specific threat or threats justifying a recess.  Defendant demands disclosure of those reason(s).

Madison building sometime before 1:17 PM.

Paul Bedard is a veteran journalist[4] based in Washington, D.C. with decades of reporting experience.  He announced on Twitter: [5]



Chris Marquette is a reporter with <u>Roll Call</u> news magazine, who announced on Twitter: [6]



We know that evacuations by USCP had already started sometime earlier than 1:17 PM EST on January 6, 2021.

[4] https://www.washingtonexaminer.com/author/paul-bedard
[5] https://twitter.com/SecretsBedard/status/1346884057276305411?ref_src=twsrc%5Etfw
[6] https://twitter.com/ChrisMarquette_/status/1346883510045466626?ref_src=twsrc%5Etfw

### C. THE ALLEGATIONS AT ISSUE

The First Superseding Indictment ("FSI") filed on December 1, 2021, at Dkt. No. 25, is as the law customarily describes such as "thread bare."  It consists only of conclusory statements of law and no factual allegations whatsoever.  Presumably, the FSI is illuminated by the Statement of Facts filed on May 17, 2021, at Dkt. No. 1-1, originally in Magistrate Case No. 1:21-mj-00429-GMH, which states:

> a. As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol.
>
> b. Temporary and permanent[7] barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol

---

[7]    In fact, the evidence will show that there were – as of January 6, 2021 – conspicuously no permanent barricades nor signs nor notice around the U.S. Capitol, and that the Capitol is "secured" only in the sense that the Smithsonian Institute museums are "secured" yet open to the public.  The Capitol is probably the most public government building in the world, at which school children visit in tours and tourists, members of the public, activists, etc., are always welcome.  It is a museum at which some of our nation's founding documents are displayed, statues displayed for viewing and some of our nation's most iconic paintings are on display.  The Capitol building contains two public gifts shops, aside from gift shops in the office buildings and visitor's center.  An inspection of the exterior of the Capitol and its grounds reveals a surprising lack of any warning that sometimes the normally public status of the Capitol and its grounds could change.  Even the claim that the Capitol was closed during COVID is not supported by any signage.  Unlike a normal charge of trespassing, the Capitol and its 58.8 acres of grounds are clearly open to the public nearly all the time, but the allegation is that the authorities' efforts were legally effective at altering that normal "permanent" status to a temporary restriction.  The Government's repeated claims that the Capitol is "secured" as implying "closed" or has permanent barricades is unsupported by the conspicuous, objective evidence.  Photographs of the outside of the building confirms that there were no such permanent signs or barricades prior to January 6.

building and the proceedings underway inside.[8]

   c. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

   d. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.

   e. Gray states that "a female cop stole my phone and I got mace'd . . . and I'm like you know what, we're doing this and so we literally pushed them from the front steps of the Capitol all the way back." (Gray disputes this account of events.)

   f. The affiant reviewed body-worn cameras worn by members of the Washington, D.C. Metropolitan Police Department ("MPD") that recorded Gray inside the Rotunda area of the U.S. Capitol Building on January 6, 2021. In sum, the body-worn camera footage recorded that, at approximately 2:57 p.m., a group of MPD and United States Capitol Police ("USCP") officers were standing at the top of the stairs off of the west-side of the Capitol Rotunda, in an effort to deny the rioters the ability to maneuver through the Rotunda.[9]

---

[8]    In fact, the evidence will show that by the time Defendant Gray approached the Capitol there were no barricades or fences or signs giving notice of a temporary restriction altering the normal *status quo* including because (a) bike racks are normally used to *guide* – not prohibit – foot traffic, like the folded lines entering into a sports event and (b) video recordings show a mysterious team waiting until they saw crowds approaching down Pennsylvania Avenue and then swung into action to coldly, systematically, and professionally remove all bike racks or other barricades, and roll up the flexible wire mesh fences. All signs had been affixed to the same, and therefore all the signs were gone by the time the main crowds reached the edge of the Capitol Grounds. They were gone – as caught on video – by being intentionally removed.

[9]    Video recordings such as the news recording of Laura Giesweller of Keep in News Agency filmed for French television document that the USCP and MPD crowded demonstrators into the Rotunda and would not let them leave. The French journalist Laura Giesweller in the news camera recording asks for help getting out to which many members of the crowd yells back in frustration various things to the effect "We are all trying to get out, they won't let us."

    g.  In one body-worn camera video, Gray joined a group of rioters, who are yelling at the officers for various reasons,[10] and Gray remained in the vicinity.[11]

As a result, the Government not merely admits but has established as the law of the case which it cannot now walk away from that

(1)  the Joint Session of Congress on January 6, 2021, recessed at approximately 2:20 PM EST on that day.  It was 2:18 PM according to the Congressional Record of the House of Representatives.

(2) Defendant Gray was not there, however, at 2:18 PM.[12]

(3) Defendant Gray was not present when the official proceeding was obstructed.

(4) The first time at which the Government's evidence identifies Gray as being within the Capitol building is when he is allegedly seen on one or more police officer's body worn camera video(s) at around 2:57 PM.[13]

(5) Therefore, it is a matter of law, fact, and the laws of physics governing the universe that at 2:57 PM EST Defendant Gray did not cause or

---

[10]    Yelling of course does not by itself constitute a riot.

[11]    No crime exists, of course, of merely being in the vicinity of a riot.

[12]    Note that to consider causation, the earlier time at which the House recessed pins down the time of the cause.  Thus the cause existed at the *earliest* time that *either* chamber recessed. Actually the U.S. Capitol Police could not instantaneously analyze threats and reach a decision and walk down to the well of the House, so the causation of the obstruction of an official proceeding would likely have actually occurred much earlier than 2:18 PM.

[13]    One may be excused for assuming that if the investigating agent had video of an earlier presence, that would have figured prominently in the Statement of Facts.

contribute to the recess of the Joint Session of Congress at 2:18 PM. That would violate the laws of time and causation.

(6) Therefore, Defendant Gray is innocent of Count Two of violating 18 U.S.C. 1512(c)(2).  He did not cause at 2:57 PM something to happen at 2:18 PM.

(7) Nevertheless, at this stage, Defendant Gray is entitled to disclosure of all of the records of the USCP which would identify what exactly was the reason or were reasons that the USCP advised the presiding officers[14] to recess and evacuate.

(8) Gray is entitled to all records that would identify why Congress recessed.

(9) Congress routinely meets and functions with hundreds or thousands of visitors coming and going throughout a business day without Congressional business coming to a halt.

(10)   Thus, the mere presence within the building of hundreds of demonstrators could not be the cause of the Joint Session of Congress recessing when on any normal day Congress does not require the Capitol building to be vacant in order to function.

Gray is erroneously accused of obstructing an official proceeding, even though he arrived at the Capitol after security threats were already occurring and

---

[14]     Rep. McGovern was presiding over the House according to the Congressional Record.

had already matured.  Defendant is accused of "aiding and abetting" unknown and

unidentified persons in doing what those persons had already (allegedly) done

without him even being in the area.  Defendant is accused of obstructing at 2:57

PM a Joint Session of Congress that recessed at 2:18 PM.

### D. PART B:    DISCLOSURE OF LOCATIONS OF BARRICADES AND "RESTRICTED AREA" SIGNS AT EXACT TIME OF GRAY'S ARRIVAL

The Government claims that certain areas around the U.S. Capitol were

legally restricted on January 6, 2021.  But that is a mixed question of law and fact.

The U.S. Capitol Police (Governing Board) has chosen by its own decision not to

post any permanent signs or notices on the Capitol grounds warning that

sometimes the public grounds might be closed.  Instead, the Board directed that

small, flimsy signs (some seen in photographs torn in two as being merely paper)

be affixed to light-weight, movable bike racks, appearing at a very low height at

about waist-high-level in most places.[15]

To have a "Restricted Area" there must be an "area" to which the restriction

applies.  An unidentified, indeterminate area cannot be a restricted area.  For a

person to knowingly enter a restricted area without authorization, there must be

---

[15]    Most people are conditioned to understand that bike racks either route foot traffic or control when people may enter,  but do not prohibit pedestrian entrance, merely showing where to go, and/or telling pedestrians _when_ the doors to an event open.  Bike racks do not signal by themselves to the average person any prohibition of entrance, but rather to signal only timing and the preferred pathway for walking.

both an identifiable area that is restricted and knowledge by the person of a restriction.

Specifically there must be a line such that on one side of that line one may lawfully enter and/or be present, but on the other side of the line they may not.

The Government is fixated on the idea that mere presence in an area which – undisclosed to the persons charged – some officials have a private, internal, unexpressed idea that the area is restricted.  In theory, the USCP Governing Board chose to communicate the existence of a restriction by having flimsy (seen torn in two in some photographs from January 6), apparently paper that has been laminated, affixed to bike racks or temporary fences.  Had those signs giving notice actually been still present when Gray and most of the crowds arrived at the Capitol, they might have been legally effective.  But the USCP Governing Board chose to use an inadequate method of communicating its intentions to those who would normally expect the Capitol and its Grounds to be open to the public. Indeed, recordings include many references spoken from the demonstrators of their belief that the Capitol was "our house" and was open to the public.

By contrast, the Government has at all times treated this topic as if the Architect of the Capitol painted a dotted line on the asphalt and grass that day, and that a line was visible to demonstrators.  This is akin to the old joke that the lines added to Rand McNally maps showing the border of various States are visible on

the actual land itself if one stands near the border.

But we need not speculate.  This motion is a demand for actual proof.

The Government must provide any and all photographs, video recordings, witnesses, discussions in police radio recordings, etc., of exactly where any signs were visible to the crowds  ***at the time that***  Defendant Gray arrived at the vicinity of the U.S. Capitol building.  Gray is entitled to exculpatory evidence as to where signs were ***at that time*** **– not at some other time earlier in the day.**  The Government must identify exactly when and where the Government contends Gray approached the U.S. Capitol Grounds and the position of any "Restricted Area" signs in that location ***at that time***.  It must identify any and all Government personnel who are witnesses of any "Restricted Area" signs being moved or obscured before any of the Oath Keeper Defendant arrived at the U.S. Capitol.

The Court and the prosecutors may be allergic to what they perceive as conspiracy theories, but Gray, by counsel, focuses here strictly on the location of potential witnesses.

Videos taken by various persons, including what some are calling "civilian video" taken by random attendees or bystanders, were collected  and posted at "Meet Ray Epps, Part 2: Damning New Details Emerge Exposing Massive Web Of Unindicted Operators At The Heart Of January 6," Revolver News, December 21, 2021, accessible at:  **https://www.revolver.news/2021/12/damning-new-details-**

**massive-web-unindicted-operators-january-6/**

It must be emphasized that this is a collection of videos by others.  They cannot be dismissed on the grounds of where they were collected and posted in one place.  These are not Revolver News' or Darren Beattie's videos.  They are the videos of eyewitnesses at the Capitol on January 6, 2021.

The point here is that the persons shown removing signs, removing barricades, and rolling up wire mesh fences on which notice signs were affixed are potential witnesses.

Defendant Gray is accused of ***knowingly*** entering a restricted area without authorization.  Those shown in videos removing barricades, moving bike racks, and rolling up wire mesh fencing – and thereby removing all signs providing notice of a restriction – are potential witnesses that may exonerate Defendant Gray.

Therefore, Defendant Gray is entitled to and hereby demands any and all information of the identification of these persons for the purpose of calling them as witnesses.

## IV.    CONCLUSION

The Defendant requests this Court to grant this Motion and such other relief as may be deemed just.  Defendant Daniel Paul Gray, demands to discover the potentially exculpatory information identified above.

Dated: October 21, 2022

Respectfully submitted,
/s/ John M. Pierce

John M. Pierce
John Pierce Law, P.C.
21550 Oxnard Street,
3rd Floor, PMB 172
Woodland Hills, CA 91367
Tel: (213) 279-7846
**jpierce@johnpiercelaw.com**
**Attorney for Defendant**

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 21, 2022, this motion and the accompany declaration was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

/s/ John M. Pierce
John M. Pierce