UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA, | Case No. 1:21-cr-00495-ABJ |
|---|---|
| v. | **MEMORANDUM OF LAW IN SUPPORT OF DANIEL PAUL GRAY'S MOTION TO DISMISS COUNT 2 OF THE FIRST SUPERSEDING INDICTMENT, TO DISMISS CHARGES UNDER 18 U.S.C. 1512(c)(2)** |
| DANIEL GRAY, | |
| Defendant. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DANIEL PAUL GRAY'S MOTION TO DISMISS COUNT 2 OF THE FIRST SUPERSEDING INDICTMENT, TO DISMISS CHARGES UNDER 18 U.S.C. 1512(c)(2)**</u>

Defendant Daniel Paul Gray ("Gray"), through the undersigned counsel, John M. Pierce, Esq., presents this Memorandum of Law in support of his motion to dismiss Count 2 of the First Superseding Indictment, because the charging documents fail to state an offense and/or 18 U.S.C. 1512(c)(2) does not apply to the best case scenario (for the Government) of what they could have possibly alleged (but didn't).  In support of his motion Gray states as follows:

**I.  INTRODUCTION AND OVERVIEW**

<u>**COUNT TWO**</u>

On or about January 6, 2021, within the District of Columbia and elsewhere, **DANIEL GRAY**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding before Congress, specifically, Congress's *[sic]* certification of the Electoral College as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

**(Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c) and 2)**

Yet there are no factual allegations of Defendant Gray obstructing an official proceeding or aiding and abetting the same. Therefore, Count 2 fails to state an offense. Count 2 must be stricken pursuant to Rule 12(3)(B)(v) of the Federal Rules of Criminal Procedure ("FRCP") "failure to state an offense."

Moreover, if there were such factual allegations, 18 U.S.C. 1512(c)(2) under Count 2 does not apply to any of the potential facts that the prosecution might have imaginatively or creatively – but not accurately – brought against Defendant Gray.

## II.  THE ALLEGATIONS AT ISSUE

Defendant Daniel Paul Gray ("Gray") is charged with nine (9) Counts which actually in substance come down to --

      a.  One Count of 18 U.S.C. § 1512(c)(2) "Obstruction of an Official Proceeding" for allegedly disrupting the quadrennial Joint Session of Congress for the receipt, evaluation, resolution of disputes about, and ultimate counting of the votes for President and Vice President by the Electoral College, including allegedly aiding

and abetting thereof, which is a felony punishable by up to 20 years in prison.

 b. Four variations of "Entering and Remaining in a Restricted Building or Grounds" with charges of disruption thereby[1] including under 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) "Disorderly Conduct in a Capitol Building" and (G) "Parading, Demonstrating or Picketing in a Capitol Building."

 c. Four variations of charges of violence including 18 U.S.C. § 231(a)(3) acts in furtherance of "Civil Disorder" or hindering officers during a civil disorder; 18 U.S.C. § 111(a)(1) "Assaulting, Resisting, or Impeding Certain Officers"; 18 U.S.C § 1752(a)(4) "Engaging in Physical Violence in a Restricted Building or Grounds"; and 40 U.S.C. § 5104(e)(2)(F) "Acts of Violence in the Capitol Grounds or Buildings."

The First Superseding Indictment ("FSI") filed on December 1, 2021, at Dkt. No. 25, is as the law customarily describes such as "thread bare."  It consists only of conclusory statements of law and no factual allegations whatsoever.  Presumably, the FSI is illuminated by the Statement of Facts filed on May 17, 2021, at Dkt. No. 1-1, originally in Magistrate Case No. 1:21-mj-00429-GMH, which states (*not in the order presented in the document*):

 a. "At such time, the certification proceedings were still underway, and the exterior doors and windows were locked or otherwise secured.  Members of the of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts."

  *However, there are no allegations that Gray had anything to do with any of that, and the allegations indicate that Gray was not present until 2:57 PM.  At least 2:57 PM is the first point in time at which the Statement of Offense and the investigation that produced it notice Gray's presence.*

---

[1] Apparently meaning just being disruptive in general, not disruption of the Joint Session.

b.  As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol.

*However, of course, merely being near or among a crowd is not a crime.*

c.  Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

d.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

*However, there is no allegation that Defendant Gray had anything to do with any of this.*

e.  Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.  Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

*Actually, whatever the cause of recessing Congress was, it existed as early as 2:14 PM, according to the court testimony of (then) U.S. House Parliamentarian Thomas J. Wickham in USA v. Stewart Rhodes, et al., Criminal Case No. 1:22-cr-00015, testimony on October 19, 2022.  Clearly, the <u>earliest</u> reaction to a threat would indicate when the threat first existed.  Because nothing can be done in zero time, the cause of Congress recessing must have existed considerably earlier than 2:14 PM.*

f.  During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there, including Daniel GRAY, as described below.

*The construction here "as described below" – creating a distinction between the allegations "above the line" from those "below the line" and other aspects of this transitional paragraph indicate and reinforce that Defendant Gray had nothing to do with any of the events above the paragraph.*

g.  Gray states that "a female cop stole my phone and I got mace'd . . . and I'm like

4

you know what, we're doing this and so we literally pushed them from the front steps of the Capitol all the way back." (Gray disputes this account of events.)

h.  The affiant reviewed body-worn cameras worn by members of the Washington, D.C. Metropolitan Police Department ("MPD") that recorded Gray inside the Rotunda area of the U.S. Capitol Building on January 6, 2021. In sum, the body-worn camera footage recorded that, at approximately 2:57 p.m., a group of MPD and United States Capitol Police ("USCP") officers were standing at the top of the stairs off of the west-side of the Capitol Rotunda, in an effort to deny the rioters the ability to maneuver through the Rotunda.

i.  In one such body-worn camera video, Gray joined a group of rioters, who are yelling at the officers for various reasons, and Gray remained in the vicinity.[2]

Yelling of course does not by itself constitute a riot. The U.S. Capitol being 751 feet long and frequently filled with tours of school children, tourists, visitors, lobbyists, special interest groups, staff, and visiting government personnel, yelling might not even qualify as disruptive. The word "yelling" can cover a broad spectrum of very different activity, especially given the size of the Capitol building. And what constitutes a riot turns on other factors, not on yelling. A large crowd all yelling in unison could violate noise limitations yet perhaps in no way constitute any kind of riot in a given fact pattern. Indeed, yelling alone, whether lawful or not, would probably never be a riot. As to being "in the vicinity" of rioters, 18 U.S. Code § 2102 – "Definitions" provides a statutory definition of "riot" in s section focused on riots as:

> **(a)**
> As used in this chapter, the term "riot" means a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by

---

[2]    No crime exists, of course, of merely being in the vicinity of a riot. It is repugnant to American law to judge people other than as individuals for their individual actions. *See, e.g., The Dream Defenders*, et al., v. *Ron DeSantis*, 21-cv-191, ECF No. 137 (N.D. Fla. Sept. 9, 2021) (injunction against anti-riot law in part because the legislation appeared to criminalize the defendant's protest activities even if he did not participate in the violent acts of others).

one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

## III.  GOVERNING LAW:

Prosecutors while enjoying many advantages such as nearly limitless government resources, must also meet more compelling and strict burdens than usual for attorneys in other contexts:

In *Berger v. United States*, Justice George Sutherland, who was part of the Schechter majority, said the following about ***the role of the prosecutor:***

**[He] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.** [7]

*Bennett L. Gershman, "Hard Strikes and Foul Blows:" Berger v. United States 75 Years After, 42 Loy. U. Chi. L. J. 177, 179 (2010). Available at:* ***http://lawecommons.luc.edu/luclj/vol42/iss1/8*** *(citing to  Berger v. United States, 295 U.S. 78, 88 (1935) (emphases added).*

Perhaps even more compelling:

Also, there is little doubt that Justice Sutherland's articulation of the special obligation of the prosecutor to ensure that "justice shall be done" was influenced by then-Canon 5 of the Canons of Professional Ethics of the American Bar Association, which stated:

6

> **"The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible."**

*Gershman,* at 194.

### 18 U.S. Code § 1512 – "Tampering with a witness, victim, or an informant" [3]

requires that:

**(a)**

**(1)** Whoever kills or attempts to kill another person, with intent to—

**(A)** prevent the attendance or testimony of any person in an official proceeding;

**(B)** prevent the production of a record, document, or other object, in an official proceeding; or

**(C)** prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

**(2)** Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—

**(A)** influence, delay, or prevent the testimony of any person in an official proceeding;

**(B)** cause or induce any person to—

**(i)** withhold testimony, or withhold a record, document, or other object, from an official proceeding;

**(ii)** alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding;

**(iii)** evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

**(iv)** be absent from an official proceeding to which

---

[3] **https://www.law.cornell.edu/uscode/text/18/1512**

that person has been summoned by legal process; or

**(C)** hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

**(3)** The punishment for an offense under this subsection is—

**(A)** in the case of a killing, the punishment provided in sections 1111 and 1112;

**(B)** in the case of—

**(i)** an attempt to murder; or

**(ii)** the use or attempted use of physical force against any person;

imprisonment for not more than 30 years; and

**(C)** in the case of the threat of use of physical force against any person, imprisonment for not more than 20 years.

**(b)** Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

**(3)** hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation [1] supervised release,,[1] parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

**(c)**Whoever corruptly—

   (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
   (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

**(d)**Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from—

   (1) attending or testifying in an official proceeding;
   (2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation [1] supervised release,,[1] parole, or release pending judicial proceedings;
   (3) arresting or seeking the arrest of another person in connection with a Federal offense; or
   (4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding;

or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both.

**(e)** In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.

* * *

## IV. ARGUMENT

### A.  MOTION TO DISMISS FOR FAILURE TO STATE AN OFFENSE

As stated, the First Superseding Indictment contains no factual allegations at all on any topic.  The Statement of Offense, even if we may give extreme generosity to the Government that the Statement of Offense for issuing an arrest warrant may be used to supplement the fact-free indictment, there are no factual allegations in the Statement of Offense either that Defendant

Gray in any way obstructed an official proceeding.  Perhaps others did.  But not Gray.

The Statement of Offense – assuming that it can serve to cure the defects in the indictment clearly identifies the obstruction of an official proceeding as being the _**evacuation**_ of the Joint Session of Congress on January 6, 2021, which the Government identifies as being at 2:20 PM, but the testimony of the Parliamentarian of the U.S. House Representatives Tom Wickham on October 19, 2021, states that Speaker of the House Nancy Pelosi was whisked away from the podium of the House at 2:14 PM.  One assumes that the evaluation of threats as causes for evacuation, the decision-making process, physically traveling to the well of the House and Senate Chambers, and communicate a recommendation must consume additional time.

Strikingly, however, there are no allegations at all of:

- Any cause of any kind of the allegation or circumstances that "at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers."

- Who instructed this?  It is written only in the passive voice.[4]

- Why did such person instruct them to evacuate?

- What was the cause for the decision to evacuate?

- When was the earliest time when the cause to evacuate existed.

- When was the earliest time the decision to evacuate was made.

- Specifically, did Defendant Gray obstruct an official proceeding?

---

[4]    Note that the sufficiency of the indictment must stand on its own.  The question is not what the Government could have written, but what it actually did write.  Whether an indictment could be written better is immaterial.  It cannot be speculated how a different document might affect a defendant's rights, because it is the document as written that may prejudice his rights.

- In what way did Defendant Gray obstruct an official proceeding?

- Did Gray in any way cause the evacuation of the Joint Session of Congress which started no later than 2:14 PM. if he was not there.

- Although the Statement of Offense does allege in detail acts of violence and brawling with police, it does not allege any purpose, motive, intent, etc., for Gray to have done so.  Therefore, what does the Government allege other than the concession that a police officer inexplicably grabbed his phone and he followed her into the building to get his phone back.

- What role did Gray play in causing the obstruction of an official proceeding, which is specifically identified as being the evacuation of the Joint Session of Congress?

- Given that the Government concedes that no one obstructed the Joint Session of Congress, but that the session evacuated itself on its own upon someone's instructions, who or what caused the evacuation of the session.

Furthermore, the doctrine of "Corpus Delicti" would bar mere statements by Defendant Gray unsupported by hard concrete proof of the elements of the offense.  The doctrine does not allow a defendant's statements alone to support conviction.

In *Hunter v. District of Columbia* , 47 App. D.C. 406 (D.C. Cir. 1918), for example, the Circuit Court examined an indictment that alleged that the defendants had "congregate[d] and assemble[d] on Pennsylvania avenue, N.W., [and] did then and there crowd, obstruct, and incommode the free use of the sidewalk thereof on said avenue" in violation of the unlawful assembly statute. *Id.* at 408. Beyond the general terms of acts prohibited by the statute, there was no averment of fact "to inform defendants of the nature of the acts which [were] relied upon by

the prosecution as constituting alleged obstruction of the sidewalk, or that would enable defendants to make an intelligent defense, much less to advise the court of the sufficiency of the charge in law to support a conviction." *Id.* at 410. And the fact that the charging document "fail[ed] to set out the acts committed by the defendants which constituted the crowding bstructing of the free use of the walk by them[,]" *Id.* at 409, was a fatal flaw. As stated by the *Hunter* Court:

> [i]t is elementary that an information or indictment must set out the ***facts*** constituting the offense, with sufficient clearness to apprise the defendant of the charge he is expected to meet, and to inform the court of their sufficiency to sustain the conviction. ... In other words, when the accused is led to the bar of justice, the information or indictment must contain the elements of the offense with which he is charged, with sufficient clearness to fully advise him of the ***exact*** crime which he is alleged to have committed.

*Id.* at 409, 410 *(emphasis added)* (internal quotation marks and citation omitted).

The *Hunter* Court also observed that the defendants in that case could have engaged in a number of acts that fell outside the scope of the statute, and thus, by failing to specify the defendants' particular conduct, the indictment was "too vague, general, and uncertain to meet the requirements of the established rules of criminal pleading," which in turn rendered it "insufficient in law." *Id.* at 410.

Before trial, a defendant in a criminal case may move to dismiss the charging document for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). *See United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016)*(Citations omitted).* The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged. *Ankinyoyenu* at 9-10. *See United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C.2012); *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C.2011). Moreover, in analyzing this, "a district court is limited to reviewing the face

of the charging document and, more specifically, the language used to charge the crimes."
*United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006)(emphasis original).

A valid indictment must set out "the elements of the offense intended to be charged and
sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Pickett*,
353 F.3d 62,67 (D.C. Cir. 2004). The government must state the essential elements of the crime
and allegations of "overt acts [constituting the offense] with sufficient specificity." *United States
v. Childress*, 58 F.3d 693, 720 (D.C. Cir. 1995).

A criminal complaint is also meant to satisfy at least two constitutional provisions. First,
it gives Sixth Amendment notice of the nature and circumstances of the alleged crime so the
accused may meet the charge and defend himself. *United States v. Hitt*, 249 F.3d 1010, 1016
(D.C. Cir. 2001); *Hamling v. United States*, 418 U.S. 87, 117 (1974). Second, a valid indictment
fulfills the Fifth Amendment's edicts that citizens are not placed in jeopardy twice for the same
offense. *Stirone v. United States*, 361 U.S. 212, 218 (1960); *United States v. Martinez,* 764
F.Supp.2d 166, 170 (D.D.C.2011) (quotations and citations omitted). That is, the allegations
must be sufficiently clear, complete, thorough enough, non-generic, and specific to the particular
Defendant to identify if the Defendant were later charged with the same offense that double
jeopardy applies to bar a second prosecution of the same offense.

A criminal complaint fulfills these fundamental constitutional provisions when it sets out
both the elements of the crime and the factual circumstances that would satisfy those elements
when assumed true. *Hamling*, 418 U.S. at 118-19. A criminal complaint may be dismissed as
constitutionally insufficient when it does not join the elements with factual allegations. *See
Russell v. United States*, 369 U.S. 749, 763-771 (1962); *United States v. Hillie*, 227 F. Supp. 3d
57 (D.D.C. Jan. 5, 2017). The Supreme Court explained:

"[The second object of an indictment is] to inform the court of the facts
alleged, so that it may decide whether they are sufficient in law to
support a conviction. For this, facts are to be stated, not conclusions of
law alone." *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

## B. ALTHOUGH WE CAN ONLY IMAGINE WHAT THE GOVERNMENT MIGHT HAVE ALLEGED, 18 U.S.C. 1512(c)(2) DOES NOT COVER THE POSSIBLE ALLEGATIONS OF OBSTRUCTION OF AN OFFICIAL PROCEEDING

### 1.  *Hundreds of January 6 Defendants in Dozens of Cases Raise Challenges*

The charge of obstruction of an official proceeding as a violation of 18 U.S.C. 1512(c)(2)

carries a penalty of up to 20 years in prison as a felony.  Therefore, even though Gray believes

that the Government has not actually alleged a violation, Gray by counsel cannot ignore the legal

risk of the charge and fail to address it.

Many District Court Judges in this Court have considered challenges to 18 U.S.C.

1512(c)(2).  The motions in many different January 6 related cases vary considerably as to the

reasons asserted.  Gray, by counsel, would like to join in and associate himself with all of those

Motions to Dismiss criminal charges under 18 U.S.C. 1512(c)(2) and apply any appellate

decision in his favor.  However, it is not clear that Gray can join motions across the hundreds of

different cases arising from events related to January 6, 2021.

What do we mean that motions challenge 18 U.S.C. 1512(c)(2)?  None of the challenges

to Gray's knowledge context the validity of that statute, but challenge whether the Government

is misinterpreting and mis-using the statute to apply to fact patterns that do not come within the

orbit of the statute.

Many such motions challenge whether the Joint Session of Congress which is held every

four years on January 6 qualifies as an "official proceeding" on some serious technical grounds

that the entire statute 18 U.S.C. 1512 is clearly addressed to adjudicatory proceedings involving

witnesses, evidence, and adjudicatory decision.

Other challenges argue that 1512(c)(2) should not be read in isolation but as a
continuation of the rest of 18 U.S.C. 1512 and consistent with its overall limitations and
meaning.  It is a remainder clause.  And therefore it must be read in context.  This includes the
fact that the statute focuses on altering or withholding documents or intimidating witnesses in a
court trial.

Other challenges contend at least as applied to this kind of situation, such as where it
sounds in lobbying or petitioning the government for redress of grievances, it becomes as applied
unconstitutionally void for vagueness.

Other challenges focus on legislative history which would clearly argue for applying the
subsection only to withholding or altering documents or threatening witnesses.

The challenges that Defendant Gray emphasizes as strongest in his view – but not to
suggest the other challenges should be ignored – are that

a)  The modifier "corruptly" at the start of subsection 1512(c)(2) – particularly in the
context of the rest of the statute – signals that the intent of Congress was to focus on
corrupt motives or techniques, primarily financial.

Congress could have used qualifiers like "violently" – and in other subsections
Congress actually did so.   Congress did not mean to duplicate other subsections.
Congress already covered the topic elsewhere of any violent act to disrupt a court
trial.  But those sections and subsections are not as vague and malleable.

Congress could have used qualifiers like "unlawfully" and certainly knows how to
say so if that is what Congress means.

b)  The structure of 1512(c)(2) connecting it by "*or*" from the previous subsection

1512(c)(1) does not allow 1512(c)(2) to be read in isolation as a stand-alone law, but as an alternative but connected concept to 1512(c)(1).

c)  The modifier "corruptly" at the start of subsection 1512(c)(2) is unconstitutionally void for vagueness.  If the statute is limited to the overall purpose of 18 U.S.C. 1512, then the ambiguity, vagueness, or confusion does not arise.  But once the subsection is untethered from the topic of protecting judicial trials or quasi-judicial administrative trials from corruption, the qualifier becomes vague and subject to many unclear alternative interpretations.

d)  The connector "otherwise" also limits the meaning of 1512(c)(2) to the topics set forth in 1512 pursuant to the doctrine of ***noscitur a sociis,*** that an open-ended category following a list of specific examples must interpreted within that context.

### 2.  *Judge Nichols Decision on 18 U.S.C. 1512(c)(2) in United States v. Garrett Miller, Faces Currently Pending Appeal*

The Honorable Carl J. Nichols, District Court Judge, struck down the same Count (prosecutors are bringing identical counts across many January 6-related criminal cases) in *U.S.A. v. Garrett Miller*, Criminal Case No. 1:21-cr-00119-CJN, Memorandum Opinion (Nichols, Carl, J.) (D.D.C. March 7, 2022)

As a result, the Government has appealed.  Currently pending in the U.S. Court of Appeals for the District of Columbia Circuit is the Government's appeal.  We could relatively shortly receive guidance.  But the Circuit's oral argument docket through mid-December does not show plans to argue *Miller* as of yet.

Nichols did reject the "Joint Session is not an official proceeding" argument.  However, Judge Nichols began with setting forth applicable standards, including:

### B. The Court must exercise restraint when assessing the reach of criminal statutes

Because Miller challenges the scope of a federal criminal statute and its application to his alleged conduct, additional interpretive rules apply. First, federal courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute." *United States v. Aguilar*, 515 U.S. 593, 600 (1995). The Supreme Court has urged this restraint "both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *Id.* at 600 (citations omitted); *cf. Sessions v. Dimaya*, 138 S. Ct. 1204, 1223–28 (2018) (Gorsuch, J., concurring in part and concurring in judgment). This "prudent rule of construction" continues with force today. *Dowling v. United States*, 473 U.S. 207, 214 (1985); *see Marinello v. United States*, 138 S. Ct. 1101, 1108 (2018) (endorsing the rule).

Running parallel to this principle is the rule of lenity. "[T]he rule of lenity is venerable," *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) (en banc) (Bibas, J., concurring), having arisen to mitigate draconian sentences in England and having been firmly established in English law by the time of Blackstone, *id.* at 473. "[I]t took root in our law soon thereafter." *Id.*

"Under the rule of lenity, courts construe penal laws strictly and resolve ambiguities in favor of the defendant," *id.*, so long as doing so would not "conflict with the implied or expressed intent of Congress," *Liparota v. United States*, 471 U.S. 419, 427 (1985). Under current doctrine, the rule of lenity applies to instances of "grievous" ambiguity, *see Shular v. United States*, 140 S. Ct. 779, 788 (2020) (Kavanaugh, J., concurring) (collecting citations), a construction that is arguably in tension with the rule's historical origins, *see* 1 William Blackstone, *Commentaries* \*88 ("Penal statutes must be construed strictly."). *See also Wooden v. United States*, ___ U.S. ___, ___ (2022) (Gorsuch, J., concurring in judgment) (slip op. at 9–12); *but see id.* (Kavanaugh, J., concurring) (slip op. at 1–4).

### 3. *Judge Nichols Strikes 18 U.S.C. 1512(c)(2) in United States v. Garrett Miller, Criminal* Case No. 1:21-cr-00119-CJN

Judge Nichols concluded after a thoughtful and open-minded (carefully considering each

alternative with respect) analysis, starting on page 29, that:

**The Court therefore concludes that § 1512(c)(2) must be interpreted as limited by subsection (c)(1), *and thus requires that***

***the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding.***

And Judge Nichols analyzed the issues setting forth the details of the issues:

### E. Miller's alleged conduct falls outside of § 1512(c)(2)

For all the foregoing reasons, the Court believes there are two plausible interpretations of the statute: either § 1512(c)(1) merely includes examples of conduct that violates § 1512(c)(2), or § 1512(c)(1) limits the scope of § 1512(c)(2). The text, structure, and development of the statute over time suggest that the second reading is the better one. But the first is, at a minimum, plausible.

At the very least, the Court is left with a serious ambiguity in a criminal statute. As noted above, courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute," *Aguilar*, 515 U.S. at 600, and have "construe[d] penal laws strictly and resolve[d] ambiguities in favor of the defendant," *Nasir*, 17 F.4th at 473 (Bibas, J., concurring) (citing *Liparota*, 471 U.S. at 427). Applying these principles here "gives citizens fair warning of what conduct is illegal, ensuring that [an] ambiguous statute[] do[es] not reach beyond [its] clear scope." *Nasir*, 17 F.4th at 473 (Bibas, J., concurring). And it makes sure that "the power of punishment is vested in the legislative, not the judicial department." *Id.* (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.)). The Court therefore concludes that § 1512(c)(2) must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding.

Judge Nichols also explained his analysis as follows:

Applying the traditional tools of statutory interpretation—text, structure, and the development of the statute over time—the Court concludes that three readings of the statute are possible, and two are plausible. This is therefore a circumstance in which the Court must "exercise[ ] restraint in assessing the reach of a federal criminal statute," *Aguilar*, 515 U.S. at 600, and "resolve ambiguities in favor of the defendant," *Nasir*, 17 F.4th at 473 (Bibas, J., concurring) (citing *Liparota*, 471 U.S. at 427).

### A. The text of § 1512(c) supports three possible readings of the

statute

The Court begins, as it must, with the text. Recall what § 1512(c) proscribes:

> (c) Whoever corruptly—
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (emphasis added).

Miller is charged with violating only subsection (2).

Reading § 1512(c)(2) alone is linguistically awkward. That is because of the adverbial use of the word "otherwise," such that § 1512(c)(2), on its own, makes criminal "whoever corruptly . . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so." The parties are therefore in agreement that the meaning of "otherwise" is critical to determining what § 1512(c)(2) covers. They differ, however, over what that meaning is, and whether or how the word "otherwise" ties § 1512(c)(2) to the prior subsection—§ 1512(c)(1).

*Otherwise as a clean break between subsections*. When § 1512(c) became law, "otherwise" had three different definitions that are plausible in this context: "in a different way or manner: differently"; "in different circumstances: under other conditions"; and "in other respects." *Otherwise*, *Webster's Third New Int'l Dictionary of the English Language Unabridged* (2002).

Relying on the first definition—"in a different way or manner"—and the breadth of the terms in § 1512(c)(2), the government suggests that "otherwise" essentially serves as a clean break between subsections (c)(1) and (2), and thus the only question is whether Miller "corruptly . . . obstruct[ed], influence[d], or impede[d] any official proceeding, or attempt[ed] to do so." Under this reading, there would be no relationship between subsections (c)(1) and (c)(2) at all.

There are a number of problems with this interpretation. *First*, it ignores that "otherwise" has several different (though related)

definitions, each of which implies a relationship to something else—here, subsection (c)(1).

*Second,* and more important, this interpretation does not give meaning to the word "otherwise." When possible, of course, the Court must give effect to every word in a statute. *Setser v. United States*, 566 U.S. 231, 239 (2012). But if § 1512(c)(2) is read as wholly untethered to § 1512(c)(1), then "otherwise" would be pure surplusage. In other words, under this reading, subsection (c)(2) would have the same scope and effect as if Congress had instead omitted the word "otherwise."

*Third*, reading "otherwise" in this way is inconsistent with *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015). * * *

### 4. *Modifier "Corruptly' in 18 U.S.C. 1512(c)(2) Requires Motive of Pecuniary Motive or other benefit; Subsection Limited to Scope of 18 U.S.C. 1512(c)(1)*

Defendant Gray, by counsel, certainly adopts and urges Judge Nichols analysis, which – quite frankly – grows on one with more careful study. Although Judge Nichol's bottom line seems surprising, his thoughtful and painstaking analysis of each interpretive factor leads mathematically to this result.

However, Gray, by counsel, also urges the Court to find that the modifier "corruptly" as applied in the Government's approach becomes unconstitutionally void for vagueness as the statute is applied and that the connector "otherwise" strictly limits 1512(c)(2) under the application of ***noscitur a sociis,*** expressed under any number of different labels, or similar analytical approaches.

Defendant Gray contends that the best definition of "corruptly" seems to be seeking some advantage from an official (or an official giving some advantage) "inconsistent with official duty <u>***and***</u> the rights of others" which is done "***with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person***" to which the actor would not be entitled by proper proceedings.

20

Black's Law Dictionary defines 'corruptly' as used in criminal-law statutes as 'indicates a wrongful desire for pecuniary gain or other advantage.' Black's Law Dictionary 371 (8th ed. 2004)." *United States of America vs. Samuel Saldana*, U.S. Court of Appeals for the Fifth Circuit, Case No. 04-50527, Opinion, August 18, 2005 , footnote 7.

Therefore, "corruptly" cannot be satisfied by alleging or arguing "violently" or merely "unlawfully." In fact, the legal history of the word suggests that it involves a financial motive or purpose, although perhaps in pursuit of a non-cash pecuniary motive.

*Marinello v. United States*, 138 Ct. 1101, 1114 (2018) *(emphasis added)* is highly instructive:

> The difference between these *mens rea* requirements is significant. While "willfully" requires proof only "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty," *Cheek v. United States,* 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), "corruptly" requires proof that the defendant "act[ed] with an intent to procure an unlawful benefit either for [himself] or for some other person," *United States v. Floyd,* 740 F.3d 22, 31 (C.A.1 2014) (collecting cases); see also Black's Law Dictionary 414 (rev. 4th ed. 1951) ("corruptly" "generally imports a wrongful design to acquire some pecuniary or other advantage"). **In other words, "corruptly" requires proof that the defendant not only knew he was obtaining an "unlawful benefit" but that his "objective" or "purpose" was to obtain that unlawful benefit. See 21 Am.Jur.2d, Criminal Law § 114 (2016) (explaining that specific intent requires both knowledge and purpose).**

One definition is explored under *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part) *(emphases added)* for 18 U.S.C. 1503, as an analogy:

> Finally, respondent posits that the phrase "'corruptly ... endeavors to influence, obstruct, or impede' may be unconstitutionally vague," in that it fails to provide sufficient notice that lying to potential grand jury witnesses in an effort to thwart a grand jury investigation is proscribed. Brief for Respondent 22, n. 13. Statutory language need not be colloquial, however, and the term "corruptly" in criminal laws has a longstanding and well-accepted meaning. It denotes ***"[a]n act done with an intent to give some advantage inconsistent with***

***official duty and the rights of others*** .... It includes bribery but is more comprehensive; because an act may be corruptly done though the advantage to be derived from it be not offered by another." *United States* v. *Ogle,* **613 F.2d 233**, 238 (CAlO) (internal quotation marks omitted), cert. denied, 449 U. S. 825 (1980). See also Ballentine's Law Dictionary 276 (3d ed. 1969); Black's Law Dictionary 345 (6th ed. 1990). **As the District Court here instructed the jury:**

> **"An act is done corruptly if it's done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person." App. 117.**

Scalia first defines "corruptly" as "***"[a]n act done with an intent to give some advantage inconsistent with official duty and the rights of others***" and then affirms the jury instruction definition that

> "An act is done corruptly if it's done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, ***with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person.***"

Thus, Scalia combines two different definitions, but endorses the jury instructions that corruptly means "with a hope or expectation of either <u>financial gain or other benefit</u> to oneself or a benefit of another person."

A synthesis of Scalia's analysis would be that "corruptly" implies a financial gain to the actor or someone in privity with the actor.  There is no precedent of a defendant acting corruptly to benefit some unrelated person.  The actual usage suggests that the other person is tied to the actor in such a manner that the actor derives some personal benefit or satisfaction from benefiting the other person, such as a family member.

### 5. *Gray argues that "Corruptly" is Unconstitutionally Vague*

"Ambiguity exists if there is a plausible interpretation of the statute" [that would not authorize money damages against the Government. *Nordic Village, supra*, at 34, 37, 112 S.Ct.

1011.] *Fed. Aviation Admin. v. Cooper*, 132 S. Ct. 1441, 182 L. Ed. 2d 497, 566 U.S. 284, 291

(2012).   Ambiguity arises where a contractual term is "fairly susceptible of different

constructions," "obscure in meaning through indefiniteness of expression," or has a double

meaning. *Duquesne Light Co. v. Westinghouse Elec. Corp.,*, 66 F.3d 604, 614 (3rd  Cir. 1995).

A contract is not, however, rendered ambiguous by the mere fact that the parties do not agree on

the proper construction.   *Duquesne Light Co*., 66 F.3d at 614.

      "'Ambiguity' can exist in a written document only in those cases where language is

susceptible of more than one meaning.[18]"   *Hardy and Hardy*, Cal. App, 135 P. 2d, 615, 619,

quoted in Dr.  Sanford Schane, "Ambiguity and Misunderstanding in the Law," *Thomas*

*Jefferson Law Review*, vol. 26, No. 1. 2002.

      Here 18 U.S.C. 1512(c) is manifestly ambiguous at least in the novel interpretation

propounded by the Government in these cases.   And when such ambiguity also reflects a

Constitutional conflict, such conflict must always be resolved on the side of the

Constitution.   Therefore, the Court should consider the extensive references by the various

Defendants to the legislative history and context of the passage of 18 U.S.C. 1512(c)(2).

      Arguably, in a statutory scheme about the destruction of documents, when there are other

statutes that would be rendered superfluous by the interpretation of "official proceeding" urged

by the Government.  The transition between 1512(c)(1) and (c)(2) "or otherwise" is clearly

ambiguous.

### 6.   *Interpretation to Avoid Conflict with First Amendment to be Preferred*

      Whatever one thinks about what – in hindsight – various divergent groups, who

obviously could not all be acting in the same manner in a hive mind, ended up doing on January

6, 2021, the meaning of the statute 18 U.S.C. 1512(c)(2) must be fixed as a lodestar to guide

legal conduct, not to respond to different circumstances.

If an "official proceeding" can include a congressional event that is non-adjudicatory, and one can be charged with "obstructing" or "influencing" that Congressional event, then the First Amendment right of the people to "petition their government for the redress of grievances" of the U.S. Constitution is clearly infringed.

If one "obstructs" or "influences" a Congressional hearing by urging its members to reach a particular decision, that is a Constitutional right, unless it is done "corruptly." So what does "corruptly" mean to distinguish conduct from First Amendment protected expression.

In what way does the qualifier "corruptly" separate Constitutionally-protected expression from criminally-prohibited conduct?

Of course, it is a rule of statutory interpretation to construe any statute consistently with the U.S. Constitution rather than to provoke a confrontation with the terms of the U.S. Constitution. *See Ohio v. Akron Ctr. for Reproductive Health*, 497 U.S. 502, 514, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) ('Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality' (internal quotations omitted).)

Congress chose the word "corruptly" rather than criminalizing whomsoever "unlawfully" "or otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so …." Congress could have chosen other qualifiers which would have risked including demonstrations or free speech which might be loud or unruly, but still protected by the First Amendment. Instead, Congress used the financially-oriented word "corruptly" which sounds in the financial context of the Arthur Anderson trials and the Sarbanes-Oxley law from which the statute originated. Congress could have written "violently" or the like, though they did not.

At least, this construction is the one that avoids a collision with the First Amendment.

Even if the Court is not persuaded by arguments about other approaches to interpretation, the duty to avoid a conflict with a constitutional right should be independently considered in addition to all other arguments.  This duty is followed whether or not any other rule of construction applies.

Almost nothing charged in this case can constitute a crime without the Government guessing, with no evidence and with clearly no *mens rea*, what the motives, intents, and purposes of Defendants might have been.  Under the First Amendment, even over-the-top statements of frustration or exuberance may be considered hyperbole and taken with a grain of salt.  Especially, as an extension of the 2020 Presidential campaign still being disputed, [5] it is by definition political rhetoric which the courts have found may be hyperbole, not literal.  [6]

## V.  CONCLUSION

---

[5]     See, generally, e.g., *Bush v. Gore,* 531 U.S. 98 (2000) (2000 campaign not finally decided until December 12, 2000, when both George W. Bush and Al Gore disputed the Electoral College votes out of Florida all the way up to the U.S. Supreme Court).

[6]     The Supreme Court has repeatedly extended First Amendment protection to statements that, in context, do not reasonably state or imply defamatory falsehoods in the requisite sense. In *Greenbelt Co-Op. Publ. Assn., Inc. v. Bresler*, 398 U.S. 6, 13-15 (1970), the Court concluded that use of the word "blackmail" to describe the plaintiff's hard-nosed negotiating tactics could not reasonably be understood to mean the plaintiff had committed a criminal offense.  In context, "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiating position extremely unreasonable." Id. at 14.  Consequently, "the imposition of liability . . . was constitutionally impermissible" because "as a matter of constitutional law, the word 'blackmail' . . . was not slander when spoken, and not libel when reported in the Greenbelt News Review." Id. at 13. *Farah v. Esquire Magazine*, 736 F.3d 528, 535-536, 407 U.S. App. D.C. 208, 215-216, (D.C. Cir. 2013).  Similarly, humans read and understand language within its many contexts.  Humans use over-the-top language to blow off steam and express frustration in ways that other humans comprehend as not being literal assertions of fact or literal statements of intentions or plans.  Language must be understood, in full, context, in the way that real humans speak, even when imperfect.  A mother exclaiming "I'm going to kill that boy" is understood as merely being frustration.

The Defendant requests this Court to grant this Motion and such other relief as may be deemed just.   Defendant Daniel Paul Gray, requests that the Court dismiss Count 2 for the reasons stated above.

Dated:  October 21, 2022                          Respectfully Submitted,

                                                                /s/John M. Pierce
                                                                John M. Pierce
                                                                John Pierce Law P.C.
                                                                21550 Oxnard Street
                                                                3rd Floor, PMB #172
                                                                Woodland Hills, CA 91367
                                                                Tel: (213) 400-0725
                                                                Email: *jpierce@johnpiercelaw.com*
                                                                Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2022, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

Jacqueline N. Schesnol, Esq.
DOJ-USAO
United States Attorney's Office
40 North Central Avenue, Suite 1800
Phoenix, AZ 85004-4449
(602) 514-7689
**jacqueline.schesnol@usdoj.gov**

/s/ John M. Pierce