UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:21-cr-00495-ABJ |
| v. | **DANIEL PAUL GRAY'S MOTION TO DISMISS COUNT 9 OF THE FIRST SUPERSEDING INDICTMENT** |
| DANIEL GRAY, | |
| Defendant. | |

## DANIEL PAUL GRAY'S MOTION TO DISMISS COUNT 9 OF THE FIRST SUPERSEDING INDICTMENT

Defendant Daniel Paul Gray ("Gray"), through the undersigned counsel, John M. Pierce, Esq., presents this motion to dismiss Count 9 of the First Superseding Indictment, first because the charging documents fail to state an offense in that they do not allege any parading, demonstrating, or picketing, second because these terms as applied are unconstitutionally vague and subject to manipulation by officials unbridled by statutory standards in violation of Gray's fundamental First Amendment rights, and third because if the conduct alleged constituted "parading" or "demonstrating" or "picketing" then Count 9 becomes merely a redundant restatement of Counts 4, 5, and 7.

In support of his motion Gray states as follows:

## I.  INTRODUCTION AND OVERVIEW

This particular Motion, alongside others, addresses only Count 9 for reasons distinctly different from the other Counts.

Count 9 collides with the First Amendment to the U.S. Constitution like fault lines

1

between two continental shelves of the Earth's crust.  This is not merely a matter of possible imperfection in the pleading and charging by Count 9.  It is that the claims of Count 9 severely conflict with the U.S. Constitution rights of free speech and petition the government for the redress of grievances.  Therefore, what might be permissible in general must be analyzed differently when just over the line looms competing and powerful Constitutional interests.

Count 9 alleges without more:

---

**COUNT NINE**

On or about January 6, 2021, within the District of Columbia, DANIEL PAUL GRAY, willfully and knowingly paraded, demonstrated, and picketed in any United States Building.

**(Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).**

---

Yet there are no factual allegations of Defendant Gray (1) parading (2) demonstrating or (3) picketing in the U.S. Capitol building nor in any other Capitol Building.

Indeed, while the Statement of Offense includes averments that there is probable cause to believe that Defendant Gray committed other offenses, the Statement of Offense conspicuously does not even conclude that there has been any violation or reason to believe or probable cause there was any violation of 18 U.S.C. 5104(e)(2)(G) (which is Count 9).

It is not only the opinion of counsel for Defendant Gray that there is no allegation supporting a charge of "Parading, Demonstrating, or Picketing in a Capitol Building," but the Statement of Offense (again combined with the complete lack of any factual allegations in the threadbare indictment) does not claim that there has been any violation of 18 U.S.C.

5104(e)(2)(G).

Therefore, Count 9 fails to state an offense.  Count 9 must be stricken pursuant to Rule 12(3)(B)(v) of the Federal Rules of Criminal Procedure ("FRCP") "failure to state an offense."

Moreover, if there were such factual allegations, Count 9 would violate the First Amendment to the U.S. Constitution, including as void for vagueness.

Furthermore, merely being present in a crowd does not make one guilty of what others in the crowd did or are doing.

Further, if the allegations – denied by Defendant Gray by the way – of Gray being disorderly or violent are what the prosecution views as "parading, demonstrating, or picketing" than it is merely the same Count as Count 5 and Count 7, and arguably Count 4.  Therefore, Count 9 must be dismissed pursuant to FRCP Rule 12 (3)(B) (ii) "charging the same offense in more than one count (multiplicity); …"   Despite the possible convenience to the Government of raising alternative theories of liability, the collision with the First Amendment is too great here.

The Court is urged not to fall into the mistake sometimes made that there is some claim of violent physical conduct being treated as First Amendment activity, as occurred in *USA v. Nordean*, Criminal Case No. 1:21-cr-00175.  In  no way is Gray suggesting that the First Amendment drapes conduct that is violent or disruptive with immunity.  The point is to draw a distinction between conduct that is purely expressive, or a risk of sweeping purely expressive activity in with properly-prohibited physical conduct.

## II.  THE ALLEGATIONS AT ISSUE

Defendant Daniel Paul Gray ("Gray") is charged with nine (9) Counts which actually in substance come down to --

    a.   One Count of 18 U.S.C. § 1512(c)(2) "Obstruction of an Official Proceeding" for

allegedly disrupting the quadrennial Joint Session of Congress for the receipt, evaluation, resolution of disputes about, and ultimate counting of the votes for President and Vice President by the Electoral College, including allegedly aiding and abetting thereof, which is a felony punishable by up to 20 years in prison.

b. Four variations of "Entering and Remaining in a Restricted Building or Grounds" with charges of disruption thereby[1] including under 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) "Disorderly Conduct in a Capitol Building" and (G) "Parading, Demonstrating or Picketing in a Capitol Building."

c. Four variations of charges of violence including 18 U.S.C. § 231(a)(3) acts in furtherance of "Civil Disorder" or hindering officers during a civil disorder; 18 U.S.C. § 111(a)(1) "Assaulting, Resisting, or Impeding Certain Officers"; 18 U.S.C § 1752(a)(4) "Engaging in Physical Violence in a Restricted Building or Grounds"; and 40 U.S.C. § 5104(e)(2)(F) "Acts of Violence in the Capitol Grounds or Buildings."

The First Superseding Indictment ("FSI") filed on December 1, 2021, at Dkt. No. 25, is as the law customarily describes such as "thread bare." It consists only of conclusory statements of law and no factual allegations whatsoever. Presumably, the FSI is illuminated by the Statement of Facts filed on May 17, 2021, at Dkt. No. 1-1, originally in Magistrate Case No. 1:21-mj-00429-GMH, which states:

a. "shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts."

However, there are no allegations that Gray had anything to do with any of that, and the allegations indicate that Gray was not present until 2:57 PM.

---

[1]  Apparently meaning just being disruptive in general, not disruption of the Joint Session.

b.   As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol.

c.   Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

d.   Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

e.   Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.  [2]

f.   Gray states that "a female cop stole my phone and I got mace'd . . . and I'm like you know what, we're doing this and so we literally pushed them from the front steps of the Capitol all the way back." (Gray disputes this account of events.)

g.   The affiant reviewed body-worn cameras worn by members of the Washington, D.C. Metropolitan Police Department ("MPD") that recorded Gray inside the Rotunda area of the U.S. Capitol Building on January 6, 2021. In sum, the body-worn camera footage recorded that, at approximately 2:57 p.m., a group of MPD and United States Capitol Police ("USCP") officers were standing at the top of the stairs off of the west-side of the Capitol Rotunda, in an effort to deny the rioters the ability to maneuver through the Rotunda.

h.   In one body-worn camera video, Gray joined a group of rioters, who are yelling at the officers for various reasons, and Gray remained in the vicinity.[3]

Yelling of course does not by itself constitute a riot.  The U.S. Capitol being 751 feet

---

[2]      Actually, the cause of recessing Congress existed as early as 2:14 PM, according to the court testimony of (then) U.S. House Parliamentarian Thomas J. Wickham in *USA v. Stewart Rhodes, et al.*,  Criminal Case No. 1:22-cr-00015, testimony on October 19, 2022.  Clearly, the _earliest_ reaction to a threat would indicate when the threat first existed.

[3]      No crime exists, of course, of merely being in the vicinity of a riot. It is repugnant to American law to judge people other than as individuals for their individual actions.  *See, e.g., The Dream Defenders*, et al., *v. Ron DeSantis*, 21-cv-191, ECF No. 137 (N.D. Fla. Sept. 9, 2021) (injunction against anti-riot law in part because the legislation appeared to criminalize the de-fendant's protest activities even if he did not participate in the violent acts of others).

long and frequently filled with tours of school children, tourists, visitors, lobbyists, special

interest groups, staff, and visiting government personnel, yelling might not even qualify as

disruptive.  The word "yelling" can over a broad spectrum of very different activity, especially

given the size of the Capitol building.  And what constitutes a riot turns on other factors, not on

yelling.  A large crowd all yelling in unison could violate noise limitations yet perhaps in no way

constitute any kind of riot in a given fact pattern.  Indeed, yelling alone, whether lawful or not,

would probably never be a riot.  As to being "in the vicinity" of rioters, 18 U.S. Code § 2102 –

"Definitions" provides a statutory definition of "riot" in s section focused on riots as:

> **(a)**
> As used in this chapter, the term "riot" means a public disturbance
> involving (1) an act or acts of violence by one or more persons part of an
> assemblage of three or more persons, which act or acts shall constitute a
> clear and present danger of, or shall result in, damage or injury to the
> property of any other person or to the person of any other individual or
> (2) a threat or threats of the commission of an act or acts of violence by
> one or more persons part of an assemblage of three or more persons
> having, individually or collectively, the ability of immediate execution of
> such threat or threats, where the performance of the threatened act or acts
> of violence would constitute a clear and present danger of, or would
> result in, damage or injury to the property of any other person or to the
> person of any other individual.

Thus, the significant characteristics are not those that sound in the First Amendment.


## III.  GOVERNING LAW:

Prosecutors while enjoying many advantages such as nearly limitless government

resources, must also meet more compelling and strict burdens than usual for attorneys in other

contexts:

> In *Berger v. United States*, Justice George Sutherland, who was part of
> the Schechter majority, said the following about ***the role of the***
> ***prosecutor:***

> **[He] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.** [7]

*Bennett L. Gershman, "Hard Strikes and Foul Blows:" Berger v. United States 75 Years After, 42 Loy. U. Chi. L. J. 177, 179 (2010). Available at:* **http://lawcommons.luc.edu/luclj/vol42/iss1/8** *(citing to  Berger v. United States, 295 U.S. 78, 88 (1935) (emphases added).*

Perhaps even more compelling:

> Also, there is little doubt that Justice Sutherland's articulation of the special obligation of the prosecutor to ensure that "justice shall be done" was influenced by then-Canon 5 of the Canons of Professional Ethics of the American Bar Association, which stated:
>
> > **"The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible."**

*Gershman,* at 194.

> 40 U.S.C. §5104(e)(2)(G) is part of a sequence of statutory provisions concerning potentially unlawful activity on the Capitol Grounds and, in some circumstances, in locations in Capitol Buildings. Different provisions of 40 U.S.C. §5104 have different location restrictions in terms of applicability. 40 U.S.C. §5104(c) limits (1) articles for sale; (2) displaying a sign placard or other form of advertisement; and (3) soliciting fares, alms or contributions on the Grounds. 40 U.S.C. §5104(d) limits conduct to remove or injure architectural features or plants on the Grounds. 40 U.S.C. §5104(d). 40 U.S.C. §5104(e)(2)(a)-(c) refer to specific rooms in the Capitol Buildings.  40 U.S.C. §5104(e)(2)(a)-(c). 40 U.S.C. §5104(e)(2)(d)-(f) apply to both the Grounds and any of the

Capitol Buildings. However, 40 U.S.C. §5104(e)(2)(G) applies only in any Capitol Building. [4]

## IV. ARGUMENT

### A.  MOTION TO DISMISS FOR FAILURE TO STATE AN OFFENSE

As stated, the First Superseding Indictment contains no factual allegations at all on any topic.  The Statement of Offense, even if we may give extreme generosity to the Government that the Statement of Offense for issuing an arrest warrant may be used to supplement the fact-free indictment, there are no factual allegations in the Statement of Offense either that Defendant Gray that Gray engaged in any "parading," any "picketing," or any "demonstrating."

In *Hunter v. District of Columbia* , 47 App. D.C. 406 (D.C. Cir. 1918), for example, the Circuit Court examined an indictment that alleged that the defendants had "congregate[d] and assemble[d] on Pennsylvania avenue, N.W., [and] did then and there crowd, obstruct, and incommode the free use of the sidewalk thereof on said avenue" in violation of the unlawful assembly statute. *Id.* at 408. Beyond the general terms of acts prohibited by the statute, there was no averment of fact "to inform defendants of the nature of the acts which [were] relied upon by the prosecution as constituting alleged obstruction of the sidewalk, or that would enable defendants to make an intelligent defense, much less to advise the court of the sufficiency of the charge in law to support a conviction." *Id.* at 410. And the fact that the charging document "fail[ed] to set out the acts committed by the defendants which constituted the crowding

---

[4]     Nandan Kenkeremath, Memorandum Of Points And Authorities In Support Of Defendants' Second Motion To Dismiss Count IV Of The Superseding Information Based On A Facial Challenge To 40 U.S.C. §§5104(E)(2)(G) And Motion For Declaratory Judgment Under 28 U.S.C § 2201 Based On The Facial Challenge, in *USA v. Cynthia Ballenger Price and Christopher Price*, Criminal Case No. 1:21-cr00719-JEB, Dkt. # 54;  Memorandum Of Points And Authorities In Support Of  Defendant's First Motion To Dismiss The Superseding Information, in *Price*, Dkt. # 55.

bstructing of the free use of the walk by them[,]" *Id.* at 409, was a fatal flaw. As stated by the

*Hunter* Court:

> [i]t is elementary that an information or indictment must set out the **facts** constituting the offense, with sufficient clearness to apprise the defendant of the charge he is expected to meet, and to inform the court of their sufficiency to sustain the conviction. ... In other words, when the accused is led to the bar of justice, the information or indictment must contain the elements of the offense with which he is charged, with sufficient clearness to fully advise him of the **exact** crime which he is alleged to have committed.

*Id.* at 409, 410 *(emphasis added)* (internal quotation marks and citation omitted).

The *Hunter* Court also observed that the defendants in that case could have engaged in a number of acts that fell outside the scope of the statute, and thus, by failing to specify the defendants' particular conduct, the indictment was "too vague, general, and uncertain to meet the requirements of the established rules of criminal pleading," which in turn rendered it "insufficient in law." *Id.* at 410.

Before trial, a defendant in a criminal case may move to dismiss the charging document for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). *See United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016)*(Citations omitted).* The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged. *Ankinyoyenu* at 9-10. *See United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C.2012); *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C.2011). Moreover, in analyzing this, "a district court is limited to reviewing the face of the charging document and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006)(emphasis original).

A valid information must set out "the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Pickett*,

353 F.3d 62,67 (D.C. Cir. 2004). The government must state the essential elements of the crime and allegations of "overt acts [constituting the offense] with sufficient specificity." *United States v. Childress*, 58 F.3d 693, 720 (D.C. Cir. 1995).

A criminal complaint is also meant to satisfy at least two constitutional provisions. First, it gives Sixth Amendment notice of the nature and circumstances of the alleged crime so the accused may meet the charge and defend himself. *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001); *Hamling v. United States*, 418 U.S. 87, 117 (1974). Second, a valid indictment fulfills the Fifth Amendment's edicts that citizens are not placed in jeopardy twice for the same offense. *Stirone v. United States*, 361 U.S. 212, 218 (1960); *United States v. Martinez,* 764 F.Supp.2d 166, 170 (D.D.C.2011) (quotations and citations omitted). That is, the allegations must be sufficiently clear, complete, thorough enough, non-generic, and specific to the particular Defendant to identify if the Defendant were later charged with the same offense that double jeopardy applies to bar a second prosecution of the same offense.

A criminal complaint fulfills these fundamental constitutional provisions when it sets out both the elements of the crime and the factual circumstances that would satisfy those elements when assumed true. *Hamling*, 418 U.S. at 118-19. A criminal complaint may be dismissed as constitutionally insufficient when it does not join the elements with factual allegations. *See Russell v. United States*, 369 U.S. 749, 763-771 (1962); *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017). The Supreme Court explained:

> "[The second object of an indictment is] to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. For this, facts are to be stated, not conclusions of law alone." *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

The Supreme Court also noted:

> "It is an elementary principle of criminal pleading, that where the
> definition of an offence, whether it be at common law or by statute,
> `includes *generic* terms, it is not sufficient that the indictment shall
> charge the offence in the same generic terms as in the definition; but it
> must state the species, — it must descend to particulars.'" *Id*. (emphasis
> added).

The Supreme Court made it clear that allegations that are generic and not specific to a

specific defendant are not sufficient.

The Fifth and Sixth Amendments and Rule 7(c)(1) generally require that the elements be

combined with allegations of fact that establish the offense when assumed true. *Hamling*, 418

U.S. at 117-118; Fed. R. Crim. Proc. 7(c)(1) ("The indictment or information must be a plain,

concise, and definite written statement of the essential facts constituting the offense charged...")

(emphasis added). The D.C. Circuit has also ruled on the necessity of factual allegations. *See*

*United States v. Nance*, 533 F.2d 699, 701-703 (D.C. Cir. 1976) (reversing where the indictment

failed to make necessary factual allegations).


    **B.  MOTION TO DISMISS BECAUSE STATUTE AS APPLIED
VIOLATES THE FIRST AMENDMENT RIGHTS OF
DEFENDANT GRAY AND IS UNCONSTITUTIONALLY
VAGUE IN CONFLICT WITH THE FIRST AMENDMENT.** [5]

       *1) 40 U.S.C. §5104(e)(2)(G) Carries the Serious Consequences
of a Criminal Statute with Criminal Penalties.*

40 U.S.C. §5104(e)(2)(G) is a criminal provision and subject to penalties including a fine

under title 18, imprisonment of not more than six months, or both. See 40 U.S.C. §5109(b).

---

[5]     With compliments to attorney Nandan Kenkeremath pioneering similar motions earlier
this Summer in *USA v. Cynthia Ballenger Price and Christopher Price*, Criminal Case No. 1:21-
cr00719-JEB in this Court.  Those parallel motions are awaiting decision.  Counsel is not yet
sure, with motions deadline looming, whether the Court would allow joining motions from other
cases instead of filing them here in this case.

Indeed, 40 U.S.C. §5109(b) makes an "attempt" to commit a violation of 40 U.S.C. §5104(e)(2)(G) subject to the same potential criminal sanctions. Moreover, 40 U.S.C. §5104(e)(2)(G) connects to 18 U.S.C. § 2 which provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

As a corollary, the Court has altered its traditional rules of standing to permit — in the First Amendment area — "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski* v. *Pfister*, 380 U.S. 479, 486 (1965).Id. at 611.

The Broadrick Court, *infra,* continued that "Litigants, therefore, are permitted to challenge a statute not because their own right of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. Id.

### 2) 40 U.S.C. §5104(e)(2)(G) Directly and Solely Addresses First Amendment Protected Conduct

40 U.S.C. §5104(e)(2)(G) prohibits three specific modes of First Amendment activity—parading, demonstrating, and picketing. Other First Amendment activity that is not within the ambit of parading, demonstrating or picketing are not prohibited.

As discussed further below, both 40 U.S.C. §5104(e)(2)(G) and (f) are expressly defined by First Amendment activity. Whereas other provisions such as 40 U.S.C. §5104(b), (d), and (e) limit activity without reference to First Amendment activity terms. For example, 40 U.S.C.

§5104(e)(2)(D)-(F) have restrictions stating an individual or group of individuals may not:

> (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress;

> (E) obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings;

> (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings

Just looking at the text, 40 U.S.C. §5104(e)(2)(G) can cover a universe of conduct that can run afoul of one or more of the provisions of 40 U.S.C. §5104(e)(2)(D)-(F) but may or may not also a universe of conduct that does not run afoul of one or more of the provisions of 40 U.S.C. §5104(e)(2)(D)-(F).

By its own terms 40 U.S.C. §5104(e)(2)(G) addresses parading, demonstrating and picketing. Somewhat similar to §5104(e)(2)(G), 40 U.S.C. §5104(f) states:

(f) Parades, Assemblages, and Display of Flags.—   Except as provided in section 5106 of this title,[6] a person may not—

> (1) parade, stand, or move in processions or assemblages in the Grounds; or
> (2) display in the Grounds a flag, banner, or device designed or adapted to bring
> into public notice a party, organization, or movement.

As a comparison, 40 U.S.C. §5104(e)(2)(G) states: "An individual or group of individuals may not willfully and knowingly—parade, demonstrate or picket in any of the Capitol Buildings."

---

[6]     Speaker and President of the Congress may suspend prohibitions for special events.

*As stated in Houston v. Hill*, 482 U.S. 451, 107 S. Ct. 2502 (1987):

> Instead, "[i]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates* v. *The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982); *Kolender* v. *Lawson*, 461 U.S. 352, 359, n. 8 (1983). Criminal statutes must be scrutinized with particular care, *e.g., Winters* v. *New York*, 333 U.S. 507, 515 (1948); those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application. *E. g., Kolender, supra*, at 359, n. 8.

### 3) 40 U.S.C. §5104(e)(2)(G) is Unconstitutional, Facially or as Applied

The First Amendment literally says "Congress shall make no law" restricting speech, advocacy, or petitioning. By consultation with any English dictionary, this freedom must apply to "picketing" and "parading" and "demonstrating."

The Court in *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50 (D.D.C. 2000) found regulations purporting to implement 40 U.S.C. §5104(e)(2)(G) to violate the First Amendment and Due Process. With respect to the First Amendment the *Bynum* Court states:

> The Court, however, cannot conclude that the regulation is reasonable in light of the purposes it could legitimately serve. While the regulation is justified by the need expressed in the statute to prevent disruptive conduct in the Capitol, it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive, such as "speechmaking… or other expressive conduct…" Traffic Regulations for the Capitol Grounds §158. Because the regulations proscriptions are not limited to the legitimate purposes set forth in the statue, it is an unreasonable and therefore an unconstitutional restriction on speech. …

*Id.* at 57 *(Citations omitted).*

In *Bynum* Judge Friedman also found that a "picketing and parading" ban violated due process because it was vague: "While there certainly are types of expressive acts that rise to the level of a demonstration, any regulation that allows a police officer the unfettered discretion to

restrict behavior merely because it 'conveys a message' or because it has a 'propensity to attract a crowd of onlookers' cannot survive a due process challenge." *Id.*

With respect to Due Process and unconstitutional vagueness, the *Bynum* Court states:

> In fact, the definition of "demonstration" in the regulation encompassing all expressive conduct, whether disruptive or not appears to expand the restrictive powers given by the statute to the Capitol Police rather than limit or guide them. This definitional "guidepost" thus has the potential to squelch nearly any type of expressive conduct, whether or not it is actually a demonstration, and may sweep within its scope expression that is protected by the First Amendment. The regulation therefore is both unconstitutionally overbroad and unconstitutionally vague.

*Id. at 58.*

The main holding in Bynum was that broad regulations purporting to implement 40 U.S.C. §5104(e)(2)(G) violated the First Amendment and Due Process. As part of its analysis, the *Bynum* Court stated:

> Indeed, the regulation goes beyond what Congress intended and permits the Capitol Police to block activity not proscribed or intended to be proscribed by the statute Congress enacted. The statute prohibits loud, threatening or abusive language; any disorderly or disruptive conduct engaged in with the intent to impede, disrupt or disturb the orderly conduct of any session of Congress or a congressional hearing or committee meeting; any behavior that obstructs or impedes passage through or within the Capitol or any of its buildings or grounds; physical violence; and parades and picketing. 40 U.S.C. § 193f(b) (4)-(7).[5] When viewed in the context of these other various forms of statutorily prohibited behavior, Congress' statutory prohibition against "demonstrat[ing]" appears aimed at controlling only such conduct that would disrupt the orderly business of Congress not activities such as quiet praying, accompanied by bowed heads and folded hands. The police could properly use the statutory standards of Section 193f(b) itself to control, for example, groups of people praying in a way that impeded or obstructed passageways, hearings or meetings, involved loud, threatening or abusive language or physical violence, or was otherwise disorderly or disruptive. Plaintiff's activity was none of these.

*Bynum* at 57-58.

See also *Lederman v. U.S.*, 291 F.3d 36 (D.C. Cir. 2002) (reviewing facial First

Amendment challenge to a regulatory prohibition on demonstration activities outside Capitol

building). As stated in *Lederman*,

> We hold only that, as currently written, the demonstration ban imposes
> "a serious loss to speech . . . for a disproportionately small governmental
> gain," *Citing White House Vigil for the ERA Comm. v. Clark,* 746 F.2d
> 1518, 1544 (D.C. Cir. 1984)(Wald, J. concurring in the judgement in part
> and dissenting in part on other grounds).

*Lederman* at 46.

> *Lederman* undercuts a key pillar of the logic*:*

> If "time, place, or manner restrictions can[not] bootstrap *themselves* into
> validity by their mere existence, even if prolonged," *Henderson v. Lujan,*
> 964 F.2d 1179, 1183 (D.C. Cir. 1992) (emphasis added), then
> unconstitutional restrictions certainly cannot, by their mere existence,
> bootstrap *subsequent* restrictions into validity.

*Lederman* at 43.

In *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972)

*(emphases added)*, the court states:

> **_The Capitol Grounds_** (excluding such places as the Senate and House
> floors, committee rooms, etc.) **_have traditionally been open to the_**
> **_public_**; indeed, thousands of people visit them each year. Thus, we
> cannot agree with the defendants that the Capitol Grounds have ever
> been characterized by the serenity and quiet of a hospital or library.

While the *Jeannette Rankin Brigade* court was reviewing an issue concerning the Capitol

Grounds, the stated exclusions of the Senate and House floors and committee rooms is more

consistent with the public availability issues. In any event, the *Jeannette Ranking Brigade* court

did not specifically opine on areas of Capitol Buildings that were not the Senate and House

floors or committee rooms.

In *Jeannette Rankin Brigade,* 342 F. Supp.at 583-84, the Court held a blanket statutory

prohibition on parades, assemblages or processions on Capitol Grounds **_is unconstitutional_**. See

also *Gregory v. Chicago*, 394 U.S. 111, 89 S. Ct. 946 (1969) (where the Supreme Court

reviewed a protest march aimed at the Chicago city government and held that as long as marches

are "peaceful and orderly" they are protected by the First Amendment.); *Edwards v. South*

*Carolina*, 372 U.S. 229, 83 S. Ct. 680 (1963); *Carey v. Brown*, 447 U.S. 455, 100 S. Ct. 2286

(1980); *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S. Ct. 2286 (1972); and

*Thornhill v. Alabama*, 310 U.S. 88, 60 S. Ct. 736 (1940).

### 4)   40 U.S.C. §5104(e)(2)(G) Does Not Survive Constitutional Muster Because It Is Overbroad Under the First Amendment and Overbroad and Unduly Vague Under the Fifth Amendment

First, a law is unconstitutionally vague when "it fails to give ordinary people fair notice

of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson*

*v. United States*, 576 U.S. 591, 595 (2015). As stated in *Johnson:*

> [O]ur *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp. For instance, we have deemed a law prohibiting grocers from charging an "unjust or unreasonable rate" void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable. *L. Cohen Grocery Co.,* 255 U.S. at 89, 41 S.Ct 298. We have similarly deemed void for vagueness a law prohibiting people on sidewalks from "conduct[ing] themselves in a manner annoying to persons passing by"— even though spitting in someone's face would surely be annoying. *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed. 2d 214 (1971). These decisions refute any suggestion that the existence of *some* obviously risky crimes establishes the residual clause's constitutionality.

As stated in *N.A.A.C.P. v. Button*, 371 U.S. 415, 83 S. Ct. 328 (1963):

> If the line drawn by the decree between the permitted and prohibited activities of the NAACP, its members and lawyers is an ambiguous one, we will not presume that the statute curtails constitutionally protected activity as little as possible. For standards of permissible statutory vagueness are strict in the area of free expression. See *Smith* v. *California*, 361 U.S. 147, 151; *Winters* v. *New York*, 333 U.S. 507, 509-510, 517-518; *Herndon* v. *Lowry*, 301 U.S. 242; *Stromberg* v.

> *California*, 283 U.S. 359; *United States* v. *C.I.O.*, 335 U.S. 106, 142
> (Rutledge, J., concurring).

*N.A.A.C.P. at 432.*

As discussed above, two court decisions in Bynum and Lederman struck down attempts to provide regulations to provide guidance regarding 40 U.S.C. §5104(e)(2)(G). In other words, two sets of proposed regulations failed Constitutional muster because a board could not properly draw the line between protected and not protected conduct under Due Process and the First Amendment. Again, it is important to understand that 40 U.S.C. §5104(e)(2)(G) does not require illegal entry to the Capitol as an element. On its own terms to "parade, demonstrate, or picket" can draw criminal sanctions under the provision, regardless of how a party entered. Yet, as discussed above, people often go to the Capitol as part of their day and broader range of activities. Sometimes, these activities highlight or concern political causes or issues. They may all wear the same political messages on their t-shirts. They may all walk together in groups. These points should not provide for a criminal violation under the Constitution.

"An overbroad statute "sweeps within its scope a wide range of both protected and nonprotected expressive activity." *Hobbs v. Thompson,* 448 F.2d 456, 460 (5th Cir. 1971)." *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 435 (Tex. 1998).

As stated in *Hobbs*:

> Lack of fair warning to actors or lack of adequate standards to guide
> enforcers also may lead to a "chill" on privileged activity. A person
> contemplating action who might be covered by a vague statute is left in
> doubt as to whether he is covered by the statute and, if so, whether his
> claim of privilege will be upheld. [Citations omitted]. *Hobbs* at 460-
> 461.

As further stated in *Hobbs*:

> The overbreadth doctrine, therefore, focuses directly on the need for
> precision in legislative draftmanship to avoid conflict with First

Amendment rights. Even though the interests a statute promotes may justify some infringement upon First Amendment rights, the overbreadth doctrine condemns those means to that legitimate end which comprehend too broad an incursion upon the realm of First Amendment activity. Where a law is substantially overbroad, in that it sweeps within its scope a wide range of both protected and non-protected expressive activity, and where no "readily apparent construction suggests itself as a vehicle for rehabilitating the statute in a single [proceeding]," *Hobbs* at 460.

As stated by the Supreme Court in *Smith v. Goguen*, 415 U.S. 566, 94 S. Ct. 1242 (1974):

[The doctrine of due process and vagueness] requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement." [footnote omitted]. Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts. [footnote omitted] *Id*. at 573.

The overbreadth concerns date back to the legislative history. During a statutory revision in 1967, Representative O'Neal stated, "I am a little bit disturbed about the language…wherein the proposed legislation, if adopted, would make it a violation to parade, demonstrate, or picket within any of the Capitol buildings." Congressional Record-House (October 19, 1967) at 29389, available at https://www.govinfo.gov/content/pkg/GPO-CRECB-1967-pt22/pdf/GPO-CRECB-1967-pt22-2-1.pdf (last accessed June 1, 2022) (hereinafter "Congressional Record").

Representative Bingham expressed concerns about overbreadth:

I am deeply concerned about the broad scope, vague language, and possible interference with first amendment rights of the bill before us today. It was so hastily conceived and reported out of committee that no official views of the Justice Department or the District government were available. Moreover, there seems to be no disposition on the part of the bill's supporters to accept clarifying amendments.

Congressional Record at 29394. He also commented on the law's potential impact on peaceful, quiet visitors, describing the law as "a case of using a shotgun to eliminate at gnat."

Congressional Record at 29395. At the time of the 1967 revision, Representative Edwards

expressed that he believed the "parading, picketing, or demonstrating language violated the First

Amendment because it was *not* limited to disorderly or disruptive conduct. Congressional

Record at 29392. Representative Cramer stated that to add "with intent to disrupt the orderly

conduct of official business" would "gut [ ] the section," suggesting Representative Cramer, at

least, did not care about the qualification. *Id*. at 29394.

Here the range of possible actions that may fall under the umbrella of 40 U.S.C.

§5104(e)(2)(G) is a formless mix that includes actions protected under the First Amendment.

What if someone broadcasts from his or her smart phone and criticizes the government on that

broadcast? That action poses no security issue yet could arguably be viewed as "demonstrating."

Or is that reporting? If people gather in the Capitol to celebrate a political victory is that a

demonstration or parade? What if people walked in a group carrying signs in a hallway. How is

this a different security or operational risk for Congress? Groups of students and others may

walk in single or double file all where tee-shirts celebrating America or a school. Is that a

"parade?" Again, the Capitol Police and those in charge of security and visitors can restrict areas,

size of groups, duration of stay, volume, and items that might pose a risk, all without referring to

whether the conduct is also a First Amendment mode of conduct like a demonstration. People

commonly communicate political ideas in the Capitol Buildings and that expression is protected

under First Amendment.

### 5) 40 U.S.C. §5104(e)(2)(G) Unconstitutionally Chills and Threatens Constitutionally Protected First Amendment Rights.

"Narrow tailoring is crucial where First Amendment activity is chilled–even if

indirectly– '[b]ecause First Amendment freedoms need breathing space to survive.'" Id. at 2384

(citing NACCP v. Button, 371 U.S. 415, 433 (1963)).

This is especially true in the context of the First Amendment. As the Government stated, this case "would require a remand" to apply a *de minimis* standard. Tr. of Oral Arg. 39 (Sept. 9, 2009). Applying this standard would thus require case-by-case determinations. But archetypical political speech would be chilled in the meantime. " 'First Amendment freedoms need breathing space to survive.' " *WRTL,supra,* at 468–469, 127 S.Ct. 2652 (opinion of ROBERTS , C.J.) (quoting *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) ). We decline to adopt an interpretation that requires intricate case-by-case determinations to verify whether political speech is banned, especially if we are convinced that, in the end, this corporation has a constitutional right to speak on this subject.

*Citizens United v. Fed. Election Commission,* 130 S. Ct. 876, 175 L. Ed. 2d 753, 558 U.S. 310, 329 (2010).

The First Amendment does not permit laws that force speakers to retain a campaign finance attorney, conduct demographic marketing research, or seek declaratory rulings before discussing the most salient political issues of our day. Prolix laws chill speech for the same reason that vague laws chill speech: People "of common intelligence must necessarily guess at [the law's] meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The Government may not render a ban on political speech constitutional by carving out a limited exemption through an amorphous regulatory interpretation. We must reject the approach suggested by the *amici* . Section 441b covers *Hillary* .

*Citizens United v. Fed. Election Commission,* 558 at 324.

### 6) 40 U.S.C. §5104(e)(2)(G) Suffers from Over-breadth and Inconsistent, Discriminatory Restrictions

There are also differences in the class of people subject to the provisions of 40 U.S.C.

§5104. 40 U.S.C. §5104(a), (b), (c), (d) and (f) all apply to "a person." On the other hand, 40

U.S.C. §5104(e)(3) has an exemption from all of 40 U.S.C. §5104(e) which states:

(3) Exemption of government officials.—  This subsection does not prohibit any act

performed in the lawful discharge of official duties by—

(A) a Member of Congress;
(B) an employee of a Member of Congress;

(C) an officer or employee of Congress or a committee of Congress; or
(D) an officer or employee of either House of Congress or a committee of that House.

The recent opinion of U.S. District Judge Colleen Kollar-Kotelly, shows the immediacy and importance of the issues the Prices raise in the facial challenge. The opinion states:

> Defendant primarily argues that because he was "recording" as a "videographer," he was not "parading or "demonstrating." The two, however, are not mutually exclusive. In truth, Defendant acted more as a social media influencer might, frequently urging his followers to "share, share, share."[citation omitted] Sharing, Rivera may have hoped, could have helped him "get [his][addition in original] name out there," one of Rivera's stated reasons for going to the Capitol on January 6, 2021. [citation omitted]. Indeed just before he joined the crowd, he was primarily concerned that no one appeared to be watching his Facebook Live [citation omitted]

As noted above, cameras, smart phones and recording are all allowed in the Capitol Buildings in most places. So, would the relationship to social media turn recording and commenting on a smart phone into conduct that is "demonstrating?" This was apparently relevant to one U.S. district court judge.

The *Rivera* opinion's use of *Brown v. Louisiana* 383 U.S. 131 (1966) and *Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288, 293 (1984) is revealing of the Constitutional problem. The opinion cites to *Brown* as evidence that the term "demonstrating" for purposes of a criminal statute includes the right to "protest by silent and reproachful presence" citing *Brown* at 142. Opinion at footnote 16. However, *Brown*, and the Constitution demand the opposite result. *Brown* is highlighting that protest by silent reproachful presence is constitutionally protected under the First Amendment. On that basis, the Court overturned the conviction.

Indeed, the Court in *Brown* stated:

> Petitioners' conduct was considerably less disruptive than in any of the
> preceding three situations in which this Court invalidated convictions
> under the same Louisiana statute or its predecessor, *Garner* v. *Louisiana*,
> 368 U.S. 157; *Taylor* v. *Louisiana*, 370 U.S. 154; and *Cox* v. *Louisiana*,
> 379 U.S. 536. Pp. 133-135, 139-140. *Brown* at 132.

The *Rivera* opinion shows the direct problem. The broad and ambiguous definition of

"demonstration" is synonymous with the term that is constitutionally protected and provides no

other qualifier other than the *mens rea* requirements. Similarly, The *Rivera* opinion claims at

footnote 16 that mere presence within a demonstration, is itself demonstrating (citing to *Clark* at

293). *Clark* was suggesting the breadth of Constitutional protection:

> We need not differ with the view of the Court of Appeals that overnight
> sleeping in connection with the demonstration is expressive conduct
> protected to some extent by the First Amendment. We assume for
> present purposes, but do not decide, that such is the case.

The *Rivera* opinion equates the breadth of the criminal *actus reus* in 40 U.S.C.

§5104(e)(2)(G) to the breadth of the Constitutional protection. A peaceful demonstration,

meaning complaining in a smartphone to an audience not at the Capitol, somehow becomes a

criminal violation. There is nothing in the statute to save anyone from the text of 40 U.S.C.

§5104(e)(2)(G) and the text constitutes a violation of the First and Fifth Amendments. Congress

has an obligation to speak in the actual terms that identify disruptive conduct not First

Amendment terms which can include orderly and peaceful expression.

### 7) The Government's Argument That No One Can Protest In The Capitol Or Other Building Where A "Secret Service Protectee" Visits Is Plainly Unconstitutional.

The Government's argued in *USA v. Lloyd Casimiro Cruz, Jr.*, Criminal Case No. 1:22-

cr-00064-RBW of this District,  that "judges of this Court have recognized that the U.S. Capitol

qualified as a "restricted building," citing various pretrial proceedings stemming from other January 6 cases.  The government attempted to bypass the First Amendment by the mere presence of the Vice President in the Capitol on Jan. 6 somehow allows for prosecutions of advocates, protestors or petitioners. ("[T]he U.S. Capitol building qualified as a "restricted building on January 6 under Section 1752(c)(1)(B) due to the Vice President's attendance and participation in the joint congressional session." Opposition, page 4.

In *Blair v. City of Evansville*, 361 F. Supp. 2d 846 (S.D.In. 2005), a district court upheld a lawsuit by a protestor (Blair) who was wrongly arrested for picketing a speech by Vice President Dick Cheney in 2002. *Blair* held that "the restriction of protesters to an area 500 feet away from the only entrance used by attendees, and on the opposite end of the building from where Vice President Cheney would enter the facility and from where the majority of people attending the event would park, burdened speech substantially more than was necessary to further the [government's] goals of safety."

The 1st amendment requires that the vice president and Congress cannot be entirely insulated from picketing and advocacy. See, e.g., *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 861-62 (9th Cir. 2004) (200 and 265 feet security zones found over broad); *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (seventy-five yard security zone found over broad because it prevented demonstration from reaching intended audience); but see *Madsen*, 512 U.S. at 771 (holding that a thirty-six-foot buffer zone on public property was narrow enough). *Blair*, 361 F. Supp. 2d at 858. Judge McKinney found that the location of the protest zone in Blair "eliminated any meaningful avenue for the communication of ideas by the protestors to at least one intended audience, the attendees."

## V.  CONCLUSION

The Defendant requests this Court to grant this Motion and such other relief as may be deemed just.  Defendant Daniel Paul Gray, demands to discover the potentially exculpatory information identified above.

Dated:  October 21, 2022               Respectfully Submitted,

/s/John M. Pierce
John M. Pierce
John Pierce Law P.C.
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: *jpierce@johnpiercelaw.com*
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

Jacqueline N. Schesnol, Esq.
DOJ-USAO
United States Attorney's Office
40 North Central Avenue, Suite 1800
Phoenix, AZ 85004-4449
(602) 514-7689
**jacqueline.schesnol@usdoj.gov**

/s/ John M. Pierce