UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Crim. Action No. 21-0495 (ABJ) |
| ) | |
| DANIEL PAUL GRAY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is defendant Daniel Paul Gray's Motion for Return of Property and Exculpatory Evidence Held by the United States. [Dkt. # 46] ("Mot."). Defendant asks the Court to return his cellular phone and firearm. *Id.* at 1. The government opposes the motion. Gov't's Opp. to Mot. [Dkt. # 48] ("Opp."). For the following reasons, defendant's motion is **DENIED**.

## BACKGROUND

On January 6, 2021, thousands of people took part in a deadly and destructive attack on the United States Capitol in an effort to disrupt the certification of the results of the 2020 presidential election. They forced their way into a federal building that was closed to the public on that day, requiring many elected officials and their staff – fearing for their safety – to flee or shelter in place, and injuring over one hundred law enforcement officers.[1] The defendant is charged in a nine count indictment with Civil Disorder in violation of 18 U.S.C. § 231(a)(3); Obstruction of an Official Proceeding and Aiding and Abetting in violation of 18 U.S.C. §§ 1512(c)(2) and 2; Assaulting,

---

1   *See Examining the U.S. Capitol Attack*, Committee on Homeland Security and Government Affairs & Committee on Rules and Administration Report (June 8, 2021), https://www.hsgac.senate.gov/imo/media/doc/HSGAC&RulesFullReport_ExaminingU.S.CapitolAttack.pdf.

Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1); Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2); Engaging in Physical Violence in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(4); Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D); Act of Physical Violence in the Capitol Grounds or Buildings in violation of 40 U.S.C. § 5104(e)(2)(F); and Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).  *See* Superseding Ind. [Dkt. # 25].

According to the criminal complaint filed by FBI Special Agent Benjamin Fulp, video footage and defendant's social media activity reflect his actions before, after, and on January 6, 2021.  Statement of Facts [Dkt. # 1] ("SOF") at 8.  Defendant posted several Facebook statuses on December 12, 2020, including "Militia finna be lit y'all!!!," and, "Sh[*]ts about to get lit y'all. I'm actually really excited at the possibility of the insurrection act being implemented."  SOF at 8.  In a video defendant posted to his Instagram account on January 8, 2021, he appears to be recording himself while describing his activities at the Capitol on January 6.  SOF at 2.  Defendant stated, "a female cop stole my phone and I got mace'd . . . and I'm like you know what, we're doing this and so we literally pushed them from the front steps of the Capitol all the way back."  SOF at 2.

The body-worn camera footage of the Metropolitan Police Department ("MPD") from January 6 shows defendant directing a group of rioters toward the west entrance of the Capitol. SOF at 3.  The agent described how defendant moved within the agitated crowd to the front row of rioters and had to be physically pushed back by MPD officers several times.  SOF at 3–4.  After a physical altercation between rioters and officers ensued, defendant was one of the first individuals to attempt to break through the police line.  SOF at 5.  As a MPD officer raised her

baton to protect herself, defendant grabbed the officer's baton and pushed backwards. SOF at 5. The officer fell down the stairs and was visibly injured, and fellow officers carried her outside for assistance. SOF at 5.

Defendant continued to push against the officers and broke through the police line to get into the Capitol atrium. SOF at 6. In the video he posted to Instagram on January 8, defendant stated that he stormed the office of the Speaker of the United States House of Representatives, Nancy Pelosi. SOF at 2. He claimed that he returned to the Capitol on January 7, 2021 and was immediately detained. SOF at 3. Defendant stated, "this is far from over, that was the coolest thing I've ever done in my entire life and stay tuned." SOF at 3. He also sent Instagram messages announcing, "Lol I was one of the first in the capital" and "we literally took congress over . . . was the rowdiest thing I've ever done and you know me lol." SOF at 8. On January 11, 2021, defendant messaged another user, "If Biden is sworn in Im coming back to fight." SOF at 9.

Defendant returned home to Florida, where he was arrested on May 18, 2021. *See* Arrest Warrant [Dkt. # 5]. On June 1, 2021, he was released on personal recognizance subject to standard conditions:

> (1) The defendant must not violate federal, state, or local law while on release.
>
> (2) The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.
>
> (3) The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of resident or telephone number.
>
> (4) The defendant must appear in court as required . . . . [and]
>
> (5) The defendant must sign an Appearance Bond, if ordered.

Order Setting Conditions of Release [Dkt. # 7] ("Order") at 1.  He was also ordered to abide by several other conditions, including that he "not possess a firearm, destructive device, or other weapon."  *Id.* at 2.  Defendant's prior criminal history includes two convictions for marijuana possession and trespassing.  *See* Pretrial Services Report (June 6, 2021) [Dkt. # 6] at 3–4.

On September 28, 2022, defendant filed a Motion for Return of Property and Exculpatory Evidence.  Mot. at 4.  Defendant asks for the return of his cell phone on the grounds that it contains exculpatory evidence and the government's retention of it therefore violates *Brady v. Maryland*, 373 U.S. 83 (1963).  *Id.*  In its opposition, the government stated that it offered to return the contents of defendant's cell phone upon receipt of a signed stipulation that a digital copy it had created is accurate.  Opp. at 2.  Since the parties were engaged in ongoing discussions on the topic, the government proposed that this request should be held in abeyance as it may soon become moot.  *Id.*  In his October 20, 2022 reply, defendant stated that the government had agreed to return a download of his cell phone data and that defense counsel had supplied a flash drive for that purpose.  Reply to Gov't's Opp. to Mot. [Dkt. # 50] ("Reply") at 1.

Defendant also asks for the return of his firearm, stating that it was wrongly seized from his vehicle during his arrest.  Mot. at 4.  The government opposes the return of defendant's firearm because it was lawfully seized incident to his arrest.  Opp. at 3.  Also, because the conditions of defendant's release include a provision that defendant may not possess firearms, the government suggests that defendant is "moving for a change of release conditions masked as a Rule 41(g) motion," and that he has failed to make the necessary showing to support the modification.  *Id.*

4

## LEGAL STANDARD

A person whose property is seized unlawfully may move for its return under Federal Rule of Criminal Procedure 41(g). A motion to return property "must be filed in the district where the property was seized." Fed. R. Crim. P. 41(g).

Under the Bail Reform Act, a defendant must be released on personal recognizance or upon the execution of an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The condition that the defendant not possess firearms is not a required condition of release under the Bail Reform Act; section 3142(b) requires only the condition that the defendant not violate any federal, state, or local law, and, if appropriate, that he cooperate in the collection of DNA. *Id.*

Pursuant to 18 U.S.C. § 3142(c), though, if the judicial officer determines that the release described in subsection (b), that is, release on personal recognizance or with an unsecured appearance bond, will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community:

such judicial officer shall order the pretrial release of the person –

> (A) subject to the condition that the person not commit a Federal, State, or local crime . . .; and

> (B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include . . .

[any of the thirteen possible conditions listed] or any other condition that is reasonably necessary.

18 U.S.C. § 3142(c)(1)(B).

One of the thirteen conditions listed in the statute is: "(viii) refrain from possessing a firearm, destructive device, or other dangerous weapon." *Id.* § 3142(c)(1)(B)(viii). Thus, the firearms condition is specifically contemplated by the statute, but the court must make a finding that it is reasonably necessary to protect the community. The district court reviews a bond determination made by the Magistrate Judge *de novo*. *See United States v. Saani*, 557 F. Supp. 2d 97, 98 (D.D.C. 2008).

Under 18 U.S.C. § 3142(g), the factors to be considered in determining whether there are conditions that will reasonably assure the safety of the community include:

> (1) the nature and circumstances of the charged offenses;
>
> (2) the weight of the evidence against the defendant;
>
> (3) the history and characteristics of the defendant; and
>
> (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g)(1)–(4).

## ANALYSIS

### I.   Defendant's Cellular Device

Given the ongoing discussions between the parties regarding the return of defendant's cellular device, Opp. at 2; Reply at 1, the motion for the return of the cell phone will be denied as moot. This ruling is without prejudice to a renewed motion should that become necessary in the future, and it is not a bar to a future motion to suppress evidence harvested from the cell phone if one is appropriate.

### II.     Defendant's Firearm

To the extent defendant has moved for the return of his firearm under Rule 41(g), the motion is denied.  Rule 41(g) provides that a motion for return of property "must be filed in the district where the property was seized."  Fed. R. Crim. P. 41(g); *see Williams v. United States*, 2013 WL 2456109, at *2 (D.D.C. June 6, 2013) (denying Rule 41(g) motion to return property because the property at issue was seized in Alabama).  Defendant's firearm was seized at the time of his arrest in Florida, *see* Arrest Warrant [Dkt. # 5]; Mot. at 1; Opp. at 2, and therefore, this Court lacks the authority to provide relief under Rule 41(g).

Moreover, it is a condition of defendant's release that he not possess a firearm, Order at 2, and to the extent defendant is seeking to modify that condition with this motion, that request is denied.  The condition prohibiting defendant's possession of a firearm is justified by the allegations against defendant and the need to protect the community.  The nature and circumstances of the nine charged offenses weigh heavily in favor of the restriction.  Defendant was not merely a protester or passive observer of the attack on the Capitol.  He is alleged to have physically assaulted and injured a police officer, pushed against other officers to break through police lines, directed groups of rioters, and stormed Speaker Pelosi's office.  SOF at 3–6.  As the D.C. Circuit has emphasized, "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided . . . or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way."  *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021); *see also United States v. Fairlamb*, 535 F. Supp. 3d 30, 44 (D.D.C. 2021) (finding that assaulting a police officer "shows a disregard for law and order and for those sworn to uphold it").

The remaining factors further support the condition that defendant not possess a firearm. The weight of the evidence against defendant is strong given the available videos and defendant's own statements on his social media. While there is a limited criminal history, defendant's alleged actions on January 6 and own pronouncements give rise to serious concerns about the danger that restoring his access to firearms would create. After forcibly assaulting and injuring a police officer, defendant turned to social media to proclaim this was "far from over" and that he was "coming back to fight." SOF at 2, 8–9.

In light of all of the information in the record, the Court also finds that the restriction on defendant's possession of firearms is the least restrictive means available to protect the public. The burden on defendant is minimal, as he has not been required to forfeit or surrender any firearm, but he has simply been denied access to it during the pendency of this case.

Finally, to the extent defendant intended to argue that the firearm was seized unlawfully, his motion included no facts or authorities that would support that conclusion. Therefore, the request to return the firearm will be denied, but this ruling is without prejudice to a well-supported motion to suppress in the future, should the government plan to offer the firearm in evidence in this case.

## CONCLUSION

For all of these reasons, defendant's motion for return of property is hereby **DENIED**.

AMY BERMAN JACKSON
United States District Judge

DATE: November 2, 2022