**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-495 (ABJ)** |
| **v.** | : | |
| | : | |
| **DANIEL GRAY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S NOTICE OF ALTERNATIVE PERPETRATOR DEFENSE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this response to Defendant Daniel Gray's Notice of Alternative Perpetrator Defense (ECF Doc. 51), and respectfully requests that this Court preclude admission of any such evidence. In support thereof, the government represents as follows.

## FACTUAL BACKGROUND

*The RNC Explosive Device*

At approximately 12:44 p.m. on January 6, 2021, United States Capitol Police ("USCP") were called to investigate an apparent explosive device at Republican National Committee ("RNC") headquarters at 310 First St. SE.[1] An alert was broadcast via the Joint Emergency Mass Notification Systems ("JEMNS") at 12:48 p.m.: "The USCP is responding to suspicious package at the 300 Block of First Street SE." At 12:52 p.m., USCP began to clear residences and businesses surrounding the 300 block of First St., SE, and, at 1:00 p.m., advised the Washington Metropolitan

---

[1] The facts listed in this section are primarily derived from the USCP's "Timeline of Events for January 6, 2021 Attack" which is available to the defense in discovery. The government has previously filed a redacted public copy of this document in *United States v. Guy Reffitt*, 21-cr-00032-DLF [ECF 172] and attaches a copy of that filing here as Government's Exhibit A.

Transit Authority ("WMATA") to have trains bypass the Capitol South station.  The James Madison Building, which faces the 200 block of First St., SE, was also evacuated.  At 1:09 p.m., USCP began to close roads in the area surrounding the 300 block of First St., SE, and issued a JEMNS alert telling Congressional staff and personnel to avoid the area.  USCP evacuated all staff from the Cannon House Office building starting at 1:11 p.m., broadcasting a message on the public address system in that building at 1:15 p.m. telling occupants, "Evacuate, evacuate, evacuate the Cannon House Office Building immediately due to a suspicious package and internally relocate to the Longworth House Office Building.  I repeat evacuate, evacuate, evacuate, the Cannon House Office Building immediately due to a suspicious package and internally relocate to the Longworth House Office Building."  At 1:48 p.m., roads were re-opened and staff was permitted to return to the Cannon building.  However, a JEMNS alert at 2:02 p.m. informed staff that they should leave the Cannon House Office Building through the tunnels and then shelter in place.  At 2:24 p.m., a JEMNS alert announced: "The USCP is preparing to disrupt a Suspicious Package in the 300 Block of First Street SE.  A loud bank [sic] may be heard in the area.  There is no cause for alarm, and no action needs to be taken by Congressional Staff."  USCP ultimately cleared the scene of the explosive device in the 300 block of First St., SE, at 3:33 p.m.

### *The DNC Explosive Device*

At 1:07 p.m. on January 6, 2021, USCP were dispatched to Democratic National Committee ("DNC") headquarters to investigate an apparent explosive device.  USCP advised occupants of the DNC and Fairchild buildings at 1:30 p.m. to shelter in place due to the explosive device discovered outside.  At 2:06 p.m., a JEMNs alert announced: "The USCP is preparing to disrupt a Suspicious package in the 400 Block of Canal Street SE.  A loud bang may be heard in the area.  There is no cause for alarm, and no action needs to be taken by Congressional Staff."  A

JEMNs alert at 4:21 p.m. informed users that the Canal St. SE scene had been cleared.  USCP then officially cleared the scene of the suspicious package located at the DNC at 4:36 p.m.

### General Facts

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 12:53 p.m., individuals in the crowd amassed near the Peace Circle broke through an unmanned bike rack barrier on the Pennsylvania walkway and then forced their way through a manned barrier onto U.S. Capitol grounds.  Once this opening had been made, the mob pressed onto restricted grounds on the West Front.  All available USCP units were immediately directed to the West Front of the Capitol to assist with numerous breaches and Civil Disturbance Unit (CDU) hard platoons were ordered to form a new defensive perimeter at the foot of the inaugural stage to prevent access to the building.   At 1:06 p.m., USCP officers were given authorization to use chemical munitions on the unruly crowd that had entered the restricted perimeter.  Having received a distress call from USCP, the Metropolitan Police Department ("MPD") began to respond to the West Front at approximately 1:10 p.m.  For the next thirty minutes, USCP and MPD officers attempted to establish a new defensive line in the face of a large and unruly crowd, with individuals utilizing the cover of the crowd to engage in periodic assaultive and obstructive acts against the police officers manning the defensive line.

Significantly outnumbered and subject to withering assaults, the ad hoc police line on the West Front was breached for the first time at approximately 1:42 p.m., when members of the crowd entered the stairway underneath the northwest scaffolding.  This subset of the mob met scattered

opposition from a small groups of police officers, but it eventually was able to overwhelm the officers and make it to the top of the stairwell and onto the Upper West Terrace by 2:03 p.m. Once there, these individuals had unfettered access to the exterior of the United States Capitol Building.

At the same time that the inner defensive lines were being breached on the West Front, a large crowd on the East Front succeeded in breaching the outer barricades on that side at 1:45 p.m. and advanced to the steps of the building. USCP officers attempted to establish new makeshift defensive lines at the foot of these steps and began deploying chemical munitions on the East Front at approximately 1:59 p.m.

With chemical munitions being deployed by officers on both sides of the Capitol, a large group of rioters on the West Front with no barriers between them and the building, and another large group of rioters on the East Front actively engaged with police officers manning makeshift barriers at the foot of the Senate and Rotunda sets of steps, a lockdown of the Capitol Building was declared. At 2:05 p.m., the USCP broadcast an announcement: "Due to an external security threat, no entry or exit is permitted at this time in the U.S. Capitol Building. You may move throughout the buildings but stay away from exterior windows and doors."

At 2:06 p.m., the police defensive line on the East Front at the base of the Rotunda steps was breached and officers fell back to defend the Rotunda doors. A JEMNS alert issued at 2:10 p.m. announced: "Due to an external security threat located on the West Front of the U.S. Capitol Building. No entry or exist [sic] is permitted at this time. You may move throughout the building(s) but stay away from exterior windows and doors. If you are outside seek cover." At the same time, a similar message was broadcast over the public address system inside the Capitol Building. At 2:10 p.m., a rioter on the East Front smashed a window by kicking it in and was

arrested.  Rioters on the West Front smashed windows in the Senate wing corridor at approximately 2:13 p.m., allowing the mob to enter the building through two windows and a door.

Vice President Mike Pence, who was in the Senate chamber, was evacuated to a secure location at 2:11 p.m. by USCP officers and members of the United States Secret Service.  At approximately 2:15 p.m., House and Senate leadership were also evacuated from their respective chambers.  As USCP officers were dispatched to try and contain the breaches, a lockdown of each chamber was declared.  At 2:17 p.m., the public address system in the building declared: "Security threat, security threat, security threat.  Due to a security threat inside the building, immediately seek shelter inside the nearest office.  Take visitors and emergency equipment.  Lock all doors if able.  If shelter is unavailable, seek cover or concealment.  Remain quiet and await further direction."  A minute later, a similar JEMNS alert was broadcast, adding that staff sheltering in place should "[r]emain quiet and silence electronics."

Senator Chuck Grassley, who was presiding in the Senate in the absence of Vice President Pence, declared the Senate recessed at 2:13 p.m., 167 Cong. Rec. S18 (daily ed. Jan. 6, 2021), with a staffer explaining to Senator James Lankford, who had the floor, "the protesters are in the building."  The remaining members of the Senate and staff, although initially sheltering in place, began to evacuate the chamber at 2:28 p.m.  The Senate chamber was breached at 2:50 p.m. shortly after the evacuation had completed.

At 2:29 p.m., Representative Jim McGovern, who was presiding in the House in the absence of Speaker Pelosi, declared the House in recess.  167 Cong. Rec. H85 (daily ed. Jan. 6, 2021)  Members of the House were positioned on the floor and in the gallery as part of social distancing measures due to the COVID-19 pandemic.  At 2:39 p.m., members and staff began to evacuate from the House floor.  As members of the mob attempted to gain access to the evacuating

House members through the Speaker's Lobby at 2:43 p.m., a USCP officer shot a rioter attempting to climb over and through a barricade. House members and staff in the gallery continued to shelter in place until, at 2:57 p.m., the evacuation of the House was complete.

Following the evacuations of the House and Senate chambers, USCP and its law enforcement partners began to systematically clear the buildings and grounds of unauthorized individuals. At 6:34 p.m., USCP officially confirmed that the House Chamber was cleared and safe. At 6:38 p.m., USCP officially confirmed that the Senate Chamber had been cleared and was safe. The Senate was called to order and resumed its business at 8:06 p.m. The House was called to order at 9:02 p.m.

### *Facts Specific to Defendant Gray*

*Prior to January 6, 2021*

Prior to January 6, 2021, Gray posted several public statements on a social media platform and wrote several private messages to friends utilizing social media. His posts expressed excitement about traveling to Washington, D.C. to take part in demonstrations on January 6. For example, Gray wrote "Militia finna be lit y'all!!!," [*sic*] and, "Sh[*]ts about to get lit y'all. I'm actually really excited at the possibility of the insurrection act being implemented," [*sic*] in the days leading up to January 6.

*On January 6, 2021*

Gray entered the restricted grounds of the U.S. Capitol complex on the afternoon of January 6, 2021. While on restricted grounds he and others confronted police protecting the U.S. Capitol Building. Thereafter, Gray entered Capitol Building, remaining inside for approximately 33 minutes. While inside, Gray and other rioters confronted a line of uniformed law enforcement officers in the Rotunda. Gray and others yelled at and shoved officers. While the group of rioters

that included Gray was pushing the police officers, one officer fell down a set of stairs just off the Rotunda.  Eventually, law enforcement officers were able to get Defendant Gray out of the U.S. Capitol Building.

*After January 6, 2021:*

On January 7, 2021, Defendant Gray returned to the U.S. Capitol grounds where he was detained by Metropolitan Police Department officers for several minutes before being released. Gray stated that he returned to look for his cellphone, which he believed had been stolen the previous day.[2]

Later that day, Gray traveled to a nearby airport in order to leave the area. While there, he recorded a "selfie-style" video which he streamed to his Instagram account. Gray admitted to being present at the U.S. Capitol on January 6, 2021 and described some of his conduct. Among other statements, Gray said words to the effect of, "a female cop stole my phone and I got mace'd . . . and I'm like you know what, we're doing this and so we literally pushed them from the front steps of the Capitol all the way back."  He also stated he encountered the female police officer later that day, and that she started crying, took off her vest, and ran down the stairs. Gray also stated that he had gone into House Speaker Pelosi's Office. His overall demeanor was one of enthusiasm and pride for what he had done on January 6, 2021.

Defendant Gray continued to message social-media friends about his involvement in events of January 6. For example, Gray wrote, "Dude we literally took congress over. I don't wanna say too much more lol was the rowdiest thing I've ever done and you know me lol," [*sic*]. On or about

---

[2] After Gray went to the Capitol on January 7, 2021 to look for his phone, he learned that someone had found his phone at the Capitol and wanted to return it.

January 11, 2021, Gray expressed a desire to engage in further violence, messaging another user: "If Biden is sworn in Im coming back to fight. But I truly dont believe he will be sworn in," [*sic*].

## PROCEDURAL HISTORY

On December 1, 2021, a grand jury returned a nine-count superseding indictment charging Gray with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); Obstruction of an Official Proceeding, and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and (2) (Count Two); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1) (Count Three); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Four); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Five); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4) (Count Six); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Seven); Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Eight); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Nine).  (ECF 25.)

Gray was arraigned on December 6, 2021.  A trial is scheduled to commence on January 18, 2023.

On October 21, 2022, Gray filed a "Notice of Alternative Perpetrator Defense (Pipe Bombs)." (ECF 51.)  The government files this response.

## LEGAL STANDARD

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[t]he court may exclude relevant evidence if its probative value is

substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  As it relates to a potential "alternative perpetrator" defense, "[e]vidence tending to show the commission by another person of the crime charged may be introduced by [the] accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded." *United States v. Holmes*, 547 U.S. 319, 327 (2006) (internal citation omitted). Evidence may be excluded "where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." *Id.*; *see, e.g.*, *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998) (affirming district court's exclusion of proffered evidence of two alternative perpetrators, specifically, two members of Elohim City, a white supremacist, anti-government organization, where such evidence would have created a "a great threat of 'confusion of the issues'" and a  "side trial" that might "invite the jury to blame absent, unrepresented individuals and groups for whom there often may be strong underlying emotional responses"); *United States v. Moore*, –  F. Supp. 3d – , 2022 WL 715238 (D.D.C. Mar. 10, 2022) (excluding evidence of two alleged alternative perpetrators, where defendant failed to establish nexus between alternative perpetrators and the offense for which defendant was charged).

## **ARGUMENT**

Defendant Gray contends, without any factual support, that Congress recessed on January 6, 2021, because of reports of pipe bombs near the Capitol, not because of anything that he or any

other rioter at the Capitol did.[3]  He further inaccurately claims that rioters did not even breach the

Capitol until after the proceedings in Congress already had been halted due to the reports of the

pipe bombs.[4]  Accordingly, Defendant Gray contends that he cannot be guilty of the offenses

charged in Counts One, Two, Five, or Seven, all of which charge him with disrupting or obstructing

Congressional proceedings.[5]  Def.'s Notice, ECF 51 at pp. 1, 2.  Defendant Gray's argument fails

for multiple reasons.

---

[3] The defense motion does not rely on the evidence it has received in discovery that would be relevant to an inquiry into the reasons the presiding officers of the two chambers—Senator Grassley at 2:13 p.m. in the Senate chamber and Representative McGovern at 2:29 p.m. in the House chamber, *see* 167 Cong. Rec. S18, H85 (daily ed. Jan. 6, 2021)—declared the respective Houses in recess subject to the call of the chair.  This includes records for the MPD and USCP that are contemporaneous to the discovery of the explosive devices, the breach of the Capitol Building, and the recess of each chamber, such as radio communications, recorded phone calls, text messages, and emails, as well as body-worn camera and surveillance footage.  Additionally, the defense possesses subsequently created records in discovery, such as after action reports and investigative reports detailing the work of each police department's internal affairs bureaus.  Moreover, there are records in discovery created by the FBI that may reflect the communications or actions that led to the decision to recess each chamber.  These records include memoranda of interviews of relevant personnel, including select employees of the U.S. Capitol Police, including plain-clothes officers who were in the House and Senate chambers; the U.S. Secret Service; the House of Representatives, including individuals who work for the Parliamentarian, Sergeant at Arms, and Clerk; and the Senate, including individuals who work for the Secretary.  Finally, publicly available records, including the Congressional Record and the C-SPAN feeds of each chamber, also show the official actions in each chamber leading up to and including the recesses.  The defense also has in its possession, as part of global discovery, each chamber's official time-stamped video feed while that chamber was in session.

[4] Time stamped USCP surveillance footage shows Michael Sparks, the first rioter in the building, in the Senate corridor at 2:13:05 p.m. *See United States v. Michael Sparks*, 21-cr-87-TJK ECF. 1-1 at 6 (available at https://www.justice.gov/opa/page/file/1357391/download).  Approximately 30 seconds later (at 2:13:38 p.m. according to the time-stamped official Senate feed), the Senate recessed.  The final House recess before the chamber was evacuated was approximately 15 minutes later.

[5] Count One charges Defendant Gray with obstructing, impeding, or interfering with a law enforcement officer during the commission of a civil disorder, not obstructing or disrupting Congressional proceedings; thus, on its face, Defendant Gray's argument cannot apply to Count One.

As a preliminary matter, although Defendant Gray purports to give notice of his intent to introduce evidence of an alternative perpetrator, he neither identifies the perpetrator nor specifies the evidence.  Instead, he merely asserts that "it seems probable that the pipe bombs were planted as some sort of undercover government operation," an assertion he premises entirely on two online opinion pieces based on conjecture.  "The January 6 Pipe Bombs Look Like Another FBI Hoax," *American Greatness,* February 14, 2022 (available at https://amgreatness.com/2022/02/14/the-january-6-pipe-bombs-look-like-another-fbi-hoax/) (concluding that "[t]he safe bet" is that "there never was an explosive at either location and the FBI is not telling the truth"); "Google Earth Walkthrough Further Exposes FBI's Jan 6 Pipe Bomb Hoax," *Revolver News*, October 6, 2022 (available at https://www.revolver.news/2022/10/google-earth-walkthrough-further-exposes-jan-6-fbi-pipe-bomb-hoax/) (concluding that "the circumstances of the timing of the RNC pipe bomb's discovery and the circumstances and timing of the DNC pipe bombs' lack of discovery are so implausible as to defy innocent explanation").  Gray then summarily contends that "[a]ccordingly, [he] has a right to discovery, and to introduce and examine witnesses and evidence regarding the pipe bombs' contribution to the congressional recesses on Jan. 6."  Def.'s Notice, ECF 51 at 5, 7.  In short, beyond a handful of internet opinions, Defendant Gray has offered no evidence for this Court's consideration under Rules 401 and 403, and the *Holmes* analysis. Defendant Gray's unspecified evidence of unidentified persons who planted pipe bombs in the neighborhood is just the sort of remote, speculative evidence "lack[ing] such connection with the crime" that it would confuse and mislead a jury.  *See Holmes*, 547 U.S. at 327.  Any such "evidence" should be excluded.[6]

---

[6] As noted in his Notice, Defendant Gray demands discovery of evidence "regarding the pipe bombs' contribution to the congressional recesses on Jan. 6."  Def.'s Notice, ECF 51 at 7.  For all

Building upon conjecture regarding the source of the pipe bombs, which is not relevant to his case, the defense then erroneously conflates separate Capitol Hill evacuations on January 6, 2021.  Certain buildings in the U.S. Capitol complex were evacuated starting at 1:11 p.m. on January 6, 2021, due to the discovery of an explosive device at the RNC headquarters.  However, that did not include the U.S. Capitol Building and the joint session remained ongoing for well over an hour after these devices were discovered.[7]  Similarly, then-Senator Kamala Harris's evacuation from the DNC, where an explosive device was discovered at 1:07 p.m., did not cause the recess of the joint session that was occurring at the Capitol Building.  What caused the recess of the Senate at 2:13 p.m. is what the staffer told Senator Lankford at the time; rioters were, at that very moment, climbing through broken windows on a floor below them.  This is further reinforced by the fact that the alert from USCP at 2:10 p.m. cited danger on the West Front and that the alert at 2:17 p.m. cited a security threat within the building and urged occupants to hide and keep quiet.  Neither these geographic descriptions or the precautions cited have anything to do with explosives that had been located more than an hour prior and were already contained.  A cursory review of the voluminous audio, video, and documentary evidence already available to the defense in discovery would confirm this.

But Defendant Gray's argument fails for a more fundamental reason.  Gray's argument is really a claim of factual impossibility – that he cannot be guilty of disrupting Congress by anything

---

of the reasons set forth herein, any evidence concerning pipe bombs is irrelevant. The government therefore has no duty to produce any such evidence.

[7] The defense also cites a 1:53 p.m. tweet from Rep. Elaine Luria indicating that she had to evacuate her office due to a bomb.  *See* *https://twitter.com/ElaineLuriaVA/status/1346892789053861889?s=20&t=kneOYCPPPdkN8Z5 dN3OSxA*.  Rep. Luria's Congressional office is in the Cannon House Office Building.  *See* "Contact" Official Website of Representative Elaine Luria (available at https://luria.house.gov/contact/offices) (last visited 11/3/2022).

that he did at the Capitol, because Congress already had been disrupted by reports of pipe bombs, and gone into recess, before he arrived at the Capitol.   Analyzed as a claim of factual impossibility, Gray's claim fails.

"'Factual impossibility is said to occur when extraneous circumstances unknown to the actor or beyond his control prevent consummation of the intended crime.'" *United States v. Duran,* 884 F. Supp. 577, 580 n. 5 (D.D.C. 1995), *aff'd,* 96 F.3d 1495 (D.C. Cir. 1996) (citation omitted). Factual impossibility is not a defense to inchoate crimes. *United States v. Williams,* 553 U.S. 285, 300 (2008) ("The impossibility of completing the crime because the facts were not as the defendant believed is not a defense"); *United States v. Washington,* 106 F.3d 983, 1006 (D.C. Cir. 1997) ("factual impossibility is no defense to an attempt crime").[8]

---

[8] In *Duran,* the court discussed factual impossibility for completed and attempted offenses.  There, the defendant was charged with attempting to assassinate the president after he shot at a man, standing on the White House grounds, who looked like President Clinton.  Prior to trial, the defendant raised an impossibility defense.  The district court held that because factual impossibility is not a defense to an attempt crime, the defendant was barred from referring to it in his opening statement or throughout the trial.  *Id.* at 569.  As the district court noted in a subsequent opinion, *United States v. Duran,* 884 F. Supp. 577 (D.D.C. 1995), again addressing the impossibility defense, "Implicit in the Court's Order … was an understanding that the impossibility issue raised by the defense … was one of factual impossibility.  Framed this way, the fact that the person whom the Defendant shot at was not, in fact, President Clinton was an extraneous circumstance, unknown to him, which prevented consummation of the intended crime." *Id.* at 580, n.5.

*See also United States v. Jabr,* 2019 WL 13110682 (D.D.C. 2019), *aff'd* 4 F.4th 97 (D.C. Cir. 2021).  There, the defendant – believing that she was at the White House and wanting to speak with the president – "scaled two fences, ran across a courtyard, and sprinted up the stairs" to a locked room in the Treasury Building near the White House, where she was arrested.  The defendant was charged with entering or remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1).  The statute defines a restricted area to include "the White House or its grounds," 18 U.S.C. § 1752(c)(1)(A), but not the White House Complex, of which the Treasury Building is a part.  The district court granted the defendant's Rule 29 motion as to the completed offense, because the government failed to prove that she had entered "the White House or its grounds."  However, the court denied her motion as to the offense of attempting to enter the White House, explaining that "The fact that Ms. Jabr mistook the U.S. Treasury Building for the White House – and never actually entered into the White House grounds, an area restricted by the statute – is of no moment ….  [B]ut for her mistake, Ms. Jabr would have completed the crime.  She verbalized her intent to go to the White House and explained that she mistook the U.S. Treasury

"In order to determine whether factual impossibility is a defense to the substantive crimes with which [the defendant] has been charged, one must look to the elements of the crimes themselves." *United States v. Colburn,* 475 F. Supp. 3d 18, 26 (D. Mass. 2020) (citation omitted). Here, Gray contends that he cannot be guilty of obstructing or disrupting Congress by anything that he did at the Capitol, because Congress already had gone into recess (i.e., it already had been obstructed and disrupted) because of reports of pipe bombs. Essentially, Gray's claim is that the government cannot prove the element of obstruction.[9] But Gray's claim misapprehends the government's allegations and evidence. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had

---

Building for the White House. The fact that she only got as far as the U.S. Treasury Building grounds does not negate her culpability." *Id.* at *14.

[9] For example, Gray is charged in Count One with committing or attempting to commit an act to obstruct, impede, or interfere with a law enforcement officer, in violation of 18 USC § 231(a)(3). Section 231(a)(3) includes attempt liability. Gray is charged in Count Two with obstructing and attempting to obstruct an official proceeding and aiding and abetting, in violation of 18 USC §§ 1512(c)(2) and 2. Section 1512(c)(2) includes attempt liability. Gray is charged in Count Five with impeding and disrupting the orderly conduct of Government business, in violation of 18 USC § 1752(a)(2). Section 1752(a)(2) includes attempt liability. Finally, Gray is charged in Count Seven with engaging in disorderly and disruptive conduct within the Capitol, in violation of 18 USC §5104(e)(2)(D). Attempt liability for a violation of Section 5104 is found in that section's penalty provision, 18 USC § 5109. To establish an attempted violation of a criminal statute, the government must prove the defendant "engaged in conduct which constituted a substantial step toward the commission of obstruction of an official proceeding." *See, e.g., United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (citing *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *see also United States v. Bennett*, 972 F.3d 966, 974 (8th Cir. 2020) ("The elements of attempt are (1) intent to commit the predicate offense, and (2) conduct that is a substantial step toward its commission" (citing *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007))). Here, Gray's conduct in entering the Capitol and (with a group of other rioters) yelling at and shoving police officers constitutes a substantial step towards the obstruction/disruption offenses with which he is charged.

been confirmed secured.  The proceedings did not resume until approximately 8:00 p.m. after the building had been secured.[10]

Thus, the inapplicability of any factual impossibility claim for Gray undermines any reliance on alternative perpetrator defense.  Defendant Gray's conduct in entering and remaining at the Capitol obstructed and impeded law enforcement and Congress, in violation of 18 U.S.C. §§ 231, 1512, 1752, and 5104, because Congress could not reconvene to carry out its constitutional and statutory obligations to certify the results of the Electoral College vote on January 6 until after Defendant Gray and every other unauthorized person had been removed from the Capitol building and grounds, and the building and grounds had been secured.

## CONCLUSION

For the foregoing reasons, any evidence of pipe bombs would not negate Defendant Gray's guilt, and so would be irrelevant under Rule 401.[11]  Moreover, any purported evidence of pipe

---

[10] The government has offered testimony to this effect at trial. *See, e.g., U.S. v. Herrera*, 21-cr-619 (BAH), transcript from August 16, 2022, p. 47: 5-25, p. 49: 16-23, p. 63: 14-15, p. 64: 10-13, p. 65:18-25, p. 66:1, p.180: 2-25, p. 181: 1-25, p. 182: 1-25, p. 183: 1-13, p. 224: 22-25, p. 225: 1-4, p. 236: 2-25, p. 237: 1-13, p. 240: 6-8, and p. 242: 3-15.

[11] In addition to his arguments in support of an alternative perpetrator defense, in his Notice, Gray contends:

> 1. The laws and provisions of the Constitution governing the processing of electoral college vote certification do not show that electoral college vote counting is some type of a sacred proceeding which cannot be contested, halted, debated or questioned.  On the contrary, the law allows – and Congress expected and scheduled for – protests, objections, delays, debates and ultimate resolution on later dates regarding votes from problematic states. (Emphasis in original; footnote omitted).

> 3. Vice President Pence, in his famous letter to Congress describing his actions on January 6, described the electoral college certification as "largely ceremonial" indicating the certification was hardly a proceeding whose disruption might constitute "obstruction."

Defendant's Notice, ECF 51 at 4.

bombs would also confuse the issues, mislead the jury, and waste the jury's time; thus, it should be independently excluded under Rule 403.   For these reasons, the government respectfully requests that this Court preclude the admission of any purported evidence concerning pipe bombs.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/ JACQUELINE SCHESNOL
JACQUELINE SCHESNOL
Assistant United States Attorney
Arizona Bar No. 016742
United States Attorney's Office, Detailee
601 D Street, N.W.
Washington, DC 20530
Phone: (602) 514-7500
E-mail: jacqueline.schesnol@usdoj.gov

/s/ Michael L. Jones
MICHAEL L. JONES
DC Bar No. 1047027
Trial Attorney
Capitol Riot Detailee
601 D St. NW
Washington, DC 20530
(202) 252-7820
michael.jones@usdoj.gov

---

These contentions raise a claim of legal impossibility.  Legal impossibility exists "when the actions which the defendant performs or sets in motion, even if fully carried out as he desires, would not constitute a crime."  *United States v. Oviedo*, 525 F.2d 881, 883 (5th Cir. 1976).  "For example, a hunter cannot be convicted of attempting to shoot a deer if the law does not prohibit shooting deer in the first place."  *In re Sealed Case*, 223 F.3d 775, 779 (D.C. Cir. 2000) (citation omitted). Because Gray does not further address these assertions in his motion, and they are not germane to his motion, the government will not respond to them here.

## <u>CERTIFICATE OF SERVICE</u>

On this 4th day of November 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

*/s/ Jacqueline Schesnol*
JACQUELINE SCHESNOL
Assistant United States Attorney