UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA            :
                                    :
                    v.              : CASE NO. 21-cr-495 (ABJ)
                                    :
DANIEL GRAY,              :
                                    :
                    Defendant.              :


## DEFENDANT GRAY'S REPLY MEMORANDUM REGARDING MULTIPLICITY


The Defendant submits this memorandum in reply to the government's response in opposition to the Defendant's motion to dismiss on multiplicity grounds (ECF No.__59) and in support of the Defendant's motion seeking dismissal of some counts due to multiplicity (ECF No. 52).

The government asserts that "A defendant may be convicted of and sentenced under different statutory provisions for multiple offenses arising out of the same single act or course of conduct so long as Congress authorized the imposition of such multiple punishments." ECF No__59 p. 2. They also claim that if the legislature intends to impose multiple punishments, then Double Jeopardy is not violated. Yet the Government directly contradicts their own argument by stating that the Defendant's motion lacks merit, because "...each of the offenses charged in the information requires proof of a fact which the other does not." ECF No.__59 p.3. At first, the Government is arguing that the Defendant can be sentenced for multiple offenses of the same conduct under different statutes if that is what the Legislature intended. Conversely, they

1

completely disregard their own argument by claiming that the Defendant did not commit a single offense, but multiple offenses because the statutes require proof of different facts. The Defendant will prove that the government has failed to show any basis in fact or law to support their opposition for the motion to dismiss and as a result of their baseless claims the Court should rule in his favor and dismiss counts on multiplicity grounds.

## BACKGROUND

On Jan. 6, 2021, while Gray was lawfully standing and protesting outside the Capitol, he noticed a disturbance and as he moved closer and got out his cell to shoot video, Gray's cellphone device was unlawfully stolen and taken by a law enforcement officer. Due to the theft of his phone, Gray was forced to follow the apparent officer into the interior of the Capitol to seek recovery of his device. In evidence, there are multiple videos where Gray can be seen and heard asking for his phone to be returned, and to date he has still never gotten his phone back. SEE FBI Complaint with Arrest Warrant at p.5.

Next, as Daniel and other protestors entering the building through the upper west terrace doors and they are walking in peacefully, just as described by Officer Bronstein, as "coming in like it was a museum". See MB: Officer Marina Bronstein Interview, Metro Police. Gray recalls that once inside the building, he saw and heard Officer Bronstein beating protestors indiscriminately because she got overwhelmed. Even the Defendant was struck on the side of his face by Bronstein's baton, while she was swinging her baton in a fit of panic. SEE FBI Complaint with Arrest Warrant at p.2. After being unfamiliar with the layout of the building, Daniel suddenly became aware that he was near the top of a staircase, so he and another protester both turned to the crowd to put up their hands to signal "stop" and yell at the crowd, "Stop! Stop!" to prevent the crowd from spilling over the stairs and causing more injuries. The crowd

eventually broke through the police line into the atrium that led to Pelosi's office area. Id. at pp.6-7. Law enforcement subsequently pushed the rioters, including the Defendant, out of the Rotunda and outside the Capitol building. Id. at p.7. The Defendant had been in the building for less than 30 min and committed one act in the process. Entering the building to retrieve his phone then being caught in the madness of the crowds preventing him from exiting.

The next day on January 7, 2021 the Defendant was stopped by officers in the parking lot on the west side of the United States Capitol complex in response to a BOLO. ID. at p.7. During the course of his stop, GRAY identified himself as DANIEL PAUL GRAY, and was in possession of a mobile phone but stated that his phone was stolen the day before, and that the phone recovered from his person was a temporary phone that only took photographs. Id. Approximately 45 minutes later, GRAY was released by the officers. SEE FBI Complaint with Arrest Warrant. Id.

Subsequently on December 1, 2021, the grand jury returned a nine count superseding indictment charging Defendant Gray with Counts: (1) 18 U.S.C. § 231(a)(3), Civil Disorder; (2) 18 U.S.C. §§ 1512(c)(2) and (2), Obstruction of an Official Proceeding and Aiding and Abetting; (3) 18 U.S.C. § 111(a)(1), Assaulting, Resisting, or Impeding Certain Officers; (4) 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds; (5) 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds; (6) 18 U.S.C. § 1752(a)(4), Engaging in Physical Violence in a Restricted Building or Grounds; (7) 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building; (8) 40 U.S.C. § 5104(e)(2)(F), Act of Physical Violence in the Capitol Grounds or Buildings; and (9) 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. SEE ECF No. 25. A trial is scheduled to commence on January 18, 2023.

**ARGUMENT**

**I. The Counts of the Indictment are Multiplicitous.**

The government's arguments are clearly erroneous. Indeed, the statutes are slightly different from one another (particularly in some of the wording), but that does not change the fact that the statutes significantly overlap with each other, and the Defendant committed a single act on a single occasion not a single act on multiple occasions or several different acts in a single occasion. It was one act. Then the government argues that it is irrelevant whether there is significant overlap in the factual proof of each count at trial, or even whether two counts "are based upon the exact same set of facts and circumstances," as long as each count's elements require proof of a fact that the others do not. ECF No__59 p. 2.

An indictment is considered multiplicitous "when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed. United States v Chacko, 169 F.3d 140, 145 (2d Cir. 1999). This is a violation of the Double Jeopardy Clause of the Fifth Amendment, because it subjects a person to punishment for the same offense more than once. Id. In addition, including multiple counts for a single act leads the jury to incorrectly assume the severity of the Defendant's criminal culpability. See United States v. Reed, 639 F.2d 896, 904 (2d Cir. 1981), (where multiplicity of charges... may lead to multiple sentences for the same offense and may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes.)

The government's argument fails to acknowledge or deliberately omits the theory that an analysis for multiplicitous counts is essentially fact- specific and should not turn on any single factor: "The touchstone of any multiplicity analysis should be whether the acts in question,

considering all of the relevant factors, constitute a single execution or multiple executions of a scheme...." (United States v Wiehl, 904 F.Supp 81, 89 (NDNY 1995) (Munson, J.). Even the Second Circuit has clarified that, "[i]t is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense' – in the legal sense, as defined by Congress – complained of in one count is the same as that charged in another." United States v. Chacko, 169 F. 3d, 140, 146 (2d Cir. 1999) (citing See Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488, 497 (1997) (Stevens, J., concurring in the judgment); Dixon, 509 U.S. at 704 (overruling Grady v. Corbin, 495 U.S. 508 (1990)).

The alleged criminal act(s) occurred on Jan. 6, 2021, while Gray was lawfully standing and protesting outside the Capitol and his cellphone device was unlawfully taken by a law enforcement officer. Due to the confiscation of his phone, Gray entered the capitol in an attempt to retrieve it. He was inside for less than 30 min, because he got caught in the massive unruly crowd which led him to an unrestricted area in an attempt to exit the building. He eventually made his way out of the building but has still never gotten his phone back. Then, the government tries to include the incident when he was pulled over the next day and released near the parking lot of the Capitol as another offense.

This is clearly a single act that was committed by the Defendant and the Government is attempting use numerous opportunities through similar statutes to convict the Defendant for a single course of conduct and subjecting the Defendant to multiple punishments for one allegedly illegal act. They are also attempting to include what Gray did the next day when he was stopped in the parking lot OUTSIDE the capitol building as another separate offense.

Furthermore, the Government then includes a baseless analysis only intended to confuse and distract from the Defendant's legal arguments. They single out each statute by their elements

and in doing so attempt to support their argument by pointing out single words that do not match the other statute exactly word for word. In all essence, the nine counts of the indictment (ECF 25) are just three allegations: (1) some variation of disorderly conduct in a building by obstructing, opposing, impeding or resisting at the Capitol; (2) claims of remaining, trespassing, or parading in the Capitol, and (3) claims that Gray was violent or assaultive at the Capitol. (ECF No. 52 p. 2.)

For example, Gray is charged with multiple counts of disorderly conduct, in Counts 1,5, and 7 but since count 1 says obstruct, impede or "interfere with any article in commerce or federally protected function," Count 5 says "any government building or grounds or restricted building in official functions", and Count 7 says "any Capitol Building" that those words and the meanings of those words are so different as to justify an extra criminal charge to the Defendant. Saying "any capitol building" or "article/federally protected function" or "any government building" still means the same thing, only one is more specific than the other. A simple term should not warrant an extra charge on the Defendant. The capitol building can be considered a building, restricted building, government function, federal function, government grounds, or a building with official functions and just because the statutes change the wording it does not change the meaning of the type of building that Defendant entered.

This is further evidenced by the fact that the statutes require some type of proof as to disorderly conduct yet, the Government attempts to interpret the statute in their own way and state that Count 5 requires proof that the defendant engaged in disorderly or disruptive conduct "in, or in proximity to, any restricted building" (so the proof is towards the building being restricted) and Count 7: requires proof that the defendant engaged in disorderly or disruptive conduct "in any of the United States Capitol Buildings" so since they require different types of building as proof they

are different offenses. This is another baseless interpretation that the Government is manipulating in order to add numerous offenses to the Defendant's and increase the punishment sentencing. Overall, the defendant entered the capitol, engaged in protest, and left this single act does not warrant 9 charges in total for the indictment and as such some of the counts should be dismissed on multiplicity grounds.

## II. Counts of the Indictment ARE Lesser-Included Offenses of the Others

Finally, the Government wrongly asserts that all the elements of the lesser offense must be included in the greater offense and since the counts require different kinds of proof or ways to satisfy the element then one is not the lesser offense of the other. Defendant Gray contends that Count 8 is a lesser-included offense of Counts 3 and 6 and Count 5 is a lesser-included offense of Count 7 and Count 1 and counts 4 and 9 should be combined due to their similarities of violence. (ECF No. 52 at 4.)

The Government has improperly provided their own definitions of a statute or case law in substitute of the actual law. If the government's argument is true, then defendants being charged with murder would be permitted to be charged with negligent homicide and/or vehicular manslaughter in addition to the charge of murder. That is obviously not the case, a Defendant would realistically get charged with one of those offenses even if all three require different kinds of proof. Lilly v. State, 649 A.2d 1055, 1061 (Del. 1994). In another example, if the Government's argument was correct then someone breaking into a house would be convicted of burglary, trespassing, robbery, larceny, theft, breaking into a structure, etc. While it is true that a defendant can be convicted of burglary and robbery because there are elements that are completely different in each crime such as the force involved. However, the defendant ultimately would not be charged with all of the counts listed above, because some are lesser included

offenses of the other. Thus, the Government's argument is absurd to ignore the obvious

similarities between some of the counts. The Government cannot abuse use their position in

order to twist and turn the interpretation of statutes solely for their benefit.

Next, the government argues that they are adopting the statutory-elements test in

*Schmuck* and under this particular test the Defendant's claim fails and the Court should deny the

motion based on that alone. ECF No.__59.p. 7. However, what the government fails to mention

is that the Court of Appeals for D.C. rejected the approach taken in *Schmuck* in favor of a

different approach. See United States v. Whitaker, 447 F.2d 314, 319 (D.C.Cir.1971)

(impractical to use strict "statutory elements" approach); See Also Elisovsky v. State, 592 P.2d

1221, 1226 (Alaska 1979) ("cognate approach" focuses upon facts in indictment to determine

whether defendant had notice of possible lesser offense). In *Whitaker*, the Court of Appeals for

the District of Columbia, in rejecting the approach in *Schmuck* stated:

> A more natural, realistic and sound interpretation of the scope of 'lesser included offense,'
> in line with our own views on the subject, is that... when a lesser offense is established by
> the evidence adduced at trial in proof of the greater offense... there must also be an
> 'inherent' relationship between the greater and lesser offenses, i.e., they must relate to the
> protection of the same interests, and must be so related that in the general nature of these
> crimes, though not necessarily invariably, proof of the lesser offense is necessarily
> presented as part of the showing of the commission of the greater offense. State v. Yates,
> 571 A.2d 575 (R.I. 1990) (citing State v. Dordain, 566 A.2d 942 (R.I. 1989)).

To prove further support for Defendant's position, in *Lily* the case cites to the Delaware Criminal

Code where the definition of included offenses expressly states that, "although the included

offense must produce the same result as the inclusive offense, there may be some dissimilarity in

the elements necessary to prove the offense." Lilly v. State, 649 A.2d 1055, 1061 (Del. 1994).

To definitively disprove the *Schmuck* case used positively in the Government's response,

the Defendant uses that case in order to provide proof that charging both counts would prejudice

the jury in favor of a criminal conviction. *Schmuck* states that, "where the jury suspects that the defendant is guilty of some offense, but one of the elements of the charged offense is in doubt... the jury will likely fail to give full effect to the reasonable doubt standard, resolving its doubts in favor of conviction." See Schmuck, at p. 717, fn. 9 [103 L.Ed.2d at p. 747, fn. 9] (where the availability of a lesser included offense instruction protects the defendant from improper conviction.) Thus, it has been shown that all the elements of the lesser included offense do not need to be included in the greater offense for multiplicity to be shown. As a result, Defendant's some of Defendant's should be combined by the Court into 3 single counts, as one is simply a lesser-included offense of the other.

### III. CONCLUSION

In conclusion, permitting the government to charge what is clearly one offense in multiple counts implicitly conveys to the jury an unfairly prejudicial view regarding the Defendant's criminal culpability, violates the Defendant's constitutional rights by giving the government multiple chances to convict the Defendant for a single offense, impairs the Defendant's right to a fair trial,  and exposes the Defendant to multiple and harsher punishments for one act committed at one place in a single instance. The disorderly conduct allegations in several of the counts are multiplicitous and violate the Double Jeopardy clause in the process. Accordingly, since many of the counts are clearly multiplicitous, justice and fairness require dismissal of at least two or three of the counts or at for the Court to combine counts the nine counts in three separate ones.

Dated: November 14, 2022

Respectfully submitted,
/s/ John M. Pierce
John M. Pierce
John Pierce Law P.C.
21550 Oxnard Street,
3rd Floor PMB #172
Woodland Hills, CA 91367
jpierce@johnpiercelaw.com

CERTIFICATE OF SERVICE

I, John M. Pierce, hereby certify that on this day, November 14, 2022, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

/s/ John M.
Pierce John M.
Pierce