**UNITED STATES DISTRICT COURT**
**FOR THEDISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No.** |
| | : | |
| **DANIEL PAUL GRAY,** | : | **1:21-cr-00495-ABJ** |
| | : | |
| **Defendant** | : | |
| | : | |

_____

**DEFENDANT GRAY'S REPLY TO GOVERNMENT'S OPPOSITION REGARDING MOTION
TO DISMISS COUNT II OF THE FIRST SUPERSEDING INDICTMENT,
TO DISMISS CHARGES UNDER 18 U.S.C. § 1512(c)(2) AND MEMORANDUM**

Defendant Daniel Paul Gray ("Gray"), through the undersigned counsel, John M. Pierce, Esq.,

hereby replies to the Government's response (ECF #58) to Gray's Motion to Dismiss Count II of the First

Superseding Indictment, because the charging documents fail to state an offense and/or 18 U.S.C. §

1512(c)(2) does not apply to the facts alleged by the government.

## I.   INTRODUCTION AND OVERVIEW

The Government has neglected to charge Defendant Dan Gray with any factual allegations that

are capable of supporting Count II's allegation of "obstruction of an official proceeding" under 18 U.S.C.

§ 1512(C)(2).  The Government never actually alleged Gray obstructed any official proceeding. As a

response they allege that whether or not Gray violated the statute should be determined at trial after

evidence is presented. However, that is not the applicable to this case because the government has failed

to provide any facts to support their claim whatsoever. The government also argues that Gray's motion

lacks merit and attempts to interpret an otherwise vague statute on their own by providing several

definitions that apply to the word "corruptly".

Therefore, because the government failed to allege how Defendant violated 18 U.S.C. §

1512(c)(2), it is not applicable in any event. In addition, they have failed to show how the Defendant

disrupted an official proceeding when Congress was vacated for a reason other than Defendant's actions

1

and the Capitol building is a building traditionally open to the public. The U.S. Capitol building is

actually designed and constructed with galleries for the public and the news media to physically listen to

and watch Members of Congress at work. There are no barriers between the public galleries and the

Senate and House floors below. Built into the very fabric of America at its core, the Capitol is

constructed for the public to interact with Congress. Thus, prosecuting the Defendant for what other

people did and without any factual allegations to support their claim would be a threat to democracy.

Preserving the rule of law that people are responsible for their own actions and not for the actions of

others will be an enduring aspect of criminal law.

## ARGUMENT

### A. The Court Should Grant the Motion to Dismiss for Failure to State an Offense.

The fatal flaw of every aspect of the prosecution in these criminal cases is the Government's

belief that it need not prove beyond a reasonable doubt the guilt of each individual Defendant. Their

argument that the Defendant's motion to dismiss is a factual allegation that should be reserved for trial

after evidence is presented, completely misstates the law and avoids addressing the actual claim made by

the Defendant.

According to the Government's Opposition, "[a]n indictment is sufficient... if it "contains the

elements of the offense charged and fairly informs a defendant of the charge against which he must

defend." (EFC #58 at p. 5). In this case, Count 2 of the indictment charges Gray under 18 U.S.C. §§

1512(c)(2) and (2) for Obstruction of an Official Proceeding and Aiding and Abetting. Thus, in order to

survive the motion to dismiss the government needs to produce an indictment which contains the

elements of the offense and informs the Defendant of what crime he is being charged with. The

indictment produced by the government charged Gray for allegedly disrupting the Joint Session of

Congress:

> "On or about January 6, 2021, within the District of Columbia
> and elsewhere, DANIEL GRAY, attempted to, and did,
> corruptly obstruct, influence, and impede an official proceeding,
> that is, a proceeding before Congress, specifically, Congress's
> certification of the Electoral College vote as set out in the

> Twelfth Amendment of the Constitution of the United States
> and 3 U.S.C. §§ 15-18;
> which is a felony punishable by up to 20 years in prison. (*See*
> Obstruction of an Official Proceeding and Aiding and Abetting,
> in violation of Title 18, United States Code, Sections 1512(c)(2)
> and 2); (*See also* ECF #25)

The reading of the statute in the government's opposition states that, Section 1512(c)'s prohibition applies to:

> [w]hoever corruptly--
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) *otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so*. (ECF #58 at p. 7).

Simply by looking at the clear disparities in what the indictment charges under the statute and what is stated in the actual statute do not contain the elements of the offense nor do they make clear to the Defendant what he is being charged with. *See United States v. Covino*, 837 F.2d 65, 71 (2d Cir. 1988)(indictment charging wire fraud insufficient because it failed to allege essential element of offense that defendant defrauded employer of money or property); *See also United States v. Frankel*, 721 F.2d 917, 917-19 (3d Cir. 1983)(indictment charging false statement insufficient because presentation of worthless check did not constitute false statement).

The government incorrectly states that the Defendant's motion to dismiss an indictment was on grounds of insufficiency of evidence and erroneously claimed it was similar to a civil motion for summary judgment. (ECF #58 at p. 6). However, the Defendant never claimed his motion to dismiss was due to insufficiency of evidence, but rather it was because an essential element was absent based on the language used to charge the crime in the indictment. In addition to an element being absent, Gray asserts that the indictment is insufficient to put him on notice of the exact crime he is being charged with. If the Defendant is not even aware of the crime he is being charged with, then how can the jury be permitted to find that the crimes charged were actually committed.

The government responds to Gray's motion simply by claiming, "Defendant Gray first argues that

his conduct did not violate Section 1512 (c)(2). That is a factual determination to be made following the presentation of evidence at trial." (ECF #58 at p. 8). Whereas the Defendant is not stating that the government needs to particularly allege incredibly specific facts and provide hordes of evidence to show what crime the indictment is charging the Defendant with; the government should at the bare minimum provide some facts to inform the Defendant of his charge. It is ridiculous for the government to oppose a motion to dismiss by stating that the facts will be proven at trial and nothing else to back up their claims.

As a result, it becomes more and more clear that the Government is attempting to prosecute people for being in the general vicinity of others who actually did commit crimes. The government is attempting to prosecute a group of people with the same charges without any showing of probable cause or even factual allegations to support their indictment. This is shown on page 3 of the Opposition, which states:

> "While inside Gray and other rioters confronted a line of uniformed law enforcement officers in the Rotunda. Gray and others yelled at and shoved officers. While the group of rioters that included Gray was pushing the police officers, one officer fell down a set of stairs just off the Rotunda." (ECF #58 at p.3).

Thus, the Government is actually prosecuting and accusing Gray for a crime that was a group effort when the claim, "the group of rioters that **_included_** Gray was pushing the police officers." *(Emphasis added.)* The government is avoiding presenting factual allegations to prosecute Gray, because they do not have any that implicate Gray individual, instead they have facts related to "the group of rioters that included Gray." (ECF #58 at p. 3).  Did Gray actually commit the crimes alleged?  Or did "the group of rioters that included Gray" commit those crimes? In *The Dream Defenders* case a District Judge even states:

> "[T]he Governor offers no explanation or construction that limits when mere attendance becomes participation, except that a person must "intend to commit violence." Id. But this ignores the plain text of the statute, which separates a person from an assembly of three or more persons sharing that intent. *See The Dream Defenders, et al., v. Ron DeSantis*, 21-cv-191, ECF No. 137 (N.D. Fla. Sept. 9, 2021) at p. 53, (Mark E. Walker, Chief United States District Judge)(injunction against anti-riot law in part because the legislation appeared to criminalize the defendant's protest activities even if he did not participate in the violent acts of others), attached as Exhibit A.

And continuing:

The closest Governor DeSantis comes to addressing this term is in offering his construction, which requires a person to willfully participate "in a violent public disturbance involving 3 or more people." ECF No. 99 at 10.

***By using the modifier "involving," the Florida Legislature appears to have intended for the riotous assembly to be only a smaller component of the larger whole,*** person must participate in a violent public disturbance that includes, as a necessary part or contains as part of the whole, "an assembly of three or more persons, acting with a common intent to assist each other in violent and disorderly conduct" and that results in injury, property damage, or an imminent threat of injury or property damage. *Id.,* at Page 55-56 *(emphases added).*

If this Court does not enjoin the statute's enforcement, ***the lawless actions of a few rogue individuals could effectively criminalize the protected speech of hundreds, if not thousands, of law-abiding Floridians***. This violates the First Amendment. See, e.g., *Bible Believers v. Wayne Cnty.*, Mich., 805 F.3d 228, 252 (6th Cir. 2015). Florida's interest in preventing public violence is beyond question, but when that interest collides with rights guaranteed by the First Amendment, the "government may regulate in the area only with narrow specificity." *Button*, 371 U.S. at 433. Id., at Page 77 (emphases added).

In other words, if Gray attended a football with 40,000 of his fellow fans in the stadium, but about 50 of them get into a brawl requiring police intervention and arrests, then according to the government's argument all 40,000 people present in the stadium would be charged as part of the brawl/riot. There are no factual allegations of Defendant Gray obstructing an official proceeding or aiding and abetting the same. Therefore, Count II fails to state an offense and as a result must be stricken pursuant to Rule 12(3)(B)(v) of the Federal Rules of Criminal Procedure ("FRCP").

**B.   The Government has Failed to Prove how the Defendant Violated the Statute and Obstructed an Official Proceeding or Aided and Abetted.**

During the prosecution case in chief of *USA v. Stewart Rhodes*, in this District Court, Case No. 1:22-cr-00015, on October 19, 2022, the (then) U.S. House of Representatives Parliamentarian Thomas Wickham testified that Speaker of the House Nancy Pelosi was whisked away from the podium by security at 2:13 to 2:14 PM on January 6, 2021, leaving Rep. McGovern to take over as Presiding Officer. Therefore, the cause of the recess of the Joint Session of Congress existed as early as 2:00 PM. Note how the U.S. Capitol Police timeline attached as Exhibit 1 to the Government's Opposition, marked as CAPD_000003203, recites on page 11 of 24 that on January 6, 2021, at "Approximately 1253 hours"

"Insurrectionists at the front of a large group amassing near the Capitol Reflecting Pool pick up a metal barrier and push it into USCP officers." Thus, the USCP analysis clearly recognizes a difference between "Insurrectionists" who are "at the front of" a different "large group" were amassing near the Reflecting Pool. That is, there are two groups identified by USCP: (1) a "large group" and (2) a smaller group of insurrectionists "at the front of" the larger group. That is, not everyone is doing the same thing or behaving in the same way or acting in coordination.

Next, the Timeline also indicates on Page 12 that at 1300 hours, the USCP directed WMATA (the Metro system of subway trains) to "bypass" the Capitol South Metro Station due to "explosive device" (the discovery of pipe bombs). At 1301 hours – earlier than previously understood – the USCP ordered the evacuation of the Madison Building (the Library of Congress building closest to the pipe bomb discovered at the Republican National Committee national headquarters office townhouse across from the Capitol South Metro Station). At 1311 hours (1:11 PM) the USCP began evacuating the Cannon House Office Building directly South of the U.S. Capitol sitting on the same intersection as the Capitol South Metro Station and the RNC headquarters office townhouse. The timeline also states that at 13:06 hours, USCP were authorized to begin launching "chemical munitions." (*See* CAPD_000003203).

Therefore, a decision to start evacuating U.S. Capitol buildings started as early as 1:01 PM, (more than 2 hours before Gray even arrived at the Capitol) by circumstances that were sufficient to authorize the use of chemical weapons against demonstrators. As such, the cause for the recess of the Joint Session of Congress was coming into focus more than two (2) hours before Gray reached the U.S. Capitol. But of greater significance, the Timeline attached to the Opposition reveals that at "1400 hours" "Assistant COP [Chief of Police] Pittman orders lockdown of U.S. Capitol Building." Thus, we now know that the causation for the evacuation of the U.S. Capitol existed as of 2:00 PM. On Page 3 of the Opposition, they assert that, "At *[a time]* no later than 2:25pm, Defendant Gray entered the restricted grounds of the U.S. Capitol complex the afternoon of January 6, 2021... Defendant Gray entered Capitol Building, remaining inside for approximately 33 minutes." (ECF #58 at p. 3). Thus, the Government admits that Defendant Gray was not in the area around the Capitol.

Accordingly, the timeline asserts that the barricades were breached around 12:50 PM and the Joint Session of Congress recessed starting as early as 2:00 PM (latest 2:13). The Government also claims that Gray entered the restricted grounds at about 2:25 PM. Clearly, Gray did not obstruct the official proceeding, attempt to, or plan to in only 33 minutes. There are certainly no allegations of fact as to how Gray brought down the Legislative Branch and obstructed an official proceeding that had already recessed. On the contrary, the government contradict their claims by acknowledging that Gray spent much or most or all of this time trying to find who had grabbed his phone and trying to get it back.

The Government has not identified ANY factual allegations that Gray obstructed the Joint Session of Congress before he arrived, while he was searching for the police officer who grabbed his cell phone, or after Gray left. The government fails to acknowledge that there were other demonstrators (those who were true rioters and not the mere demonstrators) who remained after Gray left and many of them remained outside the building beyond the curfew at dusk. Gray, by contrast, merely followed a police officer who had inexplicably confiscated his smart phone, into the building demanding the return of his phone, and then he left the building. True rioters were still in the Capitol building hours after Defendant Dan Gray had left without his phone.

By thinking that it can simply claim that Gray was somewhere near people who actually did riot and apparently obstruct the Joint Session of Congress, the Government has not even tried to allege that Gray corruptly obstructed any official proceeding. The Government Opposition concedes that there were "certain individuals in the [large] crowd" who transgressed from lawful and constitutionally protected First Amendment activity into illegal activity and violence by forcing their way past barricades starting around 12:50 PM. (ECF #58 at p.3). The Count includes no allegation that Defendant Gray had anything to do with obstructing an official proceeding in any way at any time. We do not and are not legally able to prosecute crowds; crowds do not do things. Individuals do things. Crowds cannot be collectively charged with a crime if they did not act in concert or unison to achieve a particular goal. In addition, there is never any attempt by the Government to identify who these "certain individuals" are and what relevance or connection they have to Gray. That is because there is no relevance or connection between these "certain

individuals" and Gray.  Those who only exercised their First Amendment rights must be treated differently and separately from those who transgressed into unlawful and violent behavior.  Proof that someone else obstructed an official proceeding or that a "group of individuals" did is not proof that Defendant Gray obstructed the proceeding simply by being present. As a result, the presumption of innocence remains for Gray.  Those who actually committed violence and/or property damage should be prosecuted for what they did, not "certain individuals" or "the crowd."

Thus, there are no factual allegations that Defendant Gray did anything at any time or in any way in relation to the obstruction of an official proceeding at 12:50 PM and which culminated at or before 2:13 PM when the Defendant did not enter the Capitol until after 2:25pm.  The charging documents are simply devoid of any allegation that Gray as an individual did anything or is responsible in any way for the crimes asserted above. The court cannot charge "crowds" or unspecified and unknown "certain individuals" with a crime; the Court must find individual guilt by those actually charged with identifiable crimes.

### C.   The U.S. Capitol is Presumptively and Normally Open to the Public

The Capitol Grounds (excluding such places as the Senate and House floors, committee rooms, etc.) have traditionally been open to the public; indeed, thousands of people visit them each year. Thus, we cannot agree with the defendants that the Capitol Grounds have ever been characterized by the serenity and quiet of a hospital or library. *See Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972):

> The courts in this jurisdiction have long recognized that ***"[t]he United States Capitol is a unique situs for demonstration activity"*** and ***"is a place traditionally open to the public, thousands visit each year to which access cannot be denied broadly or absolutely,*** [a fact which must be weighed] against the government's interest in protecting against possible `damage to buildings and grounds, obstruction of passageways, and even dangers to legislators and staff.'" *Kroll v. United States*, 590 F. Supp. 1282, 1289, 1290 (D.D.C.1983) (*quoting Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 583-85 (D.D.C.), *aff'd mem.*, 409 U.S. 972, 93 S. Ct. 311, 34 L. Ed. 2d 236 (1972)). *See* Wheelock v. United States 552 A.2d 503, 506 (D.C. 1988) (emphases added).

Next, as admitted by the U.S. Capitol Police Chief of Police Thomas Manger, he claimed that protests outside the 751 foot long building are a daily occurrence. Explicitly addressing the events of January 6, 2021, on September 17, 2021, a new Chief of the USCP, Thomas Manger, admitted and confessed among other things, at time stamp 00:18:10: "In terms of how we engage, we handle multiple demonstrations at the Capitol and Supreme Court every day. Every day. Multiple demonstrations."[1]

We are talking about a building that was literally designed and constructed from the ground up for the public to be physically in the same room with their Senators and Representatives. While due to the growth in numbers and interest of the U.S. population, and the rise of personal transportation, the personal participation of citizens has led to rationing of gallery seats and time to sit in them, the Capitol was originally designed for unrestricted access of the people to their elected Members of Congress. Nevertheless, in spite of the inherent innocence of a large crowd gathering at the Capitol – without more – the Reply of the Government has no merit. An individual that enters a public building after Congress has recessed (or was evacuated) for the day cannot satisfy the elements of the indictment alleged when he entered the building in order to retrieve his cell phone.

### D.   The Use of the Word "Corruptly" in the Statute is Unconstitutionally Vague

Gray's motion and the opinion of Judge Carl Nichols conclusively demonstrate that the charge under 18 U.S.C. § 1512(c)(2) must be dismissed. Again, the question is not whether 18 U.S.C. § 1512(c)(2) is a valid statute when properly applied within the scope of its meaning.  In *United States v. Garret Miller,* 1:21-CR-119 (CJN), ECF No. 72 (D.D.C. Mar. 7, 2022), Judge Nichols did not question the legitimacy of the statute for its intended purpose.  Rather Nichols construed what the scope and meaning of the statute are.  Nichols ruled that the statute does not apply to the fact pattern asserted by the prosecution. Thus, until it can be discerned what the Government is alleging by the word "corruptly", it becomes difficult or impossible to examine the validity of using the statute against those factual allegations or to put the Defendant on notice of what crime he is being charged with.

---

[1] *See "*USCP News Conference on "Justice for J6" Rally," **https://www.c-span.org/video/?514736-1/us-capitol-police-prepare-threats-violence-justice-j6-rally**

Criminal statutes that lack sufficient definiteness or specificity are commonly held

unconstitutional as void for vagueness. *See Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940). Such

legislation may run afoul of the Due Process Clause because it fails to give adequate guidance to those

who would be law-abiding, to advise defendants of the nature of the offense with which they are charged,

or to guide courts in trying those who are accused. *Musser v. Utah*, 333 U.S. 95, 97 (1948).

> The Court observed: Vague laws offend several important values. First, because
> we assume that man is free to steer between lawful and unlawful conduct, we
> insist that laws give the person of ordinary intelligence a reasonable
> opportunity to know what is prohibited, so that he may act accordingly. Vague
> laws may trap the innocent by not providing fair warnings. Second, if arbitrary
> and discriminatory enforcement is to be prevented, laws must provide explicit
> standards for those who apply them. A vague law impermissibly delegates basic
> policy matters to policemen, judges, and juries for resolution on an ad hoc and
> subjective basis, with the attendant dangers of arbitrary and discriminatory
> applications. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972),
> quoted in Village of Hoffman Estates v. The Flipside, 455 U.S. 489, 498
> (1982).

But the broader language of 18 U.S.C. § 1512(c)(2) is also narrowed by the modifier "corruptly."

Not only could we imagine different meanings to this term, but in fact other attorneys and judges in

related January 6 cases have actually asserted at least three different interpretations struggling to pin

down the meaning of the term "corruptly." This leaves it unmistakable that there is ambiguity. First, it is

beyond dispute when even the judicial opinions cite inconsistent interpretations of what "corruptly"

means in this context.  Even among the cases that have considered this in this context, judges of this

Court do not agree on what "corruptly" means and what effect it has on narrowing the statute.

For example, the Honorable Timothy J. Kelly ordered targeted, supplemental briefing in *USA v.*

*Nordean, et al.*, Criminal Case No. 1:21-cr-00175 *(emphasis added):*

> First, as Defendant Nordean notes, several courts have construed "corruptly" to
> mean **acting "with the intent to secure an unlawful advantage or benefit
> either for one's self or for another."** See ECF No. 113 at 19 (citing cases);
> see also United States v. Aguilar, 515 U.S. 593, 616 (1995) (Scalia, J.,
> concurring in part). Second, the Government has argued that "corruptly" means
> acting "wrongfully" and "with an intent to obstruct." ECF No. 133-1 at 8. What
> does it mean to act "wrongfully"?

It is in fact inconsistently interpreted that "corruptly" means merely "illegally" or "unlawfully,

"violently," acting through fraud or dishonesty, or perhaps to obtain an advantage through criminal

means. On Page 11 of the Opposition, the Government states that "corruptly" means: "The statute

requires that a defendant, acting with consciousness of wrongdoing…" (ECF #58 at p.11). Therefore,

even on the face of the Opposition we see the ambiguity and vagueness. If "corruptly" means only "with

consciousness of wrongdoing" then the word is inherently vague within the meaning of the law.

Furthermore, the Government goes on to state and thereby admit to the vagueness:

> As Judge Friedman has observed, "[j]udges in this district have construed
> 'corruptly' to require 'a showing of "dishonesty" or an 'improper purpose'[;],
> 'consciousness of wrongdoing'[;] or conduct that is 'independently criminal,'
> 'inherently malign, and committed with the intent to obstruct an official
> proceeding.'" Puma, 2022 WL 823079, at *10 (quoting Montgomery, 2021 WL
> 6134591, at *19; Bozell, 2022 WL 474144, at *6; Caldwell, 2021 WL
> 6062718, at *11; and Sandlin, 2021 WL 5865006, at *13) (alterations omitted).
> Under any of these common-sense constructions, the term "corruptly" "not only
> clearly identifies the conduct it punishes; it also 'acts to shield those who
> engage in lawful, innocent conduct – even when done with the intent to
> obstruct, impede, or influence the official proceeding.'" Id. (quoting Sandlin,
> 2021 WL 5865006, at *13). It presents no vagueness concern.

Thus, the Government presents the varying alternate meanings to the term "corruptly" and then incredibly

concludes that "it presents no vagueness concern." The Opposition argues yet another meaning of

"corruptly":

> Five years later, in United States v. Morrison, 98 F.3d 619 (D.C. Cir. 1996), the
> D.C. Circuit rejected a Poindexter- based vagueness challenge to 18 U.S.C.
> §1512(b) and affirmed the conviction of a defendant for "corruptly" influencing
> the testimony of a potential witness at trial. Id. at 629-30.

Thus, while the Opposition argues that each time the courts have considered "corruptly" they

decided on the facts in front of them, the Government itself inadvertently emphasizes that "corruptly" has

many different meanings. (ECF #58 pp.11-12). On top of that, the Government argues on Page 10 that,

"A statute is not unconstitutionally vague simply because its applicability is unclear at the margins,"

United States v. Williams, 553 U.S. 285, 306 (2008). (ECF #58 at p. 10). However, that is precisely when

a statute is unconstitutionally void for vagueness. The line between what is lawful and what is unlawful is

no mere technicality.  Drawing the line between what a person may lawfully do and what they may not is

a core requirement under Due Process clause and the very purpose of criminal law as a whole.

The word "corruptly" has always been a highly subjective term but in this exact situation the various judges of this Court considering 18 U.S.C. 1512(c)(2) have in fact debated and adopted significantly several different interpretations of the term and its effect on the statute. In *Kolender*, the court stresses the importance of sufficiency and preservation of the criminal justice system, as well as protecting Defendant's constitutional rights in understanding what conduct he is accused of within the meaning of the statute:

> To satisfy due process, "a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U. S. 352, 357 (1983). Skilling v. United States, 130 S.Ct. 2896 (2010).

Accordingly, the Court can issue a narrowing interpretation of "corruptly" limiting it to its financial / fraud meaning, as Justice Scalia did in *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part), and Judge Timothy Kelly suggested in *USA v. Nordean*, Criminal Case No. 1:21-cr-00175. The Court needs to either strike Count II or at the least narrow its meaning that "corruptly" requires proof beyond a reasonable doubt of financial fraud to obtain an unlawful advantage (such as financial) or the destruction of documents, killing or intimidation of jurors or witnesses, etc. The Court needs to do so early rather than later because the trial, the relevance of witnesses, *voir dire* questions, and the jury instructions will all be crafted differently.

### CONCLUSION

The Defendant requests this Court to grant this Motion and such other relief as may be deemed just. Defendant Daniel Gray, requests that the Court dismiss Count II for the reasons stated in his motion and above. The mere fact that the Defendant may have been within a crowd does not state an offense under 18 U.S.C. § 1512(c)(2) in Count II.

Dated:  November 14, 2022

Respectfully submitted,

DANIEL PAUL GRAY, *By Counsel*

John Pierce Law Firm
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: **jpierce@johnpiercelaw.com**

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

Jacqueline N. Schesnol, Esq.
DOJ-USAO
United States Attorney's Office
40 North Central Avenue, Suite 1800
Phoenix, AZ 85004-4449
(602) 514-7689
**jacqueline.schesnol@usdoj.gov**

_____
John M. Pierce, Esq.