**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | )   Crim. Action No. 21-0495 (ABJ) |
| DANIEL PAUL GRAY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Daniel Paul Gray has been charged in a nine-count indictment with the following offenses:

Count I – Civil Disorder in violation of 18 U.S.C. § 231(a)(3);

Count II – Obstruction of an Official Proceeding and Aiding and Abetting in violation of 18 U.S.C. §§ 1512(c)(2) and 2;

Count III – Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1);

Count IV – Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1);

Count V – Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2);

Count VI – Engaging in Physical Violence in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(4);

Count VII – Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D);

Count VIII – Act of Physical Violence in the Capitol Grounds or Buildings in violation of 40 U.S.C. § 5104(e)(2)(F); and

Count IX – Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).

Superseding Ind. [Dkt. # 25] ("Indictment").

Gray has filed separate motions to dismiss Count Two and Count Nine, as well as a motion to dismiss certain counts on the grounds that they are multiplicitous. *See* Def.'s Mot. to Dismiss Count II [Dkt. # 54] ("Count II Mot."); Errata re Count II Mot. [Dkt. # 55]; Def.'s Mot. to Dismiss Count IX [Dkt. # 56] ("Count IX Mot."); Def.'s Mot. to Dismiss Certain Counts Due to Multiplicity [Dkt. # 52] ("Multiplicity Mot."). The government opposes each of them. *See* Gov't's Opp. to Mot. to Dismiss Count II [Dkt. # 58] ("Opp. Count II Mot."); Gov't's Opp. to Def.'s Mot. to Dismiss Count IX [Dkt. # 62] ("Opp. Count IX Mot."); Gov't's Opp. to Def.'s Mot. to Dismiss Certain Counts Due to Multiplicity [Dkt. # 59] ("Opp. Multiplicity Mot."). The matter is fully briefed. Def.'s Reply to Gov't's Opp. to Mot. to Dismiss Count II [Dkt. # 68] ("Count II Reply"); Def.'s Reply to Gov't's Opp. to Def.'s Mot. to Dismiss Count IX [Dkt. # 66] ("Count IX Reply"); Def.'s Reply to Gov't's Opp. to Def.'s Mot. to Dismiss Certain Counts Due to Multiplicity [Dkt. # 65] ("Multiplicity Reply"). For the reasons set forth below, the motions will be **DENIED.**

## LEGAL STANDARD

The Federal Rules of Criminal Procedure require that an indictment must consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The charging document "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018), quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth

all the elements necessary to constitute the offense intended to be punished.'"  *Hamling v. United States*, 418 U.S. 87, 117 (1974), quoting *United States v. Carll*, 105 U.S. 611, 612 (1882).

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," Fed. R. Crim. P. 12(b)(3)(B), including constitutional challenges.  *See United States v. Eshetu*, 863 F.3d 946, 952–3 (D.C. Cir. 2017), *vacated in part on reh'g on other grounds*, 898 F.3d 36 (D.C. Cir. 2018).  "When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations."  *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015), citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952).  A dismissal of an indictment "is granted only in unusual circumstances," because "a court's 'use [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury.'"  *Id.* at 148, quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995).

## ANALYSIS

### I.    Count Two:  Violation of 18 U.S.C. §§ 1512(c)(2) and 2

Count Two charges defendant with obstructing an official proceeding and aiding and abetting in violation of 18 U.S.C. §§ 1512(c)(2) and 2:

> On or about January 6, 2021, within the District of Columbia and elsewhere, [defendant] attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress' certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18.

Indictment at 2.  Defendant moves to dismiss Count Two on multiple grounds, arguing that the indictment fails to state an offense, his conduct is not covered by section 1512(c)(2), and the word

"corruptly" is unconstitutionally vague or requires a pecuniary motive.  Count II Mot. at 9, 14–15, 20.

Defendant is not the first to question the validity of indictments charging January 6 defendants under section 1512(c)(2), and this Court has already addressed many of the legal issues raised here.  *See generally United States v. Williams*, No. 21-cr-618, 2022 WL 2237301 (D.D.C. June 22, 2022); *see also United States v. Rodriguez*, No. CR 21-cr-246, 2022 WL 3910580 (D.D.C. Aug. 31, 2022); Order, *United States v. Black*, Case No. 21-cr-127 (D.D.C. July 26, 2022).  As noted in these opinions, similar challenges have been rejected by every court in this district to consider them – with one exception.  *See United States v. Sandlin*, 575 F. Supp. 3d 16, 21–34 (D.D.C. 2021); *United States v. Caldwell*, 581 F. Supp. 3d 1, 10–34 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 24–27 (D.D.C. 2021); *United States v. Montgomery*, 578 F. Supp. 3d 54, 61–87 (D.D.C. 2021); *United States v. Nordean*, 579 F. Supp. 28, 41–54 (D.D.C. 2021); Order, *United States v. Reffitt*, No. 21-cr-32 (D.D.C. Dec. 29, 2021); *United States v. McHugh*, 583 F. Supp. 3d 1, 11–23 (D.D.C. 2022), *recons. denied*, No. 21-cr-453 (JDB), 2022 WL 1302880, at *2–13 (D.D.C. May 2, 2022); *United States v. Grider*, 585 F. Supp. 3d 21, 27–34 (D.D.C. 2022), *recons. denied*, No. 21-cr-22 (CKK), 2022 WL 3016775, at *3–8 (D.D.C. July 29, 2022); *United States v. Bozell*, Case No. 21-cr-216 (JDB), 2022 WL 474144, at *1–7 (D.D.C. Feb. 16, 2022); *United States v. Robertson*, 588 F. Supp. 3d 114, 119–124 (D.D.C. 2022), *recons. denied*, No. 21- cr-34 (CRC), 2022 WL 2438546, at *1–8 (D.D.C. July 5, 2022); *United States v. Andries*, No. 21-cr-93 (RC), 2022 WL 768684, at *3–17 (D.D.C. Mar. 14, 2022); *United States v. Puma*, 596 F. Supp. 3d 90, 96–115 (D.D.C. 2022); *United States v. Bingert*, Case No. 21-cr-91 (RCL), 2022 WL 1659163, at *3–11, *12–15 (D.D.C. May 25, 2022); *United States v. Fitzsimons*, Case No. 21- cr-158 (RC), 2022 WL 1698063, at *3–13 (D.D.C. May 26, 2022); *United States v. Rhodes*,

4

No. 22-cr-15 (APM), 2022 WL 2315554, at *13–14 (D.D.C. June 28, 2022); *United States v. Robertson*, No. 21-cr-34 (CRC), 2022 WL 2438546, at *1–5 (D.D.C. July 5, 2022); *United States v. Rhodes*, No. 22-cr-15 (APM), 2022 WL 3042200, at *2–4, 6 (D.D.C. Aug. 2, 2022); *United States v. Brock*, No. 21-140 (JDB), 2022 WL 3910549, at *2–5 (D.D.C. Aug. 31, 2022); *United States v. Hale-Cusanelli*, No. 21-cr-37 (TNM), 2022 WL 4300000, at *1 (D.D.C. Sept. 19, 2022); *United States v. Weeks*, No. 21-247 (TFH), 2022 WL 9296415, at *3–6 (D.D.C. Oct. 14, 2022); *United States v. Gillespie*, No. CR 22-60 (BAH), 2022 WL 17262218, at *3–6 (D.D.C. Nov. 29, 2022); *United States v. Nordean*, No. CR 21-175 (TJK), 2022 WL 17583799, at *15 (D.D.C. Dec. 11, 2022); *United States v. Sheppard*, No. CR 21-203 (JDB), 2022 WL 17978837, at *2–4 (D.D.C. Dec. 28, 2022); *United States v. Gossjankowski*, No. CR 21-0123 (PLF), 2023 WL 130817, at *7–10 (D.D.C. Jan. 9, 2023).

One court has granted a motion to dismiss a charge alleging a violation of 18 U.S.C. § 1512(c)(2).  In *United States v. Miller*, the district judge agreed with the government that the congressional certification of the Electoral College results is an "official proceeding" for purposes of the statute, but he found that section 1512(c)(2) did not cover the alleged conduct because the provision only applies if the defendant took some action with respect to a document, record, or other object.  589 F. Supp. 3d 60, 67, 79 (D.D.C. 2022), *recons. denied*, No. 1:21-CR-00119 (CJN), 2022 WL 1718984 (D.D.C. May 27, 2022).  *See also United States v. Fischer*, Case No. 21-234 (CJN), 2022 WL 782413, at *4 (D.D.C. Mar. 15, 2022) (same); *United States v. Lang*, No. 21-cr-53 (D.D.C. June 7, 2022) (dismissing section 1512(c)(2) count via minute order for the reasons discussed in *Miller*).  While an appeal of the *Miller* decision is pending before the Court of Appeals, no other court in the district has followed that ruling since, and this Court's view of how the question should be resolved has not changed.

**A.      Count II provides sufficient notice of the offense charged.**

Defendant first argues that there are "no factual allegations . . . that Defendant Gray in any way obstructed an official proceeding," and that the indictment is "insufficient to put him on notice of the exact crime he is being charged with."  Count II Mot. at 9–10; Count II Reply at 3.  This is not a basis to dismiss the charge, as the indictment "contains the elements of the offense charged" under section 1512 (c)(2): that defendant "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding."   Indictment at 2; *Hamling*, 418 U.S. at 117.  And, it "fairly informs" defendant of the charge against which he must defend:  that he violated the statute or aided and abetted a violation by others on January 6, 2021, "within the District of Columbia and elsewhere," and that the official proceeding allegedly obstructed was "specifically" the Congressional certification of the Electoral College vote.  Indictment at 2; *Hamling*, 418 U.S. at 117.  Nothing further is required.

Defendant devotes a considerable portion of his motion to disputing whether the facts set forth in the Statement of Facts in support of the warrant for his arrest are sufficient to establish a violation of section 1512(c)(2) on his part, and he poses several questions about what took place on January 6 and what prompted the evacuation of the House and Senate chambers.  Count II Mot. at 3–4, citing Statement of Facts [Dkt. 1-1] ("Statement of Facts").  But the factual contentions in the motion are misplaced, as none of this bears on the question before the Court:  whether the indictment fairly informs the defendant of the offense charged.  The government will have to prove each of the elements of the offense beyond a reasonable doubt, including that the defendant attempted to, or did obstruct or impede an official proceeding, that he intended to obstruct or impede the proceedings, and that he acted knowingly and corruptly, and/or that he aided and abetted others in the commission of the offense.  Those questions will be up to the jury to decide.

The fact that in defendant's view, the government will be unable to carry its burden at the end of the day does not render the indictment defective on its face.[1]

### B.   The indictment states a violation of section 1512(c)(2).

Defendant purports to "join" other motions filed in January 6 cases challenging whether the Electoral College certification qualifies as an "official proceeding," Count II Mot. at 14, and he adopts the arguments advanced in other cases that section 1512(c)(1) limits subsection (c)(2),

---

[1]     After reciting large portions of the Statement of Facts and offering his views about them, defendant asserts that the Statement of Facts "clearly identifies the obstruction of an official proceeding as being the _evacuation_ of the Joint Session of Congress on January 6, 2021, which the government identifies as being at 2:20 p.m." Count II Mot. at 10 (emphasis in original). He also points to the information in the Statement of Facts that the building was breached at 2:00 p.m., _id._ at 3, and testimony in another case that the Speaker of the House "was whisked away from the podium at 2:14." _Id._ at 10. Defendant then posits that since he did not enter the Capitol until 2:25 PM, he cannot be held responsible for the actions of the crowd before that time. _Id._ at 8–9.

Defendant appears to misunderstand both the statute and the allegations underlying the indictment.

First, the indictment does not pinpoint the alleged obstruction as having taken place the instant the proceedings were brought to a halt; nor does it suggest that the crime was completed once the certification had been interrupted. Indeed, the Statement of Facts the defendant saw fit to paste into his motion specifically alleges that "the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.," Statement of Facts at 1, and the government's theory appears to be that once interrupted by the mob in the building, the certification could not resume until each protester had been removed and the premises were secured, and that this was not completed until approximately 8:00 pm.

Second, section 1512(c)(2) lacks any temporal or geographic limitation, as it covers anyone who "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so." § 1512(c)(2). Thus, as other courts in this district have found, the plain text of the statute does not require that the charged obstruction, influence, or impediment of the official proceeding take place _before_ such proceeding was _first_ obstructed. _See Brock_, 2022 WL 3910549 at *3 ("There is no requirement that the government allege actions taken before the joint session was suspended"); _see also Bozell_, 2022 WL 474144, at *4 (rejecting argument that January 6 rioters did not interrupt "official proceeding" of Congress simply because the House of Representatives and Senate withdrew to separate chambers shortly before the rioters entered the Capitol). Moreover, 18 U.S.C. § 2, also charged in Count Two, provides, that "whoever … aids, abets, counsels, commands, induces, or procures" an offense against the United States is punishable as a principal.

and therefore the statute only covers conduct involving the alteration of records.  Count II Mot. at 15.  To the extent defendant argues section 1512(c)(2) could not apply to his alleged conduct as a matter of law, his arguments fail.

       **1.**       **The Electoral College certification is an "official proceeding" for purposes of 18 U.S.C. § 1512(c).**

Defendant notes that other defendants have challenged whether the Electoral College certification qualifies as an "official proceeding" on the "serious technical grounds" that section 1512(c)(2) only addresses adjudicatory proceedings.  Count II Mot. at 14.  As the Court discussed above, similar challenges have been rejected by every court in this district to consider this issue, including the *Miller* court.  589 F. Supp. 3d at 66–67 (finding that "as used in section 1512(c), 'official proceeding' is a defined term, and its definition covers the Congressional certification of Electoral College results.").

Section 1512(c)(2) states:  "Whoever corruptly . . . (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."  18 U.S.C. § 1512.  The scope of the term "official proceeding" is not left to the reader's imagination, but it is specifically defined in the statute to include:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to

> examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1).

The joint session to certify the vote of the Electoral College falls squarely within that definition; a "proceeding before the Congress" is specifically included.  Moreover, when one reads those words in the context of the other "official proceedings" specified in the list – "a proceeding before a judge or court . . . or a Federal grand jury," "a proceeding before a Federal Government agency which is authorized by law," and "a proceeding . . . before any insurance regulatory official or agency," 18 U.S.C. § 1515(a)(1) – the term appears to apply to a formal gathering before the body in question, *see United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013), which is conducted under legal auspices, and is authorized to render some sort of decision or outcome.

One would be hard-pressed to identify many other proceedings on Capitol Hill with more formality than a joint session of both houses of Congress that is called for by the Constitution itself, and over which the Vice President of the United States is required to preside.  *See* U.S. Const. art. II, § 1; U.S. Const. amend. XII.  This was not merely a ceremonial gathering, as one might describe a State of the Union address, but it fits the definition of a proceeding "before the Congress" because a quorum consisting of "a Member or Members from two thirds of the States, and a Majority of all the States" was required to be present, U.S. Const. art. II, § 1, cl. 3,

and there was something specific to be determined in accordance with federal statutory provisions: the outcome of the presidential election.[2]

One can also find meaning in the repetition of the word "before" in section 1515(a)(1). The court in *McHugh* found that the certification proceeding meets the definition of an official proceeding as it involves one entity appearing "before" another.  583 F. Supp. 3d at 13 ("Fifty-three sections of the U.S. Code use the phrase 'a proceeding before,' and in every one the phrase describes a proceeding involving more than one entity, usually in a court-like setting where one entity 'appears before' another.").  And here, the Electoral College can be identified as the second entity.  Although not physically present, the Electoral College must "vote by ballot for President and Vice-President" and "transmit [the results] sealed to the seat of the government of the United States, directed to the President of the Senate."  U.S. Const. amend. XII.  Congress must then formally convene to open, debate, and certify those results.  *Id.*; 3 U.S.C. § 15.  The votes themselves are therefore "before" Congress.  *See Sandlin*, 575 F. Supp. 3d at 23–24; *McHugh*, 583 F. Supp. 3d at 7; *Montgomery*, 578 F. Supp. 3d at 69.

Second, the provision of the criminal code at issue is extremely broad.  In section 1512(c)(2), Congress provided that one who corruptly obstructs "*any* official proceeding" is subject to punishment, 18 U.S.C. § 1512(c)(2) (emphasis added), and the Supreme Court has explained that "[r]ead naturally, the word 'any' has an expansive meaning . . . ."  *United States v.*

---

[2]     Federal law specifies how members of Congress may challenge an electoral vote.  "Upon such reading of any such [electoral] certificate or paper, the President of the Senate shall call for objections, if any.  Every objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives."  3 U.S.C. § 15.  There are also formal statutory procedures for each house to follow when debating and voting on an objection.  *See* 3 U.S.C. § 17.

*Gonzales*, 520 U.S. 1, 5 (1997); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008);

*Montgomery*, 578 F. Supp. 3d at 61–62.   Since Congress chose to use the word "any" in this

provision, this Court should not presume to impose a limitation not found in the statute, as that

would serve "to alter, rather than to interpret" the statutory language.  *Little Sisters of the Poor*

*Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020).  This is particularly true

when one takes note of the fact that Congress used "any" in section 1512(c)(2), while selecting the

articles "an" or "the" for other portions of section 1512.  *See, e.g.*, 18 U.S.C. §§ 1512(a)(1)(A)–

(B), (a)(2)(A)–(B), (b)(1)–(2), (c)(1), (d)(1), (f)(1), (g)(1), (i).   For these reasons, the plain

language of the statute supports the government's interpretation, and the Court will not dismiss

Count Two on this ground.

> **2.     Section 1512(c)(2) is not limited by subsection (c)(1), and the indictment
> need not allege the alteration of records.**

Defendant argues that "the structure of 1512(c)(2) connecting it by 'or' from the previous

subsection 1512(c)(1) does not allow 1512(c)(2) to be read in isolation as a stand-alone law, but

as an alternative but connected concept to 1512(c)(1)."   Count II Mot. at 15–16 (emphasis

removed).  The motion to dismiss rests upon the *Miller* decision and appears to ask this Court to

adopt it.  Count II Mot. at 17–20.  Defendant also argues that the connector "otherwise" limits the

meaning of 1512(c)(2) to the topics set forth in section 1512 under "the doctrine of *noscitur a*

*sociis*, that an open-ended category following a list of specific examples must [be] interpreted within that context."[3]  Count II Mot. at 16, 20.

In *United States v. Miller*, the court found that "there are two plausible interpretations of [18 U.S.C. § 1512(c)(2)]:   either § 1512(c)(1) merely includes examples of conduct that violates § 1512(c)(2), or § 1512(c)(1) limits the scope of § 1512(c)(2)." 589 F. Supp. 3d at 78.  The more plausible interpretation, according to the *Miller* court, was the latter, and therefore it found that the indictment failed to allege a violation of 18 U.S.C. § 1512(c)(2).  *Id.*; *see also Fischer*, 2022 WL 782413, at *4 ("The court recently concluded [in *Miller*] that the word 'otherwise' links subsection (c)(1) with subsection (c)(2) in that subsection (c)(2) is best read as a catchall for the prohibitions delineated in subsection (c)(1).").

The Miller court relied heavily on *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015), and *Yates v. United States*, 574 U.S. 528 (2015) (plurality opinion).  In *Begay*, the Supreme Court considered whether drunk driving was a "violent felony" for the purposes of the sentencing provision imposing a mandatory minimum term on an offender with three prior convictions "for a violent felony," as that term was defined in 18 U.S.C. § 924(e)(2)(B)(ii) ("the term 'violent felony' means  any  crime  punishable  by imprisonment  for a term exceeding one year . . . that-- . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another").  553 U.S. at 141.  The Court

---

3       It is unclear whether defendant is attempting to invoke the doctrine of *noscitur a sociis*, under which "a word is known by the company it keeps," or *ejusdem generis*, which counsels that if "general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Yates v. United States*, 574 U.S. 528, 543, 545 (2015).  This is ultimately immaterial as both arguments fail.

concluded that the examples listed before "otherwise" limited the scope of the residual clause to similar crimes, and that drunk driving fell "outside the scope" of the Armed Career Criminal Act ("ACCA").  *Id.* at 142–48.

The *Miller* court reasoned that, because "the *Begay* majority opinion rejected the government's argument 'that the word 'otherwise' is *sufficient* to demonstrate that the examples [preceding 'otherwise'] do not limit the scope of the clause [following 'otherwise'],'" *Miller*, 589 F. Supp. 3d at 71 (alterations in original, emphasis in original removed), section 1512(c)(1) most likely also limits the scope of section 1512(c)(2).   *Id.* at *70–73.

This Court respectfully disagrees with *Miller*'s reasoning, and along with other courts in the district, declines to follow it.  The Court is not basing its determination on a finding that the mere appearance of the word "otherwise" is sufficient to answer the question and establish that the first clause, section 1512(c)(1), was not meant to serve as a limit on the second clause, subsection (c)(2).  Rather, the Court has considered the language and structure of the statute, and it agrees with the reasoning in other decisions in this district rejecting the *Miller* court's application of *Begay*.  *See McHugh II*, 2022 WL 1302880, at *5–12; *Bingert*, 2022 WL 1659163, at *7–11.

For one thing, the structure of section 1512(c)(2) does not parallel the structure of the ACCA, and "otherwise" in section 1512(c)(2) does not immediately follow a list of examples. *Compare* 18 U.S.C. § 1512(c), *with*  18 U.S.C. § 924(e)(2)(B).  And sections 1512(c)(1) and (c)(2) – which prohibit different types of conduct – do not overlap in the same way that the ACCA clauses overlapped, and this makes a similar conclusion that what follows the term "otherwise" is an extension of the prior provision less likely.  *Id.*  Indeed, the Supreme Court noted in *Begay*

that "the word 'otherwise' *can* (we do not say *must*) refer to a crime that is similar to the listed examples in some respects but different in others."   553 U.S. at 144 (emphasis in original, citation omitted).

As the court observed in *McHugh II*, the way Congress drafted the two provisions indicates that they were intended to target different conduct:

> Rather than a continuous list with a general term at the end, § 1512(c) contains two separately numbered paragraphs, with a semicolon and a line break separating the "otherwise" clause in paragraph (c)(2) from the preceding terms in paragraph (c)(1).  Furthermore, paragraph (c)(2) is grammatically distinct from paragraph (c)(1).   Although the two provisions share a subject and adverb ("whoever corruptly"), paragraph (c)(2) contains an independent list of verbs that take a different object ("any official proceeding") from the verbs in paragraph (c)(1) (which take the object "a document, record, or other object").   In short, rather than "A, B, C, or otherwise D," section 1512(c) follows the form "(1) A, B, C, or D; or (2) otherwise E, F, or G."

2022 WL 1302880, at *5 (citation omitted).

As for *Miller*'s finding that "[r]eading § 1512(c)(2) alone is linguistically awkward," 589 F. Supp. 3d at 67, this would not be the case if one reads "otherwise" to "'signal[] a shift in emphasis' from actions directed at evidence to actions directed at the official proceeding itself." *Montgomery*, 578 F. Supp. 3d at 72, quoting *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 520 (2015).   The provision also makes sense if "otherwise" is understood to mean "in a different way."   *McHugh II*, 2022 WL 1302880, at *4.    Under either interpretation, the meaning of the statute is clear:    a person can violate section 1512(c)(2) through means that differ from document destruction, and the term "otherwise" does not limit the prohibition in section 1512(c)(2) to conduct described in section 1512(c)(1).

For these reasons, the statutory canons of *noscitur a sociis* and *ejusdem generis* also have no bearing on the matter.  The principle of *noscitur a sociis* – "a word is known by the company

it keeps" – instructs courts to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress."  *Yates*, 574 U.S. at 543 (applying the canon to find that "tangible object," as the last in a list of terms that began "any record [or] document," was appropriately read to refer specifically to the "subset of tangible objects used to record or preserve information" and not just any tangible object).  As discussed above, sections 1512(c)(1) and (c)(2) target different conduct; section 1512(c)(1) does not provide "accompanying words" for section 1512(c)(2), and nothing in the overall statutory context indicates that documents and records were the "exclusive focus of the provision" so that section 1512(c)(1) would limit subsection (c)(2).  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008) (declining to apply *noscitur a sociis* to interpret "any other law enforcement officer" to include only customs or excise officers when the overall context did not suggest customs and excise officers were the exclusive focus of the statute, even though the statute mentioned such officers twice).

    The canon of *ejusdem generis*, which counsels that if "general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding," is similarly inapplicable.  *Yates*, 574 U.S. at 545.  Given that "otherwise" in section 1512(c)(2) does not immediately follow a list of examples, the specific words in section 1512(c)(1) have no bearing on the separate terms used in subsection (c)(2).  *See Ali*, 552 U.S. 214 at 225 (noting that the "absence of a list of specific items undercuts the inference embodied in *ejusdem generis*").

    Since the scope of section 1512(c)(2) is not limited by (c)(1), the indictment need not allege the destruction or falsification of documents or records, and Count Two states a valid claim under the statute.

C.   **18 U.S.C. § 1512(c)(2) is not unconstitutionally vague and does not require a pecuniary motive.**

Section 1512(c)(2) penalizes "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so."  18 U.S.C. § 1512(c)(2).  Defendant argues that "the use of the word 'corruptly' in the statute is unconstitutionally vague."  Count II Mot. at 22; Count II Reply at 9.  Defendant also suggests that the term "corruptly" requires a pecuniary motive, "seeking some advantage from an official . . . with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person."  Count II Mot. at 21; Count II Reply at 12.  According to the defendant, the fact that "corruptly" has given rise to different interpretations "leaves it unmistakable that there is ambiguity" warranting dismissal of the count, or the Court should "at least narrow its meaning" to focus on financial motives.  Count II Reply at 10, 12.

A law can be unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015).  With respect to fair notice, "a statutory term is not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'"  *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017), quoting *Roth v. United States*, 354 U.S. 476, 491 (1957).  "Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifie[s]' 'no standard of conduct . . . at all.'"  *Bronstein*, 849 F.3d at 1107, quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (alterations in original).  "Accordingly, when the vagueness doctrine assesses a legal term's meaning to ordinary people, it is assessing meaning with the elementary rule of statutory interpretation:  [w]ords receive their plain, obvious and common sense meaning, unless context

furnishes some ground to control, qualify, or enlarge it." *Bronstein*, 849 F.3d at 1108 (citation and quotation marks omitted).

As to the second aspect of the vagueness doctrine, the Supreme Court has explained that if the applicability of a statute depends upon "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings," courts may find the statute to be unconstitutionally vague on the grounds that it encourages arbitrary and discriminatory enforcement. *United States v. Williams*, 553 U.S. 285, 306 (2008).

Defendant argues that "varying alternate meanings" for "corruptly" in cases in this district render the term unconstitutionally vague. Count II Reply at 11.[4] But, the case law defendant sets out in his motion does not reveal inconsistency, but it tends to demonstrate that there is a consensus in this district surrounding the meaning of "corruptly" for purposes of section 1512(c)(2). Count II Reply at 11, citing *Puma*, 596 F. Supp. 3d at 103–04 (collecting cases in this district denying motions to dismiss section 1512(c)(2) charges because "corruptly" was not void for vagueness). While defendant argues that an order in *Nordean* seeking supplemental briefing on the definition of "corruptly" in section 1512(c)(2) supports his vagueness argument, that court went on to find

---

4       At two points in his motion, defendant mentions problems with the corruptly element "as applied" by the government in January 6 cases to suggest that section 1512(c)(2) is void for vagueness. Count II Mot. 16, 20. To the extent defendant is arguing that section 1512(c)(2) invites arbitrary enforcement under the second aspect of the vagueness doctrine, this argument fails. Section 1512(c)(2) is not so "standardless" as to encourage arbitrary enforcement as it requires the determination of "clear questions of fact" based on the settled legal meanings of "corruptly." *Williams*, 553 U.S. at 304. Also, while individuals may contend in appropriate circumstances that a law is overbroad and violates the First Amendment either on its face or as-applied to them, the defendant has not pointed to case law recognizing the concept of language being void for vagueness "as-applied." And even when the First Amendment is involved, an as-applied challenge questions the application of a statutory provision to an individual defendant in particular, which the defendant does not even attempt to do here, and the time to do so would be after the factual record has been developed.

"corruptly" was not unconstitutionally vague in this context.  *See* Count II Reply at 12; *Nordean*, 579 F. Supp. 3d at 49.

The defendant also takes the position that the word "corruptly" requires a "pecuniary motive."  Count II Mot. at 20–21.  He lifts language from a dissenting opinion in *Marinello v. United States,* 138 S. Ct. 1101, 1114 (2018), and a concurring opinion in *United States v. Aguilar*, 515 U.S. 593, 616 (1995), but neither is controlling authority and neither supports his narrow reading of the term in any event.  Count II Mot. at 21.

In *Marinello*, the defendant was convicted of violating 26 U.S.C. § 7212(a), a criminal tax statute known as the Omnibus Clause, for corruptly endeavoring to obstruct or impede "due administration" of the Internal Revenue Code.  *See* 138 S. Ct. at 1105.  The parties disagreed as to the breadth of the statutory phrase "due administration" of the Code and whether it was meant to cover all governmental efforts to collect taxes or it required proof that the defendant interfered with a particular IRS action or investigation.  *Id.*  The majority concluded, "[i]n our view, 'due administration of [the Tax Code]' does not cover routine administrative procedures that are near-universally applied to all taxpayers, such as the ordinary processing of income tax returns.  Rather, the clause refers to specific interference with targeted governmental tax-related proceedings, such as a particular investigation or audit."  *Id.* at 1104.  The Court also noted that it had interpreted a similarly worded criminal statute in *Aguilar* under 18 U.S.C. § 1503, which proscribes "corruptly . . . endeavor[ing] to influence, obstruct, or impede, the due administration of justice,"  to impose "a 'nexus' requirement": that the defendant's 'act must have a relationship in time, causation, or logic with the judicial proceedings.'"  *Id.*, at 1106, quoting *United States v. Aguilar*, 515 U.S. 593, 598 (1995).  In other words, the Supreme Court in *Marinello* was addressing the level of specificity

18

needed to establish the obstruction or obstructive intent, and the meaning of "corruptly" was not at issue.

The dissenters favored a broader reading of the statute – that the provision forbids corrupt efforts to impede the IRS from performing *any* of its activities under the Tax Code – and in support of their position, they observed that the narrow interpretation adopted by the majority was not needed to prevent the Omnibus Clause from overlapping with other misdemeanor tax offenses because the Clause requires a higher *mens rea:* an act committed not only willfully, but corruptly. *See Marinello*, 138 S. Ct. at 1114. It was at that point that the dissent set out the definition of "corruptly" quoted at length by the defendant:

> "[C]orruptly" requires proof that the defendant "act[ed] with an intent to procure an unlawful benefit either for [himself] or for some other person," … ; *see also* Black's Law Dictionary 414 (rev. 4th ed. 1951) ("corruptly" "generally imports a wrongful design to acquire some pecuniary or other advantage"). In other words, "corruptly" requires proof that the defendant not only knew he was obtaining an "unlawful benefit" but that his "objective" or "purpose" was to obtain that unlawful benefit.

*Id.* This language was not inconsistent with the language utilized by the Supreme Court before. *See Aguilar*, 515 U.S. at 616–17 (defining "corruptly" as an "act done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person"). Thus, even if one adheres to the authorities the defense has identified, it is clear that the Court has consistently referred to a pecuniary "or other advantage," and there is no requirement of a

"financial gain to the actor or someone in privity with the actor" – as defendant proposes.  Count II Mot. at 22.[5]

The Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) has more bearing on the instant motion.  In that case, the Supreme Court examined the meaning of 18 U.S.C. § 1512(b)(2)(A) and (B), which make it a crime to "'knowingly . . . corruptly persuad[e] another person . . . with intent to . . . cause' that person to 'withhold' documents from, or 'alter' documents for use in, an 'official proceeding.'" *Arthur Andersen LLP*, 544 U.S. at 698 (alterations in original).  It found that the "natural meaning" of "corruptly" was "clear":  the term is "normally associated with wrongful, immoral, depraved, or evil" conduct.  *Id.* at 705; *see also id.* at 703–04 (distinguishing such conduct from that which is not "inherently malign").  The Court also explained that the formulation "knowingly corruptly" requires consciousness of wrongdoing on the defendant's part.  *Id.* at 706.  While the *Arthur Andersen* case did not consider the meaning of the term within the specific context of section 1512(c)(2), several circuits have since relied on the decision to conclude that "corruptly," as used in section 1512(c), requires a showing of "dishonesty," an "improper purpose," or that defendant acted "wrongfully."  *See United States v. Farrell*, 921 F.3d 116, 141 (4th Cir. 2019)

---

5       Defendant appears to also argue that using the "financially-oriented word 'corruptly'" is preferred because this interpretation avoids a conflict with the First Amendment.  Count II Mot. at 24.  But the defendant does not specify what that conflict might be.  As other courts in this district have noted, section 1512(c)(2) targets only "corruptly" obstructing, influencing, or impeding official proceedings and "does not proscribe lawful or constitutionally protected speech."  *Bozell*, 2022 WL 474144 at *7 (noting defendant "is not being prosecuted for exercising his First Amendment rights to peacefully protest outside the Capitol, but rather on the belief that he corruptly used force to disrupt the January 6 Certification."); *see also Nordean*, 579 F. Supp. at 53; *Caldwell*, 581 F. Supp. 3d at *34; *Mostofksy*, 579 F. Supp. at 12.  Therefore, there is no constitutional problem to avoid.  To the extent defendant seeks to argue that he was merely exercising his First Amendment rights in his alleged conduct, that is a factual argument for the jury.

(as applies to section 1512(c)(2), "[t]o act 'corruptly' means to act wrongfully"); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding jury instructions defining "corruptly" to "mean[] that the defendant acted with the purpose of wrongfully impeding the due administration of justice"); *see also United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021) ("[A] person acts 'corruptly' under [18 U.S.C. § 1512(c)(2)] when they act 'knowingly and dishonestly, with specific intent to subvert or undermine the due administration of justice.'"); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013), quoting *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) ("Acting 'corruptly' within the meaning of § 1512(c)(2) means acting 'with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or obstruct the [proceeding].").

The D.C. Circuit has not yet addressed the constitutionality of the word "corruptly" in the context of section 1512(c). Given *Arthur Andersen* and the instructive decisions set forth above, the Court agrees with the determinations of the other courts in the district that the inclusion of the term does not render the statute unconstitutionally vague on its face. *See, e.g.*, *Sandlin*, 575 F. Supp. 3d at 30 (Defendant's "facial challenge to § 1512(c)(2) . . . fails because the statute specifies 'core' behavior to which it constitutionally applies, though there may be scenarios at the edges that present vagueness problems."). Defendant had fair notice that his conduct was proscribed by section 1512(c), which does not require a pecuniary motive.

Of course, the government still has to prove the requisite level of intent. The Court will provide jurors with instructions as to the meaning of the term "corruptly." *See id.* Depending on the facts introduced at trial, the defendant may have a valid argument at the close of the government's case that the evidence was  insufficient to establish the necessary element of a corrupt purpose. At this juncture, though, predictions about the state of the record at that time are

not a basis to dismiss the indictment on its face. *See McHugh*, 583 F. Supp. 3d at 10 ("In deciding a motion to dismiss an indictment, the question before the Court is a narrow one, and the court will neither review the sufficiency of the evidence against the defendant nor craft jury instructions on the elements of the crimes charged.") (brackets and citations omitted).

For all of these reasons, the Court will **DENY** defendant's motion to dismiss Count Two.

## II.     Count Nine:  Violation of 40 U.S.C. § 5104(e)(2)(G)

Defendant moves to dismiss Count Nine, which charges that he "willfully and knowingly paraded, demonstrated, and picketed in any United States Capitol Building" in violation of 40 U.S.C. § 5104(e)(2)(G), on three grounds:  (1) Count Nine fails to state an offense; (2) section 5104(e)(2)(G) is unconstitutionally overbroad on its face and as-applied under the First Amendment; and (3) section 5104(e)(2)(G) is unconstitutionally vague.  Indictment at 5; Count IX Mot. at 8, 14, 17.

### A.     Count Nine states an offense for violation of 40 U.S.C. § 5104(e)(2)(G).

As in his motion to dismiss Count Two, defendant argues that the indictment "contains no factual allegations at all on any topic" nor factual allegations that defendant "engaged in any 'parading,' any 'picketing,' or any 'demonstrating.'"  Count IX Mot. at 8.  The Court again rejects this argument, as the indictment clearly and unambiguously "contains the elements of the offense charged."  *Hamling*, 418 U.S. at 117.

### B.     Defendant's First Amendment challenges to section 5104(e)(2)(G) fail.

Defendant appears to challenge section 5104(e)(2)(G) under the First Amendment as both facially invalid and as-applied to his alleged conduct.  Count IX Mot. at 14, 17.  Both arguments fail.

22

**1.      Section 5104(e)(2)(G) is not unconstitutionally overbroad.**

Under the First Amendment, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 292.  "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Id.* at 293.  The second step requires the court to evaluate "whether the statute . . . criminalizes a substantial amount of protected expressive activity." *Id.* at 297.  "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).  When construing a First Amendment challenge on public property, the court must "identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

Defendant suggests that the statute is overbroad because "the range of possible actions that may fall under the umbrella of 40 U.S.C. § 5104(e)(2)(G) is a formless mix that includes actions protected under the First Amendment."  Count IX Mot. at 20.  He maintains that these actions could include communicating political ideas in the Capitol building by broadcasting from a smartphone or wearing t-shirts "celebrating America or a school."  Count IX Mot. at 20.

In the past year, at least three other courts in this district have considered whether section 5104(e)(2)(G) is overbroad on its face, and all have concluded it is not.  *See United States v. Nassif*, No. 21-cr-421, 2022 WL 4130841, at 3–6 (D.D.C. 2022); Order, *United States v. Ballenger,* No. CR 21-719 (JEB), 2022 WL 14807767, at *2 (D.D.C. Oct. 26, 2022); *United States v. Seitz*, No. 21-cr-279 (DLF), Dkt. #51, 11–19 (D.D.C. Sept. 9, 2022).  The Court finds the reasoning in these opinions to be persuasive.

23

First, looking at the plain text of the provision, section 5104(e)(2)(G) is aimed at conduct, and not speech, as it criminalizes the acts of parading, demonstrating, or picketing. That interpretation is supported when one looks at the structure of the statute as a whole; section 5104(e)(2), entitled "Violent entry and disorderly conduct," is comprised of seven subsections, and all of the other subsections specify different types of noticeable behavior in any of the Capitol buildings. In accordance with the canon of *noscitur a sociis,* subsection (e)(2)(G) must be interpreted in this context, and it too can be understood to be directed at behavior. While some behavior within its reach may have an expressive intent or may be expressive in and of itself, section 5104(e)(2)(G) does not "criminalize[] a substantial amount of protected expressive activity." *Williams*, 553 U.S. at 297. The provision is limited to the interior of the public building, it is not directed at the content of the expression, and "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984), quoting *New York v. Ferber*, 458 U.S. 747, 772 (1982)

Second, it matters for purposes of the analysis where the burden on expression is being imposed. It is well-established that the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). When analyzing whether restrictions of speech on government property violate the First Amendment, courts apply the public forum doctrine. *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066, 1070 (D.C. Cir. 2012). The public forum doctrine divides government property into three separate categories: 1) traditional public forums, 2) designated public forums, and 3) nonpublic forums. *Id.*, quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). The categorical

designation of the forum will determine the level of scrutiny courts apply to any restrictions on private speech.  *See Cornelius*, 473 U.S. at 800.

"Traditional public forums" are "[p]laces which by long tradition or by government fiat have been devoted to assembly and debate."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).  Streets and parks are "quintessential public forums" that "have immemorially been held in trust for the use of the public, and . . . have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."  *Id.,* quoting *Hague v. CIO,* 310 U.S. 496, 515 (1939).  "Designated public forums" come into being when, "government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose," *Pleasant Grove City v. Summum,* 555 U.S. 460, 469 (2009), in other words, for the purpose of "expressive activity."  *Perry Educ. Ass'n*, 460 U.S. at 45.

Courts apply a strict scrutiny standard when evaluating speech restrictions imposed on the use of a traditional or designated public forum.  *See Pleasant Grove City,* 555 U.S. at 469–70.  Under this standard, restrictions "must be content-neutral, narrowly tailored to serve a significant governmental interest, and allow for sufficient alternative channels of communication."  *Cmty. for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1390 (D.C. Cir. 1990), citing *Ward v. Rock Against Racism*, 491 U.S. 781, 789 (1989).

A different standard governs "nonpublic forums" which are "not by tradition or designation a forum for public communication."  *Perry Educ. Ass'n,* 460 U.S. at 46.  "In these places the government may 'reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'"  *Initiative & Referendum Inst.*, 685 F.3d at 1070, quoting *Perry Educ. Ass'n*, 460 U.S. at 46.

25

In other words, if the forum "is not a public forum, the regulation will be upheld as long as the restrictions are reasonable and are not directed at opposing the views of particular individuals." *Cmty. for Creative Non-Violence*, 893 F.2d at 1390.

Applying those principles, the Court agrees with the conclusion of the court in *Nassif* that "the interior of the Capitol building is a nonpublic forum where the government may limit First Amendment activities so long as the restrictions are reasonable in light of the purpose of the forum and are viewpoint neutral." 2022 WL 4130841, at *4 (internal quotation marks and citation omitted); *see also Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 54–57 (D.D.C. 2000) (finding the U.S. Capitol is a nonpublic forum for purposes of the First Amendment where the expression of ideas "may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities"). The Court agrees with other judges in this district in finding that section 5104(e)(2)(G) is not overbroad because it is "limited to the interior of the Capitol buildings, is viewpoint-neutral, and is reasonable in light of the statute's purposes." *See Nassif*, 2022 WL 4130841, at *4. The statute does not target any viewpoint, whether politically or in other contexts. *See id.* at *5.

While defendant attempts to rely on *Bynum* and *Lederman v. United States*, 89 F. Supp. 2d 29, 43 (D.D.C. 2000) to support his overbreadth challenge, neither case informs the statutory challenge at issue here. Count IX Mot. at 14–16. Both cases involve challenges to Capitol Police Board regulations that were found to restrict a substantial amount of expressive behavior. In *Bynum*, the court was faced with a regulation that interpreted the term "demonstration activity" in the predecessor to section 5104(e)(2)(G) to include "parading, picketing, speechmaking, holding vigils, sit-ins, or other expressive conduct that convey[s] a message supporting or opposing a point of view or has the intent, effect or propensity to attract a crowd of onlookers . . ." 93 F. Supp. 2d

at 53.  The court concluded that the regulation swept "too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive," and  that since its "proscriptions are not limited to the legitimate purposes set forth in the statute, it is an unreasonable and therefore an unconstitutional restriction on speech."  *Id.* at 57.

*Lederman* is entirely inapposite since it involved a police regulation banning activity in a zone on the grounds outside the Capitol, and not inside the building.  Therefore, the court was applying the test applicable to a public forum, 89 F. Supp. 2d at 35–36, where the government's ability to permissibly restrict expressive conduct is "very limited."  *Id.* at 37.  While the court went on in dicta to opine that the regulation might not pass muster under the non-public forum test either, *id.* at 41, its analysis is not instructive here since the regulation in question was substantially broader than the statute at issue in this case.  *See id.* at 41 ("The amended regulation not only outlaws parading, picketing, speechmaking, vigils, and sit-ins, but also literally forbids anyone from expressing a point of view about anything within the 250 feet of the Capitol . . .").

By contrast, section 5104(e)(2)(G) constitutes a reasonable restriction on certain conduct within Capitol buildings that "Congress reasonably could have concluded would disrupt its legislative process."  *Nassif*, 2022 WL 4130841, at *5.  The Court therefore finds that section 5104(e)(2)(G) is not unconstitutionally overbroad.

### 2.      Section 5104(e)(2)(G) is not unconstitutional as-applied.

Unlike a facial challenge, an as-applied challenge under the First Amendment "asks a court to assess a statute's constitutionality with respect to the particular set of facts before it."  *Hodge v. Talkin*, 799 F.3d 1145, 1156 (D.C. Cir. 2015).  Defendant "cannot successfully bring an as-applied challenge to a statutory provision based on the same factual and legal arguments the . . . Court expressly considered when rejecting a facial challenge to that provision."  *Republican Party of*

*Louisiana v. Fed. Election Comm'n*, 219 F. Supp. 3d 86, 96 (D.D.C. 2016), *aff'd sub nom. Republican Party of Louisiana v. Fed. Election Comm'n*, 137 S. Ct. 2178 (2017), *quoting Republican Nat'l Comm. v. Fed. Election Comm'n*, 698 F. Supp. 2d 150, 157 (D.D.C. 2010), *aff'd*, 561 U.S. 1040 (2010).

Here, the problem is not just that defendant has repeated his facial overbreadth arguments in support of the as-applied challenge; he failed to advance any argument in support of an as-applied challenge at all.  Defendant asserts that the statute violates the First Amendment as-applied in two headings in his motion to dismiss, but he does not address this contention further.  Count IX Mot. at 11, 14.  Moreover, any as-applied challenge is premature as the factual record has yet to be developed.  For these reasons, the Court will deny defendant's First Amendment challenge to Count Nine.

### C.    40 U.S.C. § 5104(e)(2)(G) is not unconstitutionally vague.

Finally, the motion to dismiss Count Nine argues that section 5104(e)(2)(G) is "unduly vague" under the Fifth Amendment.  Count IX Mot. at 17.  Defendant's void for vagueness challenge appears to be grounded in the same arguments as his First Amendment overbreadth challenge and it fails for the same reasons.  Count IX Mot. at 17–20.

A penal statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Williams*, 553 U.S. at 304.  The "touchstone" of the vagueness analysis is "whether the statute, either standing alone or as construed by the courts, made it reasonably clear at the time of the charged conduct that the conduct was criminal."  *United States v. Lanier*, 520 U.S. 259, 267 (1997).  As explained above, section 5104(e)(2)(G) criminalizes parading, demonstrating, or picketing in any Capitol building, terms that are clearly understood.

To construe the statute, the Court can look to the dictionary definitions of these terms, as the court did in *Seitz*:

> To "parade" is "to march in procession or with great display or ostentation, to walk up and down or promenade in a public place especially for the sake of showing off" . . . to "demonstrate" is "to make or take part in a public demonstration" . . . and in turn, "demonstration" is "a public manifestation by a number of persons of interest in some public question, or sympathy with some political or other cause, usually taking the form of a procession and mass meeting" . . . [f]inally, to "picket" is "to act as a picket in a dispute or demonstration" . . . [a]nd a "picketer" is "one engaged in a demonstration at a particular premises."

*Seitz*, No. 21-cr-279, Dkt. #51, 12–1, citing Oxford English Dictionary (2nd ed. 1989).  The *Seitz* court concluded that "taking these words together, the statute covers those who noticeably take part in a public display, likely with multiple people and in support of some dispute or cause, in any of the Capitol buildings."[6]  *Id.* at 13.  Like the other courts that have considered the matter, the Court finds that the statutory terms provide sufficient guidance to ordinary people using common sense of the type of behavior that is prohibited in any Capitol building.  Moreover, the settled legal meanings of the words in the statute prevent any "wholly subjective judgments" that would encourage arbitrary enforcement, *Williams*, 553 U.S. at 306, and indeed, the defendant has not pointed to any word in the statute that invites the sort of subjective analysis that would create a risk of discriminatory or arbitrary prosecution.

---

6       Another court in this district observed that "demonstrating" was not vague because when read "in light of its neighbors . . . it is clear that § 5104(e)(2)(G) prohibits taking part in an organized demonstration or parade that advocates a particular viewpoint – such as, for example, the view that the 2020 U.S. Presidential Election was in some way flawed."  *Nassif*, 2022 WL 4130841, at *6 (internal citations and quotes omitted).  The Court does not find it necessary to adopt this gloss on the term at this time;  a person could elect to take part in, and add heft or power to, a public display involving others without individual participation in, or awareness of, any formal "organization," and their spontaneous activity, perhaps spurred on by others, could still satisfy the definition of "demonstrating."

Therefore, the indictment will not be dismissed on the basis that section 5104(e)(2)(G) is void for vagueness.  For all of these reasons, the Court will **DENY** defendant's motion to dismiss Count Nine.

## III.    Multiplicity Challenge

Defendant also seeks the dismissal of the indictment on the grounds that it violates the prohibitions against multiplicity and double jeopardy.  *See* Multiplicity Mot. at 3.  He asserts that "several counts in the indictment are simply rewordings and variations of other counts but which cite different statutes" and that he is therefore exposed to double jeopardy.  Multiplicity Mot. at 1, 4.  Defendant also argues that in light of this multiplicity, various counts of the indictment are merely lesser-included offenses of the others.  *See* Multiplicity Mot. at 4; Multiplicity Reply at 6–7.

Multiplicity arises when an indictment "charges the same offense in more than one count." *United States v. Mahdi*, 598 F.3d 883, 887 (D.C. Cir. 2010), quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999).  The Double Jeopardy Clause of the Constitution protects against "multiple punishments for the same offense."  *See* U.S. Const. amend. V, cl. 2; *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999), *cert. denied*, 529 U.S. 1005 (2000).  Also, courts have recognized that charging the same offense in multiple counts can "unfairly increas[e] a defendant's exposure to criminal sanctions" because a jury may conclude that given the number of charges, the defendant must be guilty of something.  *United States v. Clarke*, 24 F.3d 257, 261 (D.C. Cir. 1994), quoting *United States v. Harris*, 959 F.2d 246, 250 (D.C. Cir. 1992), abrogated on other grounds, *United States v. Stewart*, 246 F.3d 728 (D.C. Cir. 2001).  "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of

a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  The

*Blockburger* test to assess multiplicity thus "focuses on the statutory elements of the offense, not

on the proof offered in a given case."  *United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998),

citing *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975).  And, an offense "is not 'necessarily

included' in another unless the elements of the lesser offense are a subset of the elements of the

charged offense."  *Schmuck v. United States*, 489 U.S. 705, 716 (1989).

Here, the offenses charged satisfy the *Blockburger* test – and do not violate the Double

Jeopardy Clause – because each offense "requires proof of an additional fact which the other does

not."  Defendant argues first that Counts One, Two, Five, and Seven are all duplicative.

Multiplicity Mot. at 2.  The statute at issue in Count One, 18 U.S.C. § 231(a)(3), prohibits

"commit[ing] or attempt[ing] to commit any act to obstruct, impede, or interfere with any . . .  law

enforcement officer . . . during the commission of a civil disorder."  In contrast, the statute at issue

in Count Two, 18 U.S.C. §§ 1512(c)(2), charges one who "corruptly. . . obstructs, influences, or

impedes any official proceeding, or attempts to do so."  The former does not duplicate the latter,

and it is not a lesser-included offense, since section 231(a)(3) requires the obstruction of law

enforcement officers performing their duties during a civil disorder, while section 1512(c)(2)

requires corruptly obstructing or attempting to obstruct an official proceeding.  Counts Five and

Seven also require the proof of distinctive facts.  18 U.S.C. § 1752(a)(2), charged in Count Five,

requires that one "knowingly, and with intent to impede or disrupt the orderly conduct of

Government business or official functions . . . engages in disorderly or disruptive conduct" in or

in proximity to "any *restricted* buildings or grounds,"  which is defined as a building or grounds

"where the President or other person protected by the Secret Service is or will be temporarily

visiting."   §  1752(a)(2)-(c) (emphasis added).   In contrast, Count Seven under 40 U.S.C.

§ 5104(e)(2)(D) targets "disorderly or disruptive conduct" in "any of the *Capitol* Buildings" and has the added element of the intent to impede, disrupt, or disturb the orderly conduct of a *session of Congress*." § 5104(e)(2)(D)(emphasis added). Section 5104(e)(2)(D) thus requires entry into a Capitol Building and disruption of a session of Congress; section 1752(a)(2) *could* apply to the Capitol building and a session of Congress but does not necessarily require either. It does, however, require the separate element of "the President or other person protected by the Secret Service" temporarily visiting.

Defendant also argues that Counts Three, Six, and Eight are duplicative to no avail. Multiplicity Mot. at 2. The statute at issue in Count Three, 18 U.S.C. § 111(a)(1), requires that one "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in [the statute] while engaged in or on account of the performance of official duties." The statute defines such persons as "any officer or employee of the United States or of any agency in any branch of the United States Government." 18 U.S.C. § 1114. But Count Six under 18 U.S.C. § 1752(a)(4) subjects a person who "knowingly engages in any act of physical violence against *any person or property* in any restricted building or grounds," again defining "restricted buildings or grounds" as a building or grounds "where the President or other person protected by the Secret Service is or will be temporarily visiting." § 1752(a)(4)-(c) (emphasis added). Section 1752(a)(4) thus requires physical violence in a place that is restricted due to the presence of a defined visitor, which section 111(a)(1) does not, and section 111(a)(1) requires that the violence be directed at certain officers, which section 1752(a)(4) does not. Count Eight under 40 U.S.C. § 5104(e)(2)(F) further requires different elements by specifically criminalizing the act of "willfully and knowingly . . . engag[ing] in an act of physical violence *in the Grounds or any of the Capitol Buildings*." (emphasis added).

Finally, defendant argues that Counts Four and Nine are duplicitous trespassing counts. Multiplicity Mot. at 2.  Count Four under 18 U.S.C. § 1752(a)(1) requires that one "knowingly enters or remains in any restricted building or grounds without lawful authority to do so," whereas Count Nine under 40 U.S.C. § 5104(e)(2)(G) targets those who "willfully and knowingly . . . parade, demonstrate, or picket in any of the Capitol Buildings."  These statutes require proof of different facts:  Count Four requires unauthorized presence in a "restricted" building as defined above, and Count Nine is about the interior of Capitol buildings in particular, and it requires the parading, demonstrating or picketing element.  *See Ballenger*, 2022 WL 14807767, at *2 (finding section 5104(e)(2)(G) "is not duplicative of § 1752 since the former does not require entry into or proximity to a restricted area, while the latter does").

Because each of the offenses charged in the indictment requires proof of an additional fact which the other does not, defendant's motion to dismiss the indictment on multiplicity grounds will be **DENIED**.

## CONCLUSION

For the reasons set forth above, defendant's motions to dismiss Count Two [Dkt. # 54] and Count Nine [Dkt. # 56], and defendant's motion to dismiss counts on multiplicity grounds [Dkt. # 52] are hereby **DENIED.**

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE:  January 26, 2023